IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| E. FRED SCHUBERT, | ) | |
| | ) | |
| Plaintiff, | ) | **REDACTED- PUBLIC VERSION** |
| | ) | |
| v. | ) | C.A. No. 12-924-MN |
| | ) | |
| LUMILEDS LLC, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TRUSTEES OF BOSTON UNIVERSITY, | ) | |
| | ) | |
| Counterclaim Defendant. | ) | |

**ANSWERING BRIEF OF TRUSTEES OF BOSTON UNIVERSITY
TO LUMILEDS' MOTION FOR EXTENSION OF TIME AND
FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY**

Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
dfry@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Trustees of Boston University*

OF COUNSEL:
Michael Rader
WOLF, GREENFIELD & SACKS, P.C.
405 Lexington Avenue
New York, New York 10174
(212) 336-3850

Susmita A. Gadre
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210-2206
(617) 646-8000

Dated: June 19, 2020

## TABLE OF CONTENTS

I.    NATURE AND STAGE OF THE PROCEEDINGS ............................................................ 3

II.   SUMMARY OF THE ARGUMENT ............................................................................... 3

III.  FACTUAL BACKGROUND ......................................................................................... 5

IV.   ARGUMENT ............................................................................................................. 9

     A.    Lumileds' Two Theories Both Require BU to Have Participated in
         Filing the Lawsuit in Delaware, and the Evidence Shows the Opposite ................ 9

     B.    Lumileds' Motion Should Also Be Denied Because
         It Requests Discovery Unrelated to Personal Jurisdiction ................................... 13

     C.    Because the Court Can, and Should, Dismiss this Action for Lack of
         Subject Matter Jurisdiction and/or in Its Discretion Under the
         Declaratory Judgment Act, Jurisdictional Discovery Should Be Denied ............. 14

V.    CONCLUSION ......................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*BP Chem. Ltd. v. Union Carbide Corp.*,
  4 F.3d 975 (Fed. Cir. 1993) .................................................................................................... 5

*Buck's, Inc. v. Buc-eee's, Ltd.*,
  2009 WL 1839007 (D. Neb. June 25, 2009)........................................................................... 11

*Certainteed Corp. v. Knauf Insulation, SPRL*,
  849 F. Supp. 2d 67 (D.D.C. 2012).................................................................................. 2, 5, 14

*Chase Bank USA N.A. v. Hess*,
  2011 WL 45132 (D. Del. Jan. 6, 2011).................................................................................... 9

*Comm'ns Test Design, Inc. v. Contec, LLC*,
  952 F.3d 1356 (Fed. Cir. 2020) .............................................................................................. 14

*Danziger & De Llano, LLP v. Morgan Verkamp LLC*,
  948 F.3d 124 (3d Cir. 2020) ..................................................................................................... 1

*Hockerson-Halberstadt, Inc. v. Propet USA, Inc.*,
  62 F. App'x 322 (Fed. Cir. 2003) ........................................................................................... 10

*Int'l Constr. Prods. LLC v. Caterpillar, Inc.*,
  419 F.Supp.3d 791 (D. Del. Oct 10, 2019).............................................................................. 9

*Iotex Comm'ns, Inc. v. Defries*,
  1998 WL 914265 (Del. Ch. Dec. 21, 1998).............................................................................. 9

*Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*,
  449 A.2d 210 (Del. 1982) ......................................................................................................... 9

*Matthew v. Fläkt Woods Group SA*,
  56 A.3d 1023 (Del. 2012) ......................................................................................................... 9

*Microchip Tech. Inc. v. Chamberlain Grp., Inc.*,
  441 F.3d 936 (Fed. Cir. 2006) ................................................................................................ 11

*Osco Motors Co., LLC v. Marine Acquisition Corp.*,
  2014 WL 2875374 (D. Del. June 24, 2014).............................................................................. 9

*Parker v. Learn Skills Corp.*,
  530 F. Supp. 2d 661 (D. Del. 2008)........................................................................................ 10

*Telcordia Techs., Inc. v. Alcatel S.A.*,
  2005 WL 1268061 (D. Del. May 27, 2005)........................................................................ 2, 10

*Toys 'R' Us, Inc. v. Step Two, S.A.*,
  318 F.3d 446 (3d Cir. 2003) ................................................................................................... 10

There are two reasons why the Court should decline to grant jurisdictional discovery. First, Lumileds still fails to allege facts supporting personal jurisdiction over BU. That failure is fatal. *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020) ("When a defendant challenges the court's personal jurisdiction, the plaintiff bears the burden 'to come forward with sufficient facts to establish that jurisdiction is proper.'").

Lumileds now concedes that BU is not subject to general jurisdiction. D.I. 146 at 4 n.4. For specific jurisdiction, Lumileds has changed its strategy again, and the new strategy is no better than the first one or the second one. In its complaint Lumileds did not even allege that BU was subject to personal jurisdiction. D.I. 1; D.I. 142 at 9. At the May 18 hearing Lumileds argued that BU was subject to personal jurisdiction because it retains a percentage interest in any proceeds of the lawsuit. D.I. 142, Ex. A at 83. BU explained in its motion to dismiss why that residual interest—part of a standard invention return agreement between BU in Massachusetts and Dr. Schubert in New York, signed two years before Dr. Schubert filed this lawsuit—is not an availment by BU in Delaware. D.I. 142 at 14. Lumileds no longer makes that argument.

Lumileds also argued at the hearing that that "Lumileds has been injured by virtue of having to defend" this litigation in Delaware. D.I. 142, Ex. A at 83. BU explained that this theory fails because BU does not own the patent, did not file the suit, and thus the suit was not an availment of any sort by BU. D.I. 142 at 13. Now Lumileds, conceding that BU never acted in Delaware, advances a new "conspiracy theory" of personal jurisdiction. Yet Lumileds has not even pled conspiracy. The theory would require (among other things) involvement by BU in the decision to sue in Delaware. But Lumileds provides <u>zero</u> evidence of BU having been involved in that decision despite already having received fulsome discovery from BU. As discussed in Section III below, the evidence confirms that BU had no such involvement.

Lumileds' harassment of third-party BU[1] is precisely what the courts protect against by requiring "competent evidence to demonstrate that personal jurisdiction over [a] defendant might exist before allowing discovery to proceed." *Telcordia Techs., Inc. v. Alcatel S.A.*, 2005 WL 1268061, *9 (D. Del. May 27, 2005). Because there is no evidence that BU participated in the decision to file this lawsuit,[2] BU's motion to dismiss should be granted and Lumileds' eleventh-hour motion for jurisdictional discovery should be denied.

There is a second, independent reason why Lumileds' motion should be denied. Subject matter jurisdiction is lacking because BU transferred the patent to Dr. Schubert years before this suit was filed. As a matter of law, there is no justiciable case or controversy between an accused infringer and a former owner of a patent regarding validity, infringement or enforceability of that patent. D.I. 142 at 15-20. Lumileds concedes the point through silence. Moreover, given that BU does not own the patent, the Court can and should in its discretion dismiss Lumileds' declaratory judgment counterclaims even without reaching and deciding jurisdiction. *Id.* at 20; *Certainteed Corp. v. Knauf Insulation, SPRL*, 849 F. Supp. 2d 67, 76 (D.D.C. 2012).

---

[1] Lumileds served a probing document subpoena, calling for 31 categories of documents, on BU almost a year ago in July 2019. BU responded to the July 2019 subpoena and to an earlier 2013 subpoena from another defendant by producing over 1,000 pages of documents. Yet now, with the discovery period coming to a close and eight years after being sued on this patent, Lumileds has suddenly launched a wave of assaults on BU—serving duplicative document and deposition discovery on BU both as a party and as a non-party under Rule 45 (even though it was Lumileds that made BU a party, thus rendering Rule 45 subpoenas inappropriate) and serving subpoenas on several current and former BU employees.

[2] Lumileds' motion works hard to divert attention from the lack of evidence that BU had any involvement in the decision to file this lawsuit by engaging in hyperbole about the 2010 revival of the patent-in-suit. If Lumileds genuinely believed that BU employees acted improperly in reviving the patent, Lumileds presumably would not have waited so many years after learning the operative facts to pursue an inequitable conduct counterclaim. *See* D.I. 142 at 1.

## I.       NATURE AND STAGE OF THE PROCEEDINGS

Dr. Schubert, the owner of the patent-in-suit, filed this action on July 18, 2012. D.I. 1.

The case was stayed pending *inter partes* review (in which the patent was found not invalid), the

Federal Circuit affirmed, and the stay was lifted on February 15, 2019.  D.I. 68.  In March 2020,

more than one year later, Lumileds sought and secured leave to add BU as a defendant on

counterclaims of patent invalidity, non-infringement and unenforceability.  D.I. 103, 128.

On June 9, 2020, BU filed a motion to dismiss based on lack of personal jurisdiction, improper

venue, and lack of declaratory judgment jurisdiction.  D.I. 141.  On June 15, 2020, Lumileds

filed the present motion seeking leave to conduct jurisdictional discovery and for an extension of

time to respond to the motion to dismiss while it conducted that discovery.  D.I. 146.

## II.      SUMMARY OF THE ARGUMENT

Lumileds has failed, again, to adduce facts supporting personal jurisdiction over BU in

Delaware.  In fact, Lumileds' new theory, that BU "conspired" with Dr. Schubert regarding the

filing of this and two other patent suits, is utterly contradicted by the evidence.  The evidence

shows that (1) BU's standard agreement returning the invention to Dr. Schubert in 2010

contemplated that Dr. Schubert might start a company to sell products on which BU would

receive a royalty, not file patent infringement suits; (2) Dr. Schubert reached out to BU in

October 2011 to clarify how the agreement would treat different scenarios such as licensing the

patent, selling the patent to another company, or filing patent infringement suits without telling

BU which, if any, of these options he was pursuing; (3) BU failed even to get back to Dr.

Schubert for almost two months such that Dr. Schubert had to follow up, only to again explain

that he might license or sell the patent; (4) Dr. Schubert kept BU at arms-length, explaining in a

December 2011 memo that he had engaged a law firm "to assist with the licensing effort"

without mentioning litigation, let alone a contemplated forum in which he might sue; and

(5) when Dr. Schubert's counsel reached out to BU in May 2012 to request that BU execute a supplemental assignment of the right to past damages, BU again delayed in responding, and it took almost two months for BU to process the document—with no suggestion whatsoever that Dr. Schubert had imminent plans to file a suit, no identification of potential defendants for such a suit, and no mention of where he might do so.  The correspondence utterly contradicts any suggestion that BU was involved in (or even favored) the filing of this or any patent lawsuit by Dr. Schubert, let alone that BU desired to influence where such suits might be filed.

While it is challenging for a party in BU's position to "prove a negative," here the evidence is extensive and consistent that Dr. Schubert kept BU at arms-length and BU had nothing to do with the filing of this suit.  Under these circumstances, jurisdictional discovery is unjustified and would impose an unnecessary and unreasonable burden on BU, not to mention likely delaying the conclusion of this litigation due to Lumileds' unexplained decision to raise inequitable conduct at the eleventh hour.

Discovery into personal jurisdiction would also be futile because subject matter jurisdiction is lacking.  Following BU's detailed explanation that there is no justiciable case or controversy between an accused infringer and a former owner of a patent, D.I. 142 at 15-20, Lumileds conceded the point by failing to respond to that independent ground for dismissal when seeking leave to conduct personal jurisdiction discovery before answering the motion to dismiss.

Moreover, the Court need not reach either personal or subject matter jurisdiction because the Court has discretion over whether to entertain a declaratory judgment action even if both personal jurisdiction and subject matter jurisdiction are proper.  Here, because BU does not even own the patent-in-suit, and thus cannot threaten Lumileds over it, the Court need not—particularly this late in the case—entertain Lumileds' declaratory judgment claims against BU.

*Certainteed*, 849 F. Supp. 2d at 76 ("[E]ven if the Court did have subject matter jurisdiction, there is no reason for the Court to waste judicial resources and entertain the plaintiff's declaratory judgment action… the defendant does not own the [relevant] patent."); *see also BP Chem. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed. Cir. 1993) (the core purpose of the Declaratory Judgment Act is "to enable a person who is reasonably <u>at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side</u>").[3]

## III.   FACTUAL BACKGROUND

BU has already provided factual background related to the patent-in-suit in its motion to dismiss.  D.I. 142 at 8-9.  Without belaboring the point, BU will briefly supplement its earlier factual background to correct factual misrepresentations by Lumileds in Lumileds' motion and to provide a more thorough record, which plainly establishes that BU had nothing to do with Dr. Schubert's decision to sue in Delaware.

Under BU's intellectual property policy, professors like Dr. Schubert assign their inventions to the University and share in any proceeds from those inventions.  If at some point in the life of an invention BU decides not to continue pursuing it, BU's policy permits the invention to be returned to the inventor.  BU's standard terms in such a situation include, as consideration for the transfer, that a modest percentage of any proceeds from the invention will be shared by the inventor with BU.  D.I. 143 ¶ 15.

---

[3] In this brief, emphasis is added unless otherwise noted.

That is what happened here.  In February 2010, at Dr. Schubert's request, BU's Technology Transfer office recommended that the patent be returned to him.  Lumileds attached that recommendation memo to its motion papers.  D.I. 146, Ex. B.  Lumileds' motion, however, misrepresents what the memo says in an effort to paint BU in a negative light.  Lumileds states: "BU decided to revive the patent in order to 'generate significant revenue' through a percentage financial interest in Dr. Schubert's patent spoils.  Molano Decl., Ex. B."  D.I. 146 at 1-2.

Lumileds' characterization of the memo was inaccurate.

The memo states that "Total patent expenses to date are $27,272" and recommends returning the patent to Dr. Schubert under an arrangement that required Dr. Schubert to reimburse BU for $10,000 of those disbursements up front, regardless of whether Dr. Schubert ever succeeded in monetizing the patent.  Thereafter, BU would be entitled to 25% of any revenues from the invention until BU recovered the remainder of its out of pocket costs (i.e., $17,272) followed by a 10% royalty on "future sales."  D.I. 146, Ex. B.  BU's retention of a small share of revenue from a returned invention was a standard arrangement.  D.I. 143 ¶ 15.

The memo states that returning the patent to Dr. Schubert under these conditions represented "a good opportunity for BU to recover at least a portion of prior patent costs on a technology that <u>was not likely to be licensed and generate significant revenue before its expiration</u>."  D.I. 146, Ex. B at BU000448.  Plainly, "at least a portion of prior patent costs" refers to the $10,000 up front payment and the phrase "generate significant revenue" refers not to what BU hoped the invention would do in the future but rather to what the invention had failed to do in the past, such that returning it to the inventor for even a modest lump sum reimbursement of prior disbursements (i.e., "at least a portion of prior patent costs") made sense.

Lumileds' suggestion to the Court that "BU decided to revive the patent in order to 'generate significant revenue' through a percentage financial interest in Dr. Schubert's patent spoils," D.I. 146 at 1-2, is a distortion of the memo.

Moreover, the memo shows that BU, in returning the patent, had no idea Dr. Schubert might ever file a lawsuit.  Inventions are commonly monetized not through litigation but by professors starting companies based on the technology they invented.  The memo contemplates a "10% royalty to BU on future sales"—meaning that if Dr. Schubert sold products embodying the technology, BU would be entitled to share in his success.  D.I. 146, Ex. B at BU000448. The memo does not mention litigation.

 Almost two years later, on October 12, 2011, Dr. Schubert reached out to BU to clarify how the agreement would treat different scenarios: "I may license the patent to a company … I may sell my Patent Rights to an Intellectual Property (IP) Firm … I may litigate against one or multiple companies for infringement."  Ex. A at BU001279.  Nowhere did he indicate which, if any, of these scenarios he expected to pursue; he simply wanted to understand what the financial repercussions of all scenarios would be.  *Id.*  The paralegal at BU to whom Mr. Schubert had directed his inquiry referred Dr. Schubert to another individual at BU, the Executive Director of Business Development. *Id.* at 1278-79.

That person never even responded to Dr. Schubert.  A month and a half later, on November 23, 2011, Dr. Schubert followed up with another email.  *Id.* at 1278.  On December 1, 2011, Dr. Schubert sent another email indicating that he had finally spoken with BU's Executive Director of Business Development and seeking to confirm his understanding of the financial terms that would apply from "licensing / selling" the patent.  *Id.*  If Dr. Schubert had a plan to sue Lumileds (or any other company) he did not mention it, nor did he seek BU's input.

At the end of that month, on December 31, 2011, Dr. Schubert provided BU with an "annual report" about his activities related to the patent. D.I. 146, Ex. H. That report cagily states in generic fashion, "I have engaged a law firm (Troutman Sanders LLP) to assist with the licensing effort of both patents. At the present time and during 2011, the patent was being offered for licensing in a joint effort by the law firm and me." *Id.* It does not identify the companies with which Dr. Schubert was discussing licensing. It does not mention the possibility of litigation. It does not mention Delaware. It does not seek BU's input. It does not in any way suggest that BU was involved in the licensing effort. To the contrary, the arms-length nature of the report reinforces that BU had no involvement at all.

A few months later, on May 7, 2012, Dr. Schubert's counsel reached out to BU to ask that BU execute a supplemental assignment of the right to past damages—a right that would need to be consolidated not just for litigation, but before any sophisticated company would buy or license the patent. The email did not mention litigation. Ex. B at BU000653. Ten days later BU had not even responded, and Dr. Schubert's counsel followed up. *Id.* at BU000652. BU later agreed to execute a supplemental assignment and asked for a letter to re-confirm the financial arrangement. Once again, there was no mention of litigation. *Id.* at BU000650. BU continued to work slowly. After receiving the letter on June 29, 2012 confirming that BU's 10% share applied to "the net proceeds Professor Schubert receives from licensing or selling the Patent," with no mention of litigation (*id.* at BU000647-648), BU executed the supplemental assignment (*id.* at BU000655-656). At no point in the course of this correspondence did Dr. Schubert's counsel indicate that Dr. Schubert planned to file patent infringement lawsuits; at no time did he identify the companies with which Dr. Schubert was discussing licensing the patent; and at no point did he solicit, nor did BU ever offer, input on whether or where to sue.

## IV.    ARGUMENT

### A.    Lumileds' Two Theories Both Require BU to Have Participated in Filing the Lawsuit in Delaware, and the Evidence Shows the Opposite

As explained in BU's motion to dismiss, specific jurisdiction requires that a party purposely direct its activities to the forum <u>and</u> that the claim against it arise from those activities. D.I. 142 at 5, 12.  Recognizing that BU itself did not act in Delaware, Lumileds now pursues the "conspiracy" doctrine, under which a different party's activities can justify exercising personal jurisdiction if a "conspiracy to defraud" existed between the first party and the second party. *Chase Bank USA N.A. v. Hess*, 2011 WL 45132, *6 (D. Del. Jan. 6, 2011).

Because the conspiracy doctrine "affords 'an easy technique to evade the thrust of the *International Shoe* holding,' it has been narrowly construed" by Delaware courts.  *Iotex Comm'ns, Inc. v. Defries*, 1998 WL 914265, *7 (Del. Ch. Dec. 21, 1998).  As a threshold matter the doctrine does not apply here because there is no counterclaim for civil conspiracy—even Lumileds does not claim to have such a cause of action.  Rather, Lumileds is attempting to force a square peg into a round hole because it concedes that BU itself did not act in Delaware.  By contrast, in every case cited by Lumileds, the plaintiff actually pled a claim for civil conspiracy. *Int'l Constr. Prods. LLC v. Caterpillar, Inc.*, 419 F.Supp.3d 791, 796 (D. Del. Oct 10, 2019) ("Plaintiff … asserts claims against defendants … for … civil conspiracy."); *Chase*, 2011 WL 45132 (the first amended complaint, Docket No. 82, includes a count for civil conspiracy); *Osco Motors Co., LLC v. Marine Acquisition Corp.*, 2014 WL 2875374, *1 (D. Del. June 24, 2014) ("Plaintiffs' third amended complaint alleges … civil conspiracy."); *Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449 A.2d 210, 212 (Del. 1982) ("The complaint alleged that the several defendants conspired to defraud the plaintiff by…"); *Matthew v. Fläkt Woods Group SA*, 56 A.3d 1023, 1026 (Del. 2012) (complaint pled civil conspiracy).

In any event, the bottom line is that Lumileds has come forward with no facts whatsoever to support even the plausibility of the prerequisite to its "conspiracy" theory, i.e., that BU was involved in the filing of this lawsuit, including the selection of Delaware as the jurisdiction in which it should be filed.  Under these circumstances, jurisdictional discovery simply is not appropriate.  *Parker v. Learn Skills Corp.*, 530 F. Supp. 2d 661, 673 n.6 (D. Del. 2008) (granting motion to dismiss and denying jurisdictional discovery: "given that plaintiff has failed to even allege sufficient jurisdictional facts, the court declines to order jurisdictional discovery"); *Telcordia Techs., Inc. v. Alcatel S.A.*, 2005 WL 1268061, *9 (D. Del. May 27, 2005) ("there must be *some* competent evidence to demonstrate that personal jurisdiction over [a] defendant might exist before allowing discovery to proceed") (emphasis original); *Hockerson-Halberstadt, Inc. v. Propet USA, Inc.*, 62 F. App'x 322, 338 (Fed. Cir. 2003) ("When the lack of personal jurisdiction is clear, like in this case, further discovery serves no purpose and should be denied.").  The only case Lumileds cites about jurisdictional discovery confirms that jurisdictional discovery should be granted "[i]f a plaintiff presents <u>factual allegations that suggest with reasonable particularity</u> the possible existence of the requisite contacts between the party and the forum state." *Toys 'R' Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003).  Here, BU made fulsome document productions in response to a 2013 subpoena from another defendant and a July 2019 subpoena from Lumileds, and the documents paint a consistent picture: Dr. Schubert never communicated to BU that he was considering filing a patent infringement suit, he never consulted with BU about doing so, he never sought or received input from BU about where to sue, and if anything Dr. Schubert kept BU at arms-length, providing little if any information about his plans.  For its part, BU responded to Dr. Schubert's inquiries without any particular urgency or enthusiasm.  *See supra* Section III.

- 10 -

Lumileds also separates out the "effects test" as an argument separate from its "conspiracy" theory.  D.I. 146 at 6-7.  But, as BU explained in its motion to dismiss and Lumileds does not dispute, the "effects test" would require that BU have expressly aimed tortious conduct at Delaware.  D.I. 142 at 13; D.I. 146 at 6.  Lumileds argues, without authority, that inequitable conduct is an "intentional tort," when in fact it is a <u>defense</u> to patent infringement.  D.I. 142 at 18; *Microchip Tech. Inc. v. Chamberlain Grp., Inc.*, 441 F.3d 936, 943 (Fed. Cir. 2006).  In any event, there can be no dispute that the alleged inequitable conduct, i.e., revival of the '475 patent, was directed to the Patent Office in Virginia, not to Delaware.

The one case Lumileds cites for the proposition that the alleged inequitable conduct could implicate Delaware proves BU's point.  In *Buck's, Inc. v. Buc-eee's, Ltd.*, 2009 WL 1839007 (D. Neb. June 25, 2009), the plaintiff alleged that the defendant made false statements to the Trademark Office in a trademark opposition proceeding, an *inter partes* adversarial proceeding between the litigation defendant (the party that filed the opposition) and the litigation plaintiff (the party that had applied for the trademark).  Thus, the entire proceeding in which the defendant made the allegedly false statements was aimed at the plaintiff.  The court found that, because the plaintiff was headquartered in Nebraska, "when Buc-ee's filed its allegedly fraudulent opposition before the TTAB, Buc-ee's knew the brunt of the injury would be suffered in Nebraska, since Nebraska is the state where the plaintiff conducts the majority of its business."  *Id.* at *6.  Here, the alleged inequitable conduct occurred two years before the suit was filed, before BU had even transferred the patent to Dr. Schubert, such that there was no conceivable connection to Lumileds or Delaware.  Moreover, because Lumileds is based in California, under the logic of *Buck's* any harm to Lumileds would be felt there, not in Delaware.  BU pointed this out in its motion to dismiss (D.I. 142 at 13 n.2) and Lumileds has no answer.

To the extent Lumileds relies on the filing of this suit in 2012 (rather than the alleged inequitable conduct directed to the Patent Office in 2010) for personal jurisdiction under the "effects test," as it does under its "conspiracy theory," jurisdictional discovery should be denied for the reasons already discussed in detail above: there is no evidence of any involvement by BU in Dr. Schubert's selection of this forum or in his filing of this lawsuit.  Indeed, all of the evidence is to the contrary.  *See supra* Section III.

It is difficult to understand why the popularity of the District of Delaware for patent infringement litigation (D.I. 146 at 2 & Ex. D) suggests to Lumileds that BU had any input into Dr. Schubert's selection of this Court.  To the contrary, it appears that Dr. Schubert merely made a common and practical choice to comply with patent venue requirements as thousands of other patent owners did in that time frame (and still do today).  Indeed, as Lumileds admits, two of the three companies sued by Dr. Schubert are incorporated in Delaware.  Had Dr. Schubert filed suit in the District of Massachusetts, where BU is based, the Court might naturally have asked whether BU had anything to do with that decision.  Dr. Schubert did not do so.[4]

While Lumileds is free to pursue inequitable conduct as a defense to Dr. Schubert's patent infringement claims, BU need not be a party to the case for him to do so, and it would be unjust to subject BU to burdensome jurisdictional discovery given the current record.

---

[4] As Dr. Schubert's counsel explained at the May 18 hearing, "BU sold the patent ten years ago. They don't have any stake or any ability to control any outcome of this case whatsoever.  They can't settle. They can't end the litigation. They can't drop anything.  This is Professor Schubert's patent.  The dispute now is between Professor Schubert and Lumileds."  D.I. 142, Ex. A at 87. BU confirms the accuracy of these representations by Dr. Schubert's counsel.

**B.      Lumileds' Motion Should Also Be Denied Because
It Requests Discovery Unrelated to Personal Jurisdiction**

The discovery requested by Lumileds is overbroad, perhaps reflecting confusion

engendered by the tenuous nature of Lumileds' new "conspiracy" and "effects" theories.  Both

theories indisputably relate to specific jurisdiction, and as noted above Lumileds has withdrawn

any discovery requests related to general jurisdiction (D.I. 146 at 4 n.4[5])—yet Lumileds is still

asking for discovery into "BU's revenue from <u>other</u> District of Delaware patent litigation" and

"BU's rights in <u>other</u> patents asserted in the District of Delaware."  D.I. 146 at 1, 4.  Yet "other"

patent litigations would have no relation to specific jurisdiction since specific jurisdiction only

arises from the acts underlying the claim at issue.

Similarly, Lumileds is asking for discovery into BU's financial interest in the '475 patent

even though, as discussed above, the financial interest itself arises from a transaction between

BU in Massachusetts and Dr. Schubert in New York two years before this suit was filed—and in

any event BU has already produced the agreement and Dr. Schubert's annual reports detailing

the revenues BU realized.

Accordingly, Lumileds' motion for jurisdictional discovery should be denied for the

additional reason that it is overbroad and seeks discovery that is duplicative and irrelevant to

Lumileds' new specific jurisdiction theories.

Finally, Lumileds' request for an extension of time to respond to BU's motion to dismiss

is premised on its supposed need for jurisdictional discovery.  Accordingly, if the Court denies

jurisdictional discovery, it should deny the request for an extension of time as well.

---

[5] *See also id.* at 1 (Lumileds requests "discovery regarding … <u>specific</u> personal jurisdiction").

**C.   Because the Court Can, and Should, Dismiss this Action for Lack of Subject Matter Jurisdiction and/or in Its Discretion Under the Declaratory Judgment Act, Jurisdictional Discovery Should Be Denied**

BU explained in detail in its motion to dismiss why, as a matter of law, there is no "case or controversy" between a <u>former</u> owner of a patent and an accused infringer with respect to infringement, validity or enforceability of the patent.  D.I. 142 at 15-20.  Lumileds could have responded when seeking jurisdictional discovery but elected to ignore the issue.  D.I. 146.

BU will not repeat the detailed arguments from its motion to dismiss but it bears reinforcing that the Court need not necessarily even rule on personal jurisdiction or subject matter jurisdiction to grant BU's motion to dismiss and deny Lumileds' motion for jurisdictional discovery.  Because the Declaratory Judgment Act uses the word "may," the Court enjoys "unique and substantial discretion" to decide whether exercising declaratory judgment jurisdiction in a particular case—even if personal jurisdiction and subject matter jurisdiction are both proper—would further "the principles of sound judicial administration."  *Comm'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1361 (Fed. Cir. 2020).  The purpose of declaratory judgment claims is to give an accused infringer the opportunity to resolve outstanding patent litigation threats even before being sued.  Because BU, a non-owner of the patent-in-suit, cannot threaten Lumileds, the Court may properly decline to hear Lumileds' counterclaims. *Certainteed*, 849 F. Supp. 2d at 76 ("[E]ven if the Court did have subject matter jurisdiction, there is no reason for the Court to waste judicial resources and entertain the plaintiff's declaratory judgment action… the defendant does not own the [relevant] patent.").

## V.      CONCLUSION

For the foregoing reasons, BU respectfully requests that the Court deny Lumileds'

motion and dismiss this case for lack of personal jurisdiction, improper venue and lack of

declaratory judgment jurisdiction—or simply exercise its discretion not to hear Lumileds'

declaratory judgment counterclaims against BU—for the reasons set forth herein and in D.I. 142.


|  |  |
|---|---|
|  | */s/ Karen E. Keller* |
|  | Karen E. Keller (No. 4489) |
|  | David M. Fry (No. 5486) |
| OF COUNSEL: | Nathan R. Hoeschen (No. 6232) |
| Michael Rader | SHAW KELLER LLP |
| WOLF, GREENFIELD & SACKS, P.C. | I.M. Pei Building |
| 605 Third Avenue | 1105 North Market Street, 12th Floor |
| New York, New York 10158 | Wilmington, DE 19801 |
| (212) 336-3850 | (302) 298-0700 |
|  | kkeller@shawkeller.com |
| Susmita A. Gadre | dfry@shawkeller.com |
| WOLF, GREENFIELD & SACKS, P.C. | nhoeschen@shawkeller.com |
| 600 Atlantic Avenue | *Attorneys for Trustees of Boston University* |
| Boston, Massachusetts 02210-2206 |  |
| (617) 646-8000 |  |

Dated: June 19, 2020

## CERTIFICATE OF SERVICE

I, Karen E. Keller, hereby certify that on June 19, 2020, this document was served on the

persons listed below in the manner indicated:

**BY EMAIL**

Brian E. Farnan
Michael J. Farnan
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Robert A. Angle, Esquire
TROUTMAN SANDERS LLP
1001 Haxall Point, 15th Floor
Richmond, VA 23219
(804) 697-1200
robert.angle@troutman.com

Blake A. Bennett
COOCH AND TAYLOR, P.A.
The Nemours Building
1007 N. Orange Street, Suite 1120
P.O. Box 1680
Wilmington, DE 19899-1680
(302) 984-3800
bbennett@coochtaylor.com

James M. Bollinger
Magnus Essunger
Gerald E. Porter
Katherine Harihar
TROUTMAN SANDERS LLP
875 Third Avenue
New York, NY 10022
(212) 704-6000
james.bollinger@troutman.com
magnus.essunger@troutman.com
gerald.porter@troutman.com
katherine.harihar@troutman.com

Edward D. Johnson
Michael A. Molano
Cliff A. Maier
Graham (Gray) M. Buccigross
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306
(650) 331-200
wjohnson@mayerbrown.com
mmolano@mayerbrown.com
cmaier@mayerbrown.com
gbuccigross@mayerbrown.com

*/s/ Karen E. Keller*
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
dfry@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Trustees of Boston University*

# EXHIBIT A

**CONFIDENTIAL**

| | |
|---|---|
| **From:** | Schubert, E. Fred |
| **To:** | Pratt, Michael J |
| **Cc:** | Gildea, Brian D ; Anderson, Janine B |
| **Subject:** | Re: FW: U.S. Patent No. 6,294,475 |
| **Date:** | Thursday, December 1, 2011 1:37:24 PM |

Dear Michael

It was good talking with you earlier this week, after not having talked with you for an extended period of time, I think we may not have had a conversation since I left Boston University in 2002. Also, congratulations on the promotion to Director (my wishes may come late, but it is only now that I learn that you have been promoted to Director).

I would like to confirm that, based on the contract that governs the return of the '475 and '899 patents to me, you and I have the joint understanding that BU will receive 10% of the net revenue that I personally receive by licensing / selling these patents. BU would not receive a share from revenue that may be received by any third parties, e.g., an LED company, a troll company, or a law firm.

The second inventor on the '475 patent, Dr. Dean Stocker, would be compensated by BU based on the applicable BU policies that govern the compensation of BU inventors. I would not be compensated by BU. I would not be obligated to compensate Dr. Stocker.

Also, as I indicated during my call, I plan to submit to you / BU my annual report on the '475 / '899 licensing effort by the end of the year, i.e. at the end of this month.

Best regards, Fred

On Wed, Nov 23, 2011 at 1:03 PM, Schubert, E. Fred <efredschubert@gmail.com> wrote:
> Dear Michael
>
> A few weeks ago, I sent a query to BU that is shown in the email from me to Janine below. Janine forwarded my email to you. Could you please let me know your view on my query? Thank you in advance.
>
> Happy Thanksgiving! --- Fred
>
>
> On Wed, Oct 12, 2011 at 6:24 PM, Anderson, Janine B <jandersn@bu.edu> wrote:
>> Dear Fred,
>>
>>
>> By copy of this email, I am asking Michael Pratt , Executive Director of Business Development, to

respond to your email.


Best,

Janine

---

**From:** Schubert, E. Fred [mailto:efredschubert@gmail.com]
**Sent:** Wednesday, October 12, 2011 5:09 PM
**To:** Anderson, Janine B
**Subject:** U.S. Patent No. 6,294,475


Dear Janine,

This communication concerns my licensing efforts with respect to the U.S. Patent No. 6,294,475. The licensing effort is proceeding as planned and I will update you later this year through the annual report. One question came up: From our agreement, dated July 16, 2010, it is my understanding that payments from me to Boston University will come from income arising from licensing.


I would like to consider the following scenarios:

(A)   I may license the patent to a company. My income from licensing the patent would be a one-time payment of $ 500,000. However, the company may derive an income of $ 5,000,000 from the patent. It is my understanding that payments from me to BU would be based on my income, i.e. $ 500,000.


(B)   I may sell my Patent Rights to an Intellectual Property (IP) Firm (Troll company). I would receive a one-time payment of $ 500,000 from the IP Firm for the Patent Rights. The IP Firm may enforce the Patent Rights via a lawsuit and may receive $ 5,000,000 from which I would receive nothing.  It is my understanding that payments to BU would be based on my income, i.e. $ 500,000.

(C)   I may litigate against one or multiple companies for infringement on the patent with the assistance of a law firm. As a result, a settlement or verdict would be reached. I would receive $ 500,000. An additional $ 500,000 would be paid by the companies to the law firm assisting me. It is my understanding that payments to BU would be based on my income, i.e. $ 500,000.

I would very much appreciate if you could please let me know that my understanding is congruent with the understanding of the BU Technology Transfer Office. For your convenience, I have attached BU's Letter / Agreement concerning this Patent. Thank you

**CONFIDENTIAL**

very much in advance.

Best regards, Fred

# EXHIBIT B

DANIEL A. LADOW
212.704.6218 telephone
212.704.5929 facsimile
daniel.ladow@troutmansanders.com

# TROUTMAN SANDERS

TROUTMAN SANDERS LLP
Attorneys at Law
The Chrysler Building
405 Lexington Avenue
New York, New York 10174-0700
212.704.6000 telephone
troutmansanders.com

June 29, 2012

Brian D. Gildea, Esq.
Executive Director, Intellectual Property & Licensing
Boston University
Technology Department
53 Bay State Road
Boston, MA 02215

Re:   **U.S. Patent No. 6,294,475: Crystallographic Wet Chemical Etching of III-Nitride Material**

Dear Brian:

This concerns terms of the acquisition by (and return to) and assignment of the above-referenced patent (the "Patent") to Professor E. Fred Schubert who is a named inventor thereon. A letter dated July 16, 2010 (the "July 2010 Letter") from Vinit Nijhawan, then the Managing Director of Boston University's Technology Development Office, set forth various terms relating to Professor Schubert's acquisition, or the return to him, of the Patent. As set forth in the July 2010 Letter, Professor Schubert agreed, in consideration for the assignment of the rights to the Patent, to pay Boston University (the "University") 25% of any future income arising from the Patent until the amount of $27,272.32 is reimbursed (that amount represents the University's patent prosecution related costs, of which $10,000 have already been paid by Professor Schubert towards the $27,272.32 at the time of the acquisition in 2010) and 10% thereafter. The present letter supplements and clarifies those terms as follows.

It is understood that whatever payment(s) to the University become due at the 10% rate (i.e., after the prosecution cost amount is reimbursed) will be based on the net proceeds Professor Schubert receives from licensing or selling the Patent such that Professor's Schubert's costs and expenses in obtaining income from the Patent, including legal expenses, are not included in the calculation of such net proceeds. However, in the event that the University should incur out-of-pocket costs and expenses, such as for outside counsel, as a result of any legal action brought by Professor Schubert on the Patent and if such out-of-pocket expenses incurred by the University amount to more than 10% of Professor Schubert's net proceeds from the Patent, Professor Schubert agrees to pay the University an amount sufficient to make the University whole for such expenses insofar as Professor Schubert has received sufficient net proceeds from the Patent in order to do so. It is understood that Professor Schubert is obligated to make such a payment to the University only insofar as he obtains sufficient net proceeds from the Patent; he is not obligated to reimburse the University for any such expenses the University may incur in the

BU000647

TROUTMAN
SANDERS

Brian D. Gildea, Esq.
June 29, 2012
Page 2

event he receives no net proceeds from the Patent and he is not obligated to make the University whole with respect to the full amount of such expenses if the net proceeds he receives from the Patent are insufficient to do so.

The July 2010 Letter and this letter solely concern the payment terms relating to Professor Schubert's acquisition (or reacquisition) of the Patent. The terms of the assignment of the Patent are governed by that certain Assignment dated October 20, 2010 and that certain Supplemental Assignment agreed to by the parties.

Sincerely,

Daniel A. Ladow

cc. Professor E. Fred Schubert

BU000648

**From:** Gildea, Brian D
**To:** "Ladow, Daniel A."
**Cc:** Pratt, Michael J; Essunger, Magnus; Anderson, Janine B
**Subject:** RE: Prof. Schubert: '475 Patent Supplemental Assignment
**Date:** Wednesday, July 11, 2012 1:53:04 PM
**Attachments:** ExecutedSupplementalAssignment_July11_2012.pdf

Dan,

As per our discussion yesterday, here is the fully executed supplemental assignment. Original to follow by mail. Please confirm receipt of the original when acquired. Good luck.

Brian



**Brian D. Gildea, Esq.**
*Executive Director, Intellectual Property & Licensing*
**Boston University | Technology Development**
53 Bay State Road, Boston, MA 02215
Phone: (617) 353-8996 • Fax: (617) 358-6207
Web Site: http://www.bu.edu/otd/

**Confidentiality Notice:**

This e-mail, including any attachment(s), is intended for receipt and use by the intended addressee(s), and may contain confidential information as well as information subject to the attorney-client privilege and/or attorney work product immunity. If you are not an intended recipient of this e-mail, you are hereby notified that any unauthorized use or distribution of this e-mail is strictly prohibited and may be a violation of applicable privacy law(s). You are hereby requested to delete this communication and its attachment(s) without making any copies thereof and to contact the sender of this e-mail immediately. Nothing contained in the body and/or header of this e-mail is intended as a signature or intended to bind the addressor or any person represented by the addressor to the terms of any agreement that may be the subject of this e-mail or its attachment(s), except where such intent is expressly and unequivocally indicated.

---

**From:** Ladow, Daniel A. [mailto:Daniel.Ladow@troutmansanders.com]
**Sent:** Friday, June 29, 2012 3:11 PM
**To:** Gildea, Brian D
**Cc:** Pratt, Michael J; Essunger, Magnus; Anderson, Janine B
**Subject:** RE: Prof. Schubert: '475 Patent Supplemental Assignment

Thanks, Brian.

The letter is enclosed.

Enjoy the holiday all.

We'll keep an eye out for the executed supplement.

Regards,
Dan

Daniel A. Ladow
Troutman Sanders LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
daniel.ladow@troutmansanders.com
212.704.6218 p
212.704.5929 f

**From:** Gildea, Brian D [mailto:gildeabd@bu.edu]
**Sent:** Friday, June 29, 2012 2:34 PM
**To:** Ladow, Daniel A.
**Cc:** Pratt, Michael J; Essunger, Magnus; Anderson, Janine B
**Subject:** RE: Prof. Schubert: '475 Patent Supplemental Assignment

Dan,

Today, I finally received permission from my OGC to move forward with this matter. The text of the side-letter is fine. Please prepare the letter and send to me. In the meantime I'll have a clean version of the assignment prepared and executed by Marty Howard. I'll be out next week but will send these out to you when I return to the office.

Regards,
Brian



**Brian D. Gildea, Esq.**
*Executive Director, Intellectual Property & Licensing*
**Boston University | Technology Development**
53 Bay State Road, Boston, MA 02215
Phone: (617) 353-8996 • Fax: (617) 358-6207
Web Site: http://www.bu.edu/otd/

**Confidentiality Notice:**

This e-mail, including any attachment(s), is intended for receipt and use by the intended addressee(s), and may contain confidential information as well as information subject to the attorney-client privilege and/or attorney work product immunity. If you are not an intended recipient of this e-mail, you are hereby notified that any unauthorized use or distribution of this e-mail is strictly prohibited and may be a violation of applicable privacy law(s). You are hereby requested to delete this communication and its attachment(s) without making any copies thereof and to contact the sender of this e-mail immediately. Nothing contained in the body and/or header of this e-mail is intended as a signature or intended to bind the addressor or any person represented by the addressor to the terms of any agreement that may be the subject of this e-mail or its attachment(s), except where such intent is expressly and unequivocally indicated.

---

**From:** Ladow, Daniel A. [mailto:Daniel.Ladow@troutmansanders.com]

**Sent:** Friday, June 15, 2012 9:36 PM
**To:** Gildea, Brian D
**Cc:** Pratt, Michael J; Essunger, Magnus
**Subject:** Re: Prof. Schubert: '475 Patent Supplemental Assignment

Thanks, Brian.
You too.

On Jun 15, 2012, at 6:59 PM, "Gildea, Brian D" <gildeabd@bu.edu> wrote:

Dan,

I've been swamped this week because I'm out next week. I just sent your draft letter to OGC for their consideration. Despite what you read in a auto-reply I'll be looking for OCGs comments next week and forward any of them to you for your consideration. Enjoy the weekend.

Regards,
Brian

<image001.jpg>

**Brian D. Gildea, Esq.**
*Executive Director, Intellectual Property & Licensing*
**Boston University | Technology Development**
53 Bay State Road, Boston, MA 02215
Phone: (617) 353-8996 • Fax: (617) 358-6207
Web Site: http://www.bu.edu/otd/

**Confidentiality Notice:**

This e-mail, including any attachment(s), is intended for receipt and use by the intended addressee(s), and may contain confidential information as well as information subject to the attorney-client privilege and/or attorney work product immunity. If you are not an intended recipient of this e-mail, you are hereby notified that any unauthorized use or distribution of this e-mail is strictly prohibited and may be a violation of applicable privacy law(s). You are hereby requested to delete this communication and its attachment(s) without making any copies thereof and to contact the sender of this e-mail immediately. Nothing contained in the body and/or header of this e-mail is intended as a signature or intended to bind the addressor or any person represented by the addressor to the terms of any agreement that may be the subject of this e-mail or its attachment(s), except where such intent is expressly and unequivocally indicated.

**From:** Ladow, Daniel A. [mailto:Daniel.Ladow@troutmansanders.com]
**Sent:** Tuesday, June 12, 2012 9:45 PM
**To:** Gildea, Brian D
**Cc:** Pratt, Michael J; Essunger, Magnus
**Subject:** RE: Prof. Schubert: '475 Patent Supplemental Assignment

Thanks, Brian.
The changes from the OGC are fine with us. When you accept the changes there is one errant comma after the second word in the first line that should be omitted. As for the letter, the draft text follows below. Please let me know if you have any questions or comments.
Regards,
Dan

Draft Letter:
Re: U.S. Patent No. 6,294,475: Crystallographic Wet Chemical Etching of III-Nitride Material

Dear Dren,

This concerns terms of the acquisition by (and return to) and assignment of the above-referenced patent (the "Patent") to Professor E. Fred Schubert who is a named inventor thereon. A letter dated July 19, 2010 (the "July 2010 Letter") from Vinit Nijhawan, then the Managing Director of Boston University's Technology Development Office, set forth various terms relating to Professor Schubert's acquisition, or the return to him, of the Patent. As set forth in the July 2010 Letter, Professor Schubert agreed, in consideration for the assignment of the rights to the Patent, to pay Boston University (the "University") 25% of any future income arising from the Patent until the amount of $27,272.32 is reimbursed (that amount represents the University's patent prosecution related costs, of which $10,000 have already been paid by Professor Schubert towards the $27,272.32 at the time of the acquisition in 2010) and 10% thereafter. The present letter supplements and clarifies those terms as follows.

It is understood that whatever payment(s) to the University become due at the 10% rate (i.e., after the prosecution cost amount is reimbursed) will be based on the net proceeds Professor Schubert receives from licensing or selling the Patent such that Professor's Schubert's costs and expenses in obtaining income from the Patent, including legal expenses, are not included in the calculation of such net proceeds. However, in the event that the University should incur out-of-pocket costs and expenses, such as for outside counsel, as a result of any legal action brought by Professor Schubert on the Patent and if such out-of-pocket expenses incurred by the University amount to more than 10% of Professor Schubert's net proceeds from the Patent, Professor Schubert agrees to pay the University an amount sufficient to make the University whole for such expenses insofar as Professor Schubert has received sufficient net proceeds from the Patent in order to do so. It is understood that Professor Schubert is obligated to make such a payment to the University only insofar as he obtains sufficient net proceeds from the Patent; he is not obligated to reimburse the University for any such expenses the University may incur in the event he receives no net proceeds from the Patent and he is not obligated to make the University whole with respect to the full amount of such expenses if the net proceeds he receives from the Patent are insufficient to do so.
The July 2010 Letter and this letter solely concern the payment terms relating to Professor Schubert's acquisition (or reacquisition) of the Patent. The terms of the assignment of the Patent are governed by that certain Assignment dated October 20, 2010 and that certain Supplemental Assignment agreed to by the parties.
Sincerely,

**From:** Gildea, Brian D [mailto:gildeabd@bu.edu]
**Sent:** Tuesday, June 12, 2012 5:39 PM
**To:** Ladow, Daniel A.
**Cc:** Pratt, Michael J; Essunger, Magnus
**Subject:** RE: Prof. Schubert: '475 Patent Supplemental Assignment

Dan,

Sorry but I've only got a reply today from my OGC about the assignment. I sent them the attached for their review and approval and they have approved this document as of today. I think the few edits clarify what BU has assigned to Dr. Schubert. Please review.

Also can you send me a draft letter regarding our understanding with respect to recovering costs the University might incur if your client is successful in recovering for patent infringement. Thanks.

Brian

**Brian D. Gildea, Esq.**
*Executive Director, Intellectual Property & Licensing*

<image001.jpg>   **Boston University | Technology Development**
53 Bay State Road, Boston, MA 02215
Phone: (617) 353-8996 • Fax: (617) 358-6207
Web Site: http://www.bu.edu/otd/

**Confidentiality Notice:**
This e-mail, including any attachment(s), is intended for receipt and use by the intended addressee(s), and may contain confidential information as well as information subject to the attorney-client privilege and/or attorney work product immunity. If you are not an intended recipient of this e-mail, you are hereby notified that any unauthorized use or distribution of this e-mail is strictly prohibited and may be a violation of applicable privacy law(s). You are hereby requested to delete this communication and its attachment(s) without making any copies thereof and to contact the sender of this e-mail immediately. Nothing contained in the body and/or header of this e-mail is intended as a signature or intended to bind the addressor or any person represented by the addressor to the terms of any agreement that may be the subject of this e-mail or its attachment(s), except where such intent is expressly and unequivocally indicated.

**From:** Ladow, Daniel A. [mailto:Daniel.Ladow@troutmansanders.com]
**Sent:** Tuesday, June 05, 2012 8:19 AM
**To:** Gildea, Brian D
**Cc:** Pratt, Michael J; Essunger, Magnus
**Subject:** Re: Prof. Schubert: '475 Patent Supplemental Assignment

Sure. We'll call you at 11:00. Thanks.

On Jun 5, 2012, at 7:35 AM, "Gildea, Brian D" <gildeabd@bu.edu> wrote:

> Would 11AM work? I now have a meeting from 9:30 to 11.

> <image001.jpg>   **Brian D. Gildea, Esq.**
> *Executive Director, Intellectual Property & Licensing*
> **Boston University | Technology Development**
> 53 Bay State Road, Boston, MA 02215
> Phone: (617) 353-8996 • Fax: (617) 358-6207
> Web Site: http://www.bu.edu/otd/

> **Confidentiality Notice:**
> This e-mail, including any attachment(s), is intended for receipt and use by the intended addressee(s), and may contain confidential information as well as information subject to the attorney-client privilege and/or attorney work product immunity. If you are not an intended recipient of this e-mail, you are hereby notified that any unauthorized use or distribution of this e-mail is strictly prohibited and may be a violation of applicable privacy law(s). You are hereby requested to delete this communication and its attachment(s) without making any copies thereof and to contact the sender of this e-mail immediately. Nothing contained in the body and/or header of this e-mail is intended as a signature or intended to bind the addressor or any person represented by the addressor to the terms of any agreement that may be the subject of this e-mail or its attachment(s), except where such intent is expressly and unequivocally indicated.

> **From:** Ladow, Daniel A. [mailto:Daniel.Ladow@troutmansanders.com]
> **Sent:** Monday, June 04, 2012 6:41 PM
> **To:** Gildea, Brian D
> **Cc:** Pratt, Michael J; Essunger, Magnus
> **Subject:** Re: Prof. Schubert: '475 Patent Supplemental Assignment

> Brian, how about 10:15 am tomorrow; or please suggest another time if more convenient.
> Thanks,
> Dan

> On Jun 4, 2012, at 6:33 PM, "Gildea, Brian D" <gildeabd@bu.edu> wrote:

>> Daniel,

>> I had a discussion with my OGC about this issue. Is there a good time to discuss with you tomorrow.

>> Brian

>> <image001.jpg>   **Brian D. Gildea, Esq.**
>> *Executive Director, Intellectual Property & Licensing*
>> **Boston University | Technology Development**
>> 53 Bay State Road, Boston, MA 02215
>> Phone: (617) 353-8996 • Fax: (617) 358-6207
>> Web Site: http://www.bu.edu/otd/

>> **Confidentiality Notice:**

BU000651

This e-mail, including any attachment(s), is intended for receipt and use by the intended addressee(s), and may contain confidential information as well as information subject to the attorney-client privilege and/or attorney work product immunity. If you are not an intended recipient of this e-mail, you are hereby notified that any unauthorized use or distribution of this e-mail is strictly prohibited and may be a violation of applicable privacy law(s). You are hereby requested to delete this communication and its attachment(s) without making any copies thereof and to contact the sender of this e-mail immediately. Nothing contained in the body and/or header of this e-mail is intended as a signature or intended to bind the addressor or any person represented by the addressor to the terms of any agreement that may be the subject of this e-mail or its attachment(s), except where such intent is expressly and unequivocally indicated.

**From:** Ladow, Daniel A. [mailto:Daniel.Ladow@troutmansanders.com]
**Sent:** Thursday, May 17, 2012 2:24 PM
**To:** Gildea, Brian D
**Cc:** Pratt, Michael J; Essunger, Magnus
**Subject:** Re: Prof. Schubert: '475 Patent Supplemental Assignment

Thanks, Brian. We look forward to hearing from the GC's office.

Regards,
Dan

On May 17, 2012, at 2:19 PM, "Gildea, Brian D" <gildeabd@bu.edu> wrote:

Dan,

I got your voice mail and have to admit that I didn't delegate to anyone. I just haven't been able to attend to it.

In principal, we at OTD agree that by assigning to Dr. Schubert, we didn't intend to retain a right to sue or any of the proceeds for past infringement. However I have to put this before my Office of General Counsel before it can be approved for signature by the University. I'll get this to them today and let you know if they have any comments or requests for changes.

Brian

<image001.jpg>

Brian D. Gildea, Esq.
*Executive Director, Intellectual Property & Licensing*
**Boston University | Technology Development**
53 Bay State Road, Boston, MA 02215
Phone: (617) 353-8996 • Fax: (617) 358-6207
Web Site: http://www.bu.edu/otd/

**Confidentiality Notice:**
This e-mail, including any attachment(s), is intended for receipt and use by the intended addressee(s), and may contain confidential information as well as information subject to the attorney-client privilege and/or attorney work product immunity. If you are not an intended recipient of this e-mail, you are hereby notified that any unauthorized use or distribution of this e-mail is strictly prohibited and may be a violation of applicable privacy law(s). You are hereby requested to delete this communication and its attachment(s) without making any copies thereof and to contact the sender of this e-mail immediately. Nothing contained in the body and/or header of this e-mail is intended as a signature or intended to bind the addressor or any person represented by the addressor to the terms of any agreement that may be the subject of this e-mail or its attachment(s), except where such intent is expressly and unequivocally indicated.

**From:** Pratt, Michael J
**Sent:** Monday, May 14, 2012 3:27 PM
**To:** Gildea, Brian D
**Cc:** Daniel.Ladow@troutmansanders.com
**Subject:** FW: Prof. Schubert: '475 Patent Supplemental Assignment

Brian,

See attached regarding Prof. Fred Schubert and the assignment provision we discussed briefly this morning.

Dan – Brian Gildea should be able to assist you on this matter.

If you have any questions please let me know.

Best,

Mike

Michael Pratt
Executive Director, Business Development
Boston University

Office of Technology Development
53 Bay State Road
Boston, MA 02169

Ph. 617-353-4569
mpratt@bu.edu
www.bu.edu/otd

---

**From:** Ladow, Daniel A. [mailto:Daniel.Ladow@troutmansanders.com]
**Sent:** Monday, May 07, 2012 2:20 PM
**To:** Pratt, Michael J
**Subject:** Prof. Schubert: '475 Patent Supplemental Assignment

Dear Mike,

As discussed, enclosed is the Supplemental Assignment. Please let me know if there are any questions. Could you kindly provide us with an original signed copy and also email an executed copy?

Thanks and best regards,

Dan

**Daniel A. Ladow**
Troutman Sanders LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
daniel.ladow@troutmansanders.com
212.704.6218 p
212.704.5929 f

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice that may be contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding any penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction(s) or tax-related matter(s) that may be addressed herein.

This e-mail communication (including any attachments) may contain legally privileged and confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice that may be contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding any penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction(s) or tax-related matter(s) that may be addressed herein.

This e-mail communication (including any attachments) may contain legally privileged and confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice that may be contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding any penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction(s) or tax-related matter(s) that may be addressed herein.

This e-mail communication (including any attachments) may contain legally privileged and confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice that may be contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding any penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction(s) or tax-related matter(s) that may be addressed herein.

This e-mail communication (including any attachments) may contain legally privileged and confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice that may be contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding any penalties under the Internal Revenue Code or (ii) promoting, marketing or

recommending to another party any transaction(s) or tax-related matter(s) that may be addressed herein.

This e-mail communication (including any attachments) may contain legally privileged and confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice that may be contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding any penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction(s) or tax-related matter(s) that may be addressed herein.

This e-mail communication (including any attachments) may contain legally privileged and confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice that may be contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding any penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction(s) or tax-related matter(s) that may be addressed herein.

This e-mail communication (including any attachments) may contain legally privileged and confidential information intended solely for the use of the intended recipient. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying or other use of this communication (or its attachments) is strictly prohibited.

## SUPPLEMENTAL ASSIGNMENT

WHEREAS, the Trustees of Boston University, a Massachusetts corporation, with its principal place of business at One Silber Way, Boston, MA 02215, transferred its entire right, title and interest in and to U.S. Patent No. 6,294,475 (the "Patent") to E. Fred Schubert (Professor. Schubert), a United States citizen, residing at 17 Eaton Road, Troy, NY 12180, through an Assignment executed October 20, 2010, which is recorded with the United States Patent and Trademark Office at Reel 025178, Frame 0715 (the "Assignment"); and

WHEREAS, the Trustees of Boston University and Professor Schubert intended said transfer to include all rights to recoveries based on any claim for damages by reason of past infringements of the Patent, i.e., for any infringement which occurred prior to the date of the Assignment (October 20, 2010), in addition to any damages based on any act of infringement occurring subsequent to the date of the Assignment; and

WHEREAS, the Trustees of Boston University and Professor Schubert recognize that, to pass the right to sue and recover for past infringements, it may be necessary to expressly so state in the assignment, and desire that this Supplemental Assignment perform that function:

NOW, THEREFORE, this Supplemental Assignment: a) confirms that the Assignment was intended to and did sell, assign, and transfer to Professor Schubert, his successors, legal representatives, and assigns, all rights to sue for, obtain, and collect any recoveries based on any claim for damages by reason of any past infringement of the Patent; and b) to the extent that the original Assignment did not assign such rights, the Trustees of Boston University hereby assign, transfer and sell (for good and valuable consideration) to Professor Schubert, his successors, legal representatives, and assigns, all rights of the Trustees of Boston University to sue for, obtain and collect any recoveries based on any claim for damages by reason of any past infringements of the Patent, i.e., for damages based on any act of infringement that occurred prior to the date of the Assignment (October 20, 2010).

The undersigned hereby grant(s) Professor Schubert's patent counsel, Troutman Sanders LLP,, the power to insert on this Supplemental Assignment any further identification which may be necessary or desirable in order to comply with the rules of the U.S. Patent and Trademark Office.

1487180v1

BU000655

IN TESTIMONY WHEREOF, WE, Trustees of Boston University, hereunto set our signature this 2nd day of ___July___, 2012.



_____
Signature of Trustees of Boston University Representative

Printed Name of Representative  ___Martin J. Howard___ **Treasurer**

_____
Title of Representative.

STATE OF ___Massachusetts___
COUNTY OF ___Suffolk___ SS:

This 2nd day of ___July___, 2012, before me personally came the above-named ___Martin J. Howard___, to me personally known as the individual who executed the same of his/her own free will for the purposes therein set forth.

_____
Notary Public

**Linda C. Dixon**
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
December 28, 2018



1487180v1