# EXHIBIT A



**Boston University** Technology Development

53 Bay State Road
Boston, Massachusetts 02215
T 617-353-4550  F 617-353-6141

**Janine B. Anderson**
**Patent Manager, Technology Transfer**
**T: 617-358-0238**
jandersn@bu.edu

November 27, 2009

Ms. Carol Petrosky                    Ms. Walda J. Jacobs
Associate Counsel                     Patent Assistant
Office of Naval Research               National Science Foundation
Department of the Navy                 Office of the General Counsel
800 N. Quincy Street                   4201 Wilson Blvd., Rm. 1265
Arlington, VA  22217-5660              Arlington, VA  22230

Re:    Grant Number (ONR):N00014-98-1-0194
       Grant Number (NSF): ECS 9714047
       Boston University Case Number: BU98-11
       U.S. Patent No.6,294,475 B1
       Issued:  September 25, 2001
       U.S. Application Serial No. 09/338,709
       Filed: June 23, 1999
       Title    :CRYSTALLOGRAPHIC WET CHEMICAL ETCHING OF III-
                 NITRIDE MATERIAL
       By       E. Fred Schubert and Dean A. Stocker

Dear Ms. Petrosky and Ms. Jacobs:

Boston University decided not to pay the 2nd year U.S. maintenance due September 25, 2009 for
the above-referenced patent (copy enclosed).  This decision was made due to lack of commercial
interest in the invention.

We apologize for the lateness of this notice.  Please do not hesitate to contact me should you
have any questions or require additional information.

Sincerely yours,

Janine B. Anderson

Enclosure

BU000451

# EXHIBIT B

**Boston University** Technology Development

53 Bay State Road
Boston, Massachusetts 02215
T 617-353-6303 F 617-353-6141



Ashley J. Stevens, D.Phil (Oxon), CLP
Executive Director, Technology Transfer
Senior Research Associate, ITEC
astevens@bu.edu

**TO:**      Charles River Campus Patent Committee

**FROM:**   Ashley Stevens

**DATE:**   February 22, 2010

**SUBJECT:**   Recommendation to return invention BU98-11 "Crystallographic Wet Chemical
Etching of GaN" to Professor Fred Schubert, currently of Rensselaer Polytechnic
Institute

<u>Background</u>

The invention is a photo-enhanced electro-chemical process for etching smooth crystallographic
surfaces into III-Nitrides. This method has the advantage of low surface damage and relatively
lower cost than the currently used dry plasma etching. The inventors are Professor Fred
Schubert and Dr. Dean Stocker. Professor Schubert is currently at RPI and Dr. Stocker at
Thermo-Fischer. The invention was funded by an NIH grant.

A US Utility patent was issued 9/25/2001 (Foreign rights were abandoned in 1999.) OTD paid
the first maintenance fee in 2005 but after Professor Schubert's move to RPI from BU, did not
pay the second fee of $1,010 due on 9/25/2009 after consulting with Professor Schubert. The
case is therefore currently abandoned at the patent office, but can be revived for a filing fee of
$2,500.

Total patent expenses to date are $27,272.

Subsequently Professor Schubert expressed interest in having the patent rights assigned to him.
We proposed the following terms to both Professor Schubert and his co-inventor Dr. Stocker,
contingent on CRC Patent Committee approval.

Proposed Terms

- BU would return the invention to the government funding agency, and the inventors
  would then seek to have title transferred to them.
- Initial fee of $10,000 paid by the inventors to BU to cover the fees at the patent office
  and part of the prior prosecution costs.
- Any future fees due to the patent office
- If there is success at generating any future revenues from this invention, then
  - 25% of such revenue would go to BU until the balance of the patent costs were
    paid (i.e. $17,272)

    o   Thereafter, 10% royalty to BU on future sales.

Professor Schubert has accepted our proposal. The same proposal was made to Dr. Stocker on January 20, 2010 with the statement that, should we not hear from him by February 8, 2010, we would assume he is not interested in the proposal. Dr. Stocker has not responded, therefore we assume he is not interested in the above proposed terms.

Recommendation

We believe this is a good opportunity for BU to recover at least a portion of prior patent costs on a technology that was not likely to be licensed and generate significant revenue before its expiration. Generally, when an invention is returned to the inventor, BU only is promised a portion of future revenue, but not up-front money for prior patent costs.

We therefore recommend that the Patent Committee approve the above plan to return the invention to Professor Schubert.

Ashley J. Stevens

# EXHIBIT C

U.S. Patent ar       demark Office: U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reductio    of 1995, no persons are required to respond to a collection    .ormation unless it displays valid OMB control number.

## PETITION TO ACCEPT UNINTENTIONALLY DELAYED PAYMENT OF MAINTENANCE FEE IN AN EXPIRED PATENT (37 CFR 1.378(c))

| Patent Number | Issue Date (YYYY-MM-DD) | Application Number | Filing Date (YYYY-MM-DD) | Docket Number (if applicable) |
|---|---|---|---|---|
| 6294475 | 2001-09-25 | 09338709 | 1999-06-23 | BU.4458 |

CAUTION: Maintenance fee (and surcharge, if any) payment must correctly identify: (1) the patent number and (2) the application number of the actual U.S. application leading to issuance of that patent to ensure the fee(s) is/are associated with the correct patent. 37 CFR 1.366(c) and (d).

**SMALL ENTITY**

☒ Patentee claims, or has previously claimed, small entity status. See 37 CFR 1.27.

**LOSS OF ENTITLEMENT TO SMALL ENTITY STATUS**

☐ Patentee is no longer entitled to small entity status. See 37 CFR 1.27(g)

| NOT Small Entity | | Small Entity | |
|---|---|---|---|
| Fee | Code | Fee | Code |
| ○ 3 ½ year | (1551) | ○ 3 ½ year | (2551) |
| ○ 7 ½ year | (1552) | ◉ 7 ½ year | (2552) |
| ○ 11 ½ year | (1553) | ○ 11 ½ year | (2553) |

**SURCHARGE**

The surcharge required by 37 CFR 1.20(i)(2) (Fee Code 1558) must be paid as a condition of accepting unintentionally delayed payment of the maintenance fee.

**MAINTENANCE FEE (37 CFR 1.20(e)-(g))**

The appropriate maintenance fee must be submitted with this petition.

**STATEMENT**

THE UNDERSIGNED CERTIFIES THAT THE DELAY IN PAYMENT OF THE MAINTENANCE FEE TO THIS PATENT WAS UNINTENTIONAL

PETITIONER(S) REQUEST THAT THE DELAYED PAYMENT OF THE MAINTENANCE FEE BE ACCEPTED AND THE PATENT REINSTATED

THIS PORTION MUST BE COMPLETED BY THE SIGNATORY OR SIGNATORIES

37 CFR 1.378(d) states: "Any petition under this section must be signed by an attorney or agent registered to practice before the Patent and Trademark Office, or by the patentee, the assignee, or other party in interest."

I certify, in accordance with 37 CFR 1.4(d)(4) that I am

◉ An attorney or agent registered to practice before the Patent and Trademark Office

○ A sole patentee

○ A joint patentee; I certify that I am authorized to sign this submission on behalf of all the other patentees.

○ A joint patentee; all of whom are signing this e-petition

○ The assignee of record of the entire interest

OSRAM GmbH Exhibit 1035, Page 4

Under the Paperwork Reductio,    U.S. Patent an    demark Office: U.S. DEPARTMENT OF COMMERCE
                                 f 1995, no persons are required to respond to a collection    rmation unless it displays valid OMB control number.

| Patent Practitioner |
| --- |

A signature of the applicant or representative is required in accordance with 37 CFR 1.33 and 10.18. Please see 37 CFR 1.4(d) for the form of the signature

| Signature | /Matthew E. Connors/ | Date (YYYY-MM-DD) | 2010-04-22 |
| --- | --- | --- | --- |
| Name | Matthew E. Connors | Registration Number | 33298 |

This collection of information is required by 37 CFR 1.378(c). The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **This form can only be used when in conjunction with EFS-Web. If this form is mailed to the USPTO, it may cause delays in reinstating the patent.**

OSRAM GmbH Exhibit 1035, Page 5

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

OSRAM GmbH Exhibit 1035, Page 6

# EXHIBIT H

| | |
|---|---|
| **From**: | Schubert, E. Fred [efredschubert@gmail.com] |
| **Sent**: | 12/31/2011 5:50:02 PM |
| **To**: | Janine B Anderson [jandersn@bu.edu] |
| **Subject**: | Annual report on patents returned to inventor: '475 patent and '899 patent |
| **Attachments**: | 2011-12-31 EFSchubert-to-BostonUniversity--Report-on-475-&-899-patents.pdf |

Dear Janine

Attached please find my report, for the year 2011, on two patents ('475 and '899) that Boston University returned to me. Thank you.

Sincerely, Fred

EFS00006462
EFS00006462

To:             Ms. Janine Anderson; Manager, IP, and Licensing < jandersn@bu.edu >
                Boston University, 53 Bay State Road, Boston MA 02215

From:           E. Fred Schubert, 17 Eaton Road, Troy NY 12180 < EFredSchubert@gmail.com >

Re:             Annual report on patent returned by BU to inventor

Date:           December 31, 2011

Classification: Confidential


This report concerns

- US patent 6,294,475 entitled "Crystallographic wet chemical etching of III-nitride material". The inventors are Dean A. Stocker, a BU alumnus, and I (E. Fred Schubert), a former faculty member of BU. In 2010, the patent was returned from BU to one of the inventors, me (Dr. Schubert).
- US patent 5,932,899 entitled "Semiconductor having enhanced acceptor activation". The inventor is I (E. Fred Schubert), a former faculty member of BU. In 2011, the patent was returned from BU to me (Dr. Schubert).

**Status**:      In 2010, I engaged a law firm (Troutman Sanders LLP) to assist with the licensing effort of both patents. At the present time and during 2011, the patent was being offered for licensing in a joint effort by the law firm and me.

**Licensing**:   The patent has not been licensed in 2011.

**Revenue**:     No revenue has been collected in 2011.

Should you have questions, please do not hesitate to contact me. Thank you.

Sincerely,

# EXHIBIT I

To:            Mr. Sean Lee; Director, Business Development < seanlee@bu.edu >
               Ms. Janine Anderson; Manager, IP, and Licensing < jandersn@bu.edu >
               Boston University, 53 Bay State Road, Boston MA 02215

From:          E. Fred Schubert, 17 Eaton Road, Troy NY 12180 < EFredSchubert@gmail.com >

Re:            Annual report on patent returned by BU to inventor

Date:          December 31, 2010

Classification:   Confidential


This report concerns the US patent 6,294,475 entitled "Crystallographic wet chemical etching of III-nitride material". The inventors are Dean A. Stocker, a BU alumnus, and I (E. Fred Schubert), a former faculty member of BU. In 2010, the patent was returned from BU to one of the inventors, me (Dr. Schubert). The contractual terms of the return included stipulations that obligated me to submit an annual report to BU and to pay to BU 10% of all patent revenue.

*Status*:      In 2010, I engaged a law firm (Troutman Sanders LLP) to assist with the licensing effort. The patent is being evaluated at the present time in a joint effort by the law firm and me.

*Licensing*:   The patent has not been licensed in 2010.

*Revenue*:     No revenue has been collected in 2010.

Should you have questions, please do not hesitate to contact me. Thank you.


                              Sincerely,   *E. F. Schubert*

# EXHIBIT J



DANIEL A. LADOW
212.704.6218 telephone
212.704.5926 facsimile
daniel.ladow@troutmansanders.com

TROUTMAN
SANDERS

TROUTMAN SANDERS LLP
Attorneys at Law
The Chrysler Building
405 Lexington Avenue
New York, New York 10174-0700
212.704.6000 telephone
troutmansanders.com

May 17, 2013

VIA EMAIL
Julio A. Garceran
Chief Intellectual Property Counsel
Cree, Inc.
4600 Silicon Drive
Durham, NC 27703

Re:   **Schubert/Cree Patent License and Settlement Agreement: Confidentiality
Rider for Boston University**

Dear Julio:

As discussed, Prof. Schubert needs to be able to report on recoveries relating to the '475 patent to Boston University (BU). To permit that under the terms of the above-referenced Agreement, this will confirm Cree's agreement to the following rider to Article VI of the Agreement concerning confidentiality.

Notwithstanding the provisions of Article VI of the Agreement, Cree agrees that Professor Schubert (including his attorneys) can disclose the monetary terms of the Agreement, specifically the contents of Article III, Section 3.01(A), to personnel in Boston University's Office of General Counsel on the condition, to be agreed to in advance in writing by Boston University's Office of General Counsel, that they shall not disclose any terms of the Agreement, including the monetary terms, to any other persons employed by Boston University, other than individuals within the University's Office of Technology Development and as otherwise necessary for internal reporting purposes, or to any third parties except that they may disclose the existence of a license to such third parties. Further, to the extent such information is requested pursuant to subpoena or other process issued by a court or agency of competent jurisdiction such information shall be provided under protective order and marked "CONFIDENTIAL -- SUBJECT TO OUTSIDE ATTORNEYS' EYES ONLY".

EFS00019584

TROUTMAN
SANDERS

Julio A. Garceran, Esq.
May 17, 2013
Page 2

We also agree to so mark any letter we send to BU containing such information and will inform BU that any document BU creates containing this information, if ever produced, should be marked as stated above.  Additionally, any letter sent to BU by Professor Schubert will include a description/instruction of BU's obligation to protect the information being provided as described above.

Please countersign below to indicate Cree's agreement with the foregoing and return a copy to me by email.  Thank you.

Best regards,

Daniel A. Ladow

DAL:mlm

cc:    Garfield Simms (via email)

Agreed to by Julio A. Garceran on behalf of Cree

Date: 5/20/13

20491216v1

EFS00019585

# EXHIBIT M

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| E. FRED SCHUBERT, | |
|      Plaintiff and Counterclaim Defendant, | |
| v. | |
| LUMILEDS LLC, | C.A. No:  1:12-cv-00924-MN |
|      Defendant and Counterclaim Plaintiff, | **LUMILEDS LLC'S FIRST SET OF REQUESTS FOR PRODUCTION TO TRUSTEES OF BOSTON UNIVERSITY** |
| v. | |
| TRUSTEES OF BOSTON UNIVERSITY, | |
|      Counterclaim Defendant. | |

PROPOUNDING PARTY:   LUMILEDS LLC

RESPONDING PARTY:     TRUSTEES OF BOSTON UNIVERSITY

SET NUMBER:          ONE (NOS. 1-23)

Pursuant to Federal Rule of Civil Procedure 34, Lumileds LLC ("Lumileds" or "Defendant") requests that Counterclaim Defendant Trustees of Boston University provide a written response to the following requests and produce the documents and things described below for inspection and copying at the offices of Mayer Brown LLP, Two Palo Alto Square, Suite 300, 3000 El Camino Real, Palo Alto CA 94306, within thirty (30) days of service.

You do not need to reproduce any documents that You or Plaintiff E. Fred Schubert have already produced in this action.  Instead, you may indicate in Your response that such documents were already produced, and who produced them.

In answering these requests, the following definitions and instructions apply:

## DEFINITIONS

The following definitions and rules of interpretation apply to each request as if incorporated into the request. Notwithstanding any definition stated below, each word, term, or phrase used in the requests below is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and/or the Federal Rules of Evidence.

1.      "'475 Patent" means U.S. Patent No. 6,294,475, including its underlying applications, U.S. Patent Application No. 09/338,079 and U.S. Provisional Application No. 60/090,409.

2.      "Connors" means patent attorney Matthew E. Connors.

3.      "Document" means any document, thing, or electronically stored information, stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable  form, subject to production under the Federal Rules of Civil Procedure, the Local Rules of the U.S. District Court for the District of Delaware, and other applicable law and rules. "Document" excludes the items listed in

Schedule A of the District of Delaware Default Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI").

4.      "Identify," when referring to a Person, means to give the Person's full name, present or last known home and business addresses and telephone numbers, and when referring to a natural person, the present or last known place of employment, employer; and present or last known position.

5.      "Including," "Include," and their variants mean including, but not limited to.

6.      "Lumileds" means Lumileds LLC, its employees, officers, and directors, representatives, successors, and predecessors, and Includes the formerlynamed defendants in this action, Koninklijke Philips Electronics N.V. and Philips Lumileds Lighting Company LLC.

7.      "Lumileds' 2019 Subpoena to Boston University" refers to the subpoena issued by Koninklijke Philips Electronics NV and Philips Lumileds Lighting Co. LLC to Trustees of Boston University on July 22, 2019 in connection  with *Schubert v. Philips et al.*, Civil Action No. 1:12-CV-00924-MN (D. Del.).

8.      "Motion to Transfer Venue" refers to the Motion to Transfer Venue to the District of Massachusetts filed by Osram in the Schubert v. Osram Litigation on November 7, 2012, D.I. 10.

9.      "NSF" means the United States National Science Foundation, its employees, agents, representatives, and attorneys, and includes Walda J. Jacobs and Robin Fritsch.

10.     "ONR" means the United States Office of Naval Research, its employees, agents, representatives, and attorneys, and includes Carol Petrosky and John Karasek.

11.     "Osram" means Osram AG, Osram Opto Semiconductors GmbH, Osram Opto Semiconductors, Inc., and Osram Sylvania, Inc., and any of their attorneys.

12.     "Person" includes the plural and the singular and includes, without limitation, any natural person, alive or deceased, any corporation, organization, partnership, joint venture, sole proprietorship, other business entity or association, foundation, trust, and any government or governmental body, commission, department, committee, board, or agency, and any and all officers, directors, members, principals, shareholders, employees, agents, and other representatives thereof.

13.     "Petition to Accept Unintentionally Delayed Payment" means any USPTO form entitled "Petition to Accept Unintentionally Delayed Payment of Maintenance Fee in an Expired Patent" or any other Document created for the purpose of filing with the USPTO to address the non-payment, late payment, or delayed payment of patent maintenance fees, including drafts thereof.

14.     "Schubert v. Osram Litigation" means *E. Fred Schubert v. Osram AG, Osram Opto Semiconductors GmbH, Osram Opto Semiconductors, Inc., and Osram Sylvania, Inc.,* Civil Action No. 12-923, in the United States District Court for the District of Delaware.

15.     "Stocker" means Dean A. Stocker, a listed co-inventor on the '475 Patent.

16.      "USPTO" means the United States Patent and Trademark Office.

17.     "Schubert" means the Plaintiff in this action, Dr. E. Fred Schubert, and any Persons acting or purporting to act for or on his behalf, or who are subject to his direction and control, including his agents, employees, attorneys, consultants, and representatives.

18.     "You", "Your" or "BU" means Boston University, and Includes the Trustees of Boston University, Boston University's Office of Technology Development, Boston University's Technology Development Office, Boston University's Office of Technology Transfer, Boston University's Charles River Campus Patent Committee, Matthew E. Connors, Samuels, Gauthier & Stevens LLP, Gesmer Updegrove LLP, Janine B. Anderson, Dr. Sean Lee, Dr. Ashley J.

Stevens, Vinit Nijhawan, Karen Jacobs, Andrei Ruckenstein, Barry Unger, Selim Unlu, Scott Whitaker, Joyce Wong, Rick Clark, April Effort, Jonathan Jensen, Michael Pratt, Crystal Talley, Martin Howard, and Boston University's agents, attorneys, representatives, subsidiaries, departments, branches, or other organizational or operating units, any successors, assignees, or predecessor organizations or other business or academic entities (whether merged, acquired, or otherwise); any parent corporations, affiliates, or any other entities of Boston University which are or have been under common control of Boston University, Including the Boston University Photonics Center.

## **INSTRUCTIONS**

1.      You do not need to reproduce any Documents that You or Schubert have already produced in this action.  Instead, you may indicate in Your response that such Documents were already produced, and who produced them.

2.      Answer each request in compliance with the Federal Rules of Civil Procedure, the Local Rules of Civil Practice and Procedure of the U.S. District Court for the District of Delaware, and other applicable law and rules.

3.      Set forth each request before each response.

4.      If, in responding to these requests, You claim that any request, or a definition or instruction applicable thereto, is ambiguous, do not use such a claim as a basis for refusing to respond, but rather set forth as part of the response the language You claim is ambiguous and the interpretation You have used to respond to the individual request.

5.      If, in answering these requests, You object to any part of a request, each part of said request shall be treated separately. If an objection is made to one subpart, the remaining subpart(s) shall be answered. If an objection is made on the basis that the request or subpart

thereof calls for information that is beyond the scope of discovery, the request or subpart thereof shall be answered to the extent that it is not objectionable.

6.      Each of these requests shall be construed independently and shall not be limited by any other request, except that Documents responsive to more than one request need be produced only once.

7.      Unless superseded by agreement of the parties, the Documents identified and produced in response to these requests shall be organized either to correspond to the relevant requests or as they are kept in the ordinary course of business.

8.   All Documents originating as paper or "hard copy" Documents shall:

a.   be produced with all associated file labels, file headings, and file folders together with the responsive Documents from each file, and each file shall be identified by its owner or custodian;

b.   if produced in hard copy, and if found stapled or fastened together, be produced stapled or fastened together and shall include all attachments currently or previously appended to each Document, regardless of whether such attachments themselves would be independently responsive to these requests;

c.   if produced in electronic form, be produced in reasonably accessible and text-searchable electronic form, including, but not limited to, 300 D.P.I. Group IV compression single page TIFF format images;

d.   be produced in original form if they cannot be legibly copied; and

e.   bear, on each page of each Document produced, a unique number that includes a symbol or abbreviation that identifies the producing party ("Bates Number").

9.   Unless superseded by agreement of the parties, all Documents originating as electronically stored information ("ESI"), including, but not limited to, writings, drawings,

graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form—shall:

    a.  for emails, Word documents, PowerPoint documents, and PDF documents, be produced in a reasonably accessible and text-searchable electronic form, including, without limitation, 300 D.P.I. Group IV compression single-page TIFF format images with load files, associated with particular TIFF format images through a database in a reasonably accessible electronic form;

    b.  under no circumstances be produced as TIFF format images generated by scanning from paper copies of electronically stored information;

    c.  for Microsoft Excel documents, be produced in native format; and

    d.  for other document types, otherwise be produced in a format to be agreed among the parties.

10.    In the event that more than one copy of a Document exists, produce every copy on which there appears any notation or marking of any sort not appearing on any other copy (including routing or filing instructions) or any copy containing different attachments from any other copy.

11.    In accordance with Federal Rule of Civil Procedure 26(e), these requests are continuing in nature. If, after responding, You obtain or become aware of any additional information relating to these requests, You must supplement Your responses.

12.    In accordance with Federal Rule of Civil Procedure 26(b)(5), if You withhold any documents on the basis of privilege or work-product, You shall expressly state the nature of your claim and describe the nature of the withheld materials in the form of a privilege log that identifies the nature of your claim, the date, the name of the document (to the extent the name

does not reveal the privileged material), the sender and the recipient(s).  However, You do not need to log any information generated after the Lumileds LLC's May 19, 2020 filing of its Counterclaim against You.

## REQUESTS FOR PRODUCTION

### Jurisdictional Requests

**REQUEST FOR PRODUCTION NO. 1**   All Documents reflecting, discussing, or referencing revenue You received, expect to receive, have rights to, or may receive, directly or indirectly, relating to the '475 Patent, any lawsuit asserting the '475 Patent, or Schubert.

**REQUEST FOR PRODUCTION NO. 2**   All communications between You and Schubert relating to potentially filing a lawsuit asserting the '475 Patent.

**REQUEST FOR PRODUCTION NO. 3**   All communications between You and Schubert relating to any lawsuit asserting the '475 Patent.

**REQUEST FOR PRODUCTION NO. 4**   All Documents constituting, evidencing, or referencing communications between You and Schubert regarding the jurisdiction, district, or state in which Schubert contemplated filing or actually filed a lawsuit asserting the '475 Patent.

**REQUEST FOR PRODUCTION NO. 5**   All communications between You and Schubert regarding Osram's Motion to Transfer Venue.

**REQUEST FOR PRODUCTION NO. 6**   All Documents referencing or discussing Your actual or potential financial interest in the '475 Patent, or any proceeds from the potential or actual licensing, granting of rights to, or enforcement of the '475 Patent.

**REQUEST FOR PRODUCTION NO. 7**   For any tax(es) You paid to the State of Delaware from 2012 to present, documents sufficient to show the amount paid and a description of the taxable event.

**REQUEST FOR PRODUCTION NO. 8**   Documents sufficient to Identify Your employees, independent contractors, and other Persons who conduct business in Delaware with You or on Your behalf, and the nature and extent of any such business, from 2012 to present.

**REQUEST FOR PRODUCTION NO. 9**   Documents sufficient to show sources of any revenue You have received from or related to property and/or assets located in Delaware at any time from 2012 to present.

**REQUEST FOR PRODUCTION NO. 10**  Documents sufficient to Identify any joint venture between You and any entity organized under the laws of Delaware or having a place of business in Delaware from 2012 to present, Including the nature of Your involvement, the nature of the business, the joint venture's revenue, Your revenue, and the time periods.

**REQUEST FOR PRODUCTION NO. 11**  Documents sufficient to Identify patent licenses or other patent agreements that You are a party to and that are governed by Delaware law, were executed in Delaware, or were otherwise negotiated or drafted in Delaware, and any of Your revenue therefrom.

**REQUEST FOR PRODUCTION NO. 12**  Documents sufficient to Identify all patent lawsuits filed in the District of Delaware in the last 10 years in which You had a contractual right to a portion of the proceeds from any settlement or judgment, whether You actually received any proceeds and how much, and the underlying contract creating the right to proceeds.

**REQUEST FOR PRODUCTION NO. 13**  Documents sufficient to Identify any lawsuits You have prosecuted, instituted, or been a party to in any Delaware state or federal court from 2000 to present, Including but not limited to *Oliver v. Boston University*, No. 16570 (Del. Ch. 2000), Your revenue from any such lawsuits, and all court filings relating to any challenge to personal jurisdiction by You.

**REQUEST FOR PRODUCTION NO. 14**  All Documents related to patent licenses You are a party to in which activities related to the license, such as development, manufacture, use, or sale of products covered by the license, occur in Delaware.

**REQUEST FOR PRODUCTION NO. 15**  Documents sufficient to show Your efforts to advertise, offer to sell, and/or provide of services and/or goods, and Your actual provision of services and/or goods, in Delaware from 2012 to present.

**REQUEST FOR PRODUCTION NO. 16**  Documents sufficient to Identify all property (whether real property or chattels) located in Delaware that You have an interest in, lease, or control, and the nature of that property and of Your interest in it, 2012 to present.

**REQUEST FOR PRODUCTION NO. 17**  Documents sufficient to Identify all corporate entities You have had a controlling interest or ownership interest in, and that were organized under Delaware laws, had a physical location in Delaware, or were registered to do business in Delaware, from 2000 to present, Including but not limited to Seragen, Inc. and Boston University, Inc., and the nature of the relationships.

**Merits Requests**

**REQUEST FOR PRODUCTION NO. 18**  All Documents requested in Lumileds' 2019 Subpoena to Boston University.

**REQUEST FOR PRODUCTION NO. 19**  All Documents constituting, evidencing, or referring to accusations that You or any of Your employees committed inequitable conduct by filing a false Petition to Accept Unintentionally Delayed Payment, other than Documents filed or produced in this action.

**REQUEST FOR PRODUCTION NO. 20**  Documents sufficient to identify all U.S. patents (by patent number) for which BU filed or caused to be filed a Petition to Accept Unintentionally Delayed Payment from 2006 to present.

**REQUEST FOR PRODUCTION NO. 21** Documents evidencing or discussing BU's reasons for "consolidating [its] active portfolio" of patents and its "effort to reduce [its] portfolio" of patents, as referenced in BU000268-269.

**REQUEST FOR PRODUCTION NO. 22** All Documents evidencing or discussing the reasons that BU offered to "return" (as that term is used in BU000268-269) any U.S. patents to the named inventors listed on those patents from 2008-2011.

**REQUEST FOR PRODUCTION NO. 23** All Documents constituting, evidencing, or referencing BU's actual or attempted licensing or granting of rights to any U.S. patent or patent application directed to the etching or cleaving of III-Nitride materials, Including draft and final licenses, covenants not to sue, royalty agreements, contracts, and communications relating to the foregoing, from 2006 to present.

DATED: June 4, 2020

OF COUNSEL

Mayer Brown LLP

Edward D. Johnson
Michael A. Molano
Cliff A. Maier
Graham (Gray) M. Buccigross
Two Palo Alto Square, Ste. 300
3000 El Camino Real
Palo Alto, CA 94306
Tel: 650-331-2000

Priya A. Desai
71 S. Wacker Drive
Chicago, IL 60611
Tel: 312-782-0600

COOCH AND TAYLOR

By: */s/ Blake A. Bennett*
    C. Scott Reese (#2036)
    Blake A. Bennett (#5133)
    The Nemours Building,
    1007 N. Orange Street, Ste. 1120
    Wilmington, DE 19899-1680
    Tel: (302) 984-3800

    *Attorneys for Defendant Lumileds LLC*

LUMILEDS' FIRST SET OF RFPS TO TRUSTEES OF BOSTON UNIVERSITY,
CASE NO. 1:12-924-MN

I, Graham (Gray) M. Buccigross, declare that I am over the age of eighteen years and not a party to this action.  I am employed in Palo Alto, California and my business address is Mayer Brown LLP, Two Palo Alto Square, Ste. 300, 3000 El Camino Real, Palo Alto, California  94306.  On June 4, 2020, I served the foregoing document(s) described as:

## LUMILEDS LLC'S FIRST SET OF REQUESTS FOR PRODUCTION TO TRUSTEES OF BOSTON UNIVERSITY

☐ By transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ By placing the document(s) listed above in a sealed envelope with postage prepaid, via First Class Mail, in the United States mail at Palo Alto, California addressed as set forth below.

☐ By placing the document(s) listed above in a sealed overnight service envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to an overnight service agent for delivery.

☐ By placing the document(s) listed above in a sealed envelope and causing them to be served via hand delivery addressed as set forth below

☒ By causing the document(s) listed above to be transmitted by e-mail to the following e-mail addresses as set forth below.

☐ By electronically filing the document(s) listed above with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the person(s) listed below.

| | |
|---|---|
| Attorneys for Counterclaim Defendant Trustees of Boston University<br><br>Michael Rader<br>Susmita Gadre<br>WOLF GREENFIELD<br>605 Third Avenue<br>New York, NY 10158<br>(212) 336-3850<br>mrader@wolfgreenfield.com | |
| Attorneys  for  Plaintiff  and  Counterclaim | |

| | |
|---|---|
| Defendant E. Fred Schubert<br><br>Brian E. Farnan (#4089)<br>Michael J. Farnan (#5165)<br>FARNAN LLP<br>919 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>(302) 777-0300<br>bfarnan@farnanlaw.com<br>mfarnan@farnanlaw.com | James M. Bollinger<br>Magnus Essunger<br>Gerald E. Porter<br>Katherine Harihar<br>TROUTMAN SANDERS LLP<br>875 Third Avenue<br>New York, NY 10022<br>(212) 704-6000<br>james.bollinger@troutman.com<br>magnus.essunger@troutman.com<br>gerald.porter@troutman.com<br>katherine.harihar@troutman.com<br><br>Robert A. Angle (admitted *pro hac vice*)<br>TROUTMAN SANDERS LLP<br>1001 Haxall Point, 15th Floor<br>Richmond, VA 23219<br>(804) 697-1200<br>robert.angle@troutman.com |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that I am admitted to practice *pro hac vice* in this litigation.


Dated June 4, 2020 at Menlo Park, California.


/s/ Graham (Gray) Buccigross
Graham (Gray) Buccigross

# EXHIBIT N

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of Delaware

| | |
|---|---|
| E. Fred Schubert | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No.   1:12-CV-00924-MN |
| Lumileds LLC | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                     TRUSTEES OF BOSTON UNIVERSITY
                        One Silber Way, Boston, MA 02215

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: TSG Reporting | Date and Time: |
|---|---|
| Regus, 225 Franklin Street, 26th Floor Boston, MA 02110 | 06/18/2020 10:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      06/08/2020

|   *CLERK OF COURT* | |
|---|---|
| | OR |
| _____ | /s/ Blake A. Bennett |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   LUMILEDS LLC
_____ , who issues or requests this subpoena, are:

Blake A. Bennett, Cooch and Taylor, P.A., The Nemours Building, 1007 N. Orange Street, Suite 1120, P.O. Box 1680, Wilmington, DE 19889-1680

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:12-CV-00924-MN

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a
person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or
regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly
transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial
expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or
tangible things at a place within 100 miles of where the person resides, is
employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney
responsible for issuing and serving a subpoena must take reasonable steps
to avoid imposing undue burden or expense on a person subject to the
subpoena. The court for the district where compliance is required must
enforce this duty and impose an appropriate sanction—which may include
lost earnings and reasonable attorney's fees—on a party or attorney who
fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce
documents, electronically stored information, or tangible things, or to
permit the inspection of premises, need not appear in person at the place of
production or inspection unless also commanded to appear for a deposition,
hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible
things or to permit inspection may serve on the party or attorney designated
in the subpoena a written objection to inspecting, copying, testing, or
sampling any or all of the materials or to inspecting the premises—or to
producing electronically stored information in the form or forms requested.
The objection must be served before the earlier of the time specified for
compliance or 14 days after the subpoena is served. If an objection is made,
the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party
may move the court for the district where compliance is required for an
order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the
order must protect a person who is neither a party nor a party's officer from
significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where
compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits
specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no
exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a
subpoena, the court for the district where compliance is required may, on
motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research,
development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does
not describe specific occurrences in dispute and results from the expert's
study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances
described in Rule 45(d)(3)(B), the court may, instead of quashing or
modifying a subpoena, order appearance or production under specified
conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be
otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These
procedures apply to producing documents or electronically stored
information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents
must produce them as they are kept in the ordinary course of business or
must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.*
If a subpoena does not specify a form for producing electronically stored
information, the person responding must produce it in a form or forms in
which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The
person responding need not produce the same electronically stored
information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person
responding need not provide discovery of electronically stored information
from sources that the person identifies as not reasonably accessible because
of undue burden or cost. On motion to compel discovery or for a protective
order, the person responding must show that the information is not
reasonably accessible because of undue burden or cost. If that showing is
made, the court may nonetheless order discovery from such sources if the
requesting party shows good cause, considering the limitations of Rule
26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information
under a claim that it is privileged or subject to protection as trial-preparation
material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or
tangible things in a manner that, without revealing information itself
privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a
subpoena is subject to a claim of privilege or of protection as
trial-preparation material, the person making the claim may notify any party
that received the information of the claim and the basis for it. After being
notified, a party must promptly return, sequester, or destroy the specified
information and any copies it has; must not use or disclose the information
until the claim is resolved; must take reasonable steps to retrieve the
information if the party disclosed it before being notified; and may promptly
present the information under seal to the court for the district where
compliance is required for a determination of the claim. The person who
produced the information must preserve the information until the claim is
resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a
motion is transferred, the issuing court—may hold in contempt a person
who, having been served, fails without adequate excuse to obey the
subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# Attachment A

<u>E. Fred Schubert v. Lumileds LLC</u>
Case No. 1:12-cv-00924-MN (D. Del.)

## **ATTACHMENT A**

Please note that, per Instruction No. 1 below, You do not need to reproduce a second time the Documents Bates labeled as BU000001-BU001230 that BU produced in the Schubert v. Osram Litigation, or the Documents Bates labeled as BU001231-BU001353 that BU produced in This Action.

## **DEFINITIONS**

The following definitions and rules of interpretation apply to each request as if incorporated into the request. Notwithstanding any definition stated below, each word, term, or phrase used in the requests below is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and/or the Federal Rules of Evidence.

1.    "'475 Patent" means U.S. Patent No. 6,294,475, including its underlying applications, U.S. Patent Application No. 09/338,079 and U.S. Provisional Application No. 60/090,409.

2.    "Connors" means patent attorney Matthew E. Connors.

3.    "Document" means any document, thing, or electronically stored information, stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable  form, subject to production under the Federal Rules of Civil Procedure, the Local Rules of the U.S. District Court for the District of Delaware, and other applicable law and rules. "Document" excludes the items listed in Schedule A of the District of Delaware Default Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI").

1

4. "Identify," when referring to a Person, means to give the Person's full name, present or last known home and business addresses and telephone numbers, and when referring to a natural person, the present or last known place of employment, employer; and present or last known position.

5. "Including," "Include," and their variants mean including, but not limited to.

6. "Lumileds" means Lumileds LLC, its employees, officers, and directors, representatives, successors, and predecessors, and Includes the formerlynamed defendants in this action, Koninklijke Philips Electronics N.V. and Philips Lumileds Lighting Company LLC.

7. "Lumileds' 2019 Subpoena to Boston University" refers to the subpoena issued by Koninklijke Philips Electronics NV and Philips Lumileds Lighting Co. LLC to Trustees of Boston University on July 22, 2019 in connection  with *Schubert v. Philips et al.*, Civil Action No. 1:12-CV-00924-MN (D. Del.).

8. "Motion to Transfer Venue" refers to the Motion to Transfer Venue to the District of Massachusetts filed by Osram in the Schubert v. Osram Litigation on November 7, 2012, D.I. 10.

9. "NSF" means the United States National Science Foundation, its employees, agents, representatives, and attorneys, and includes Walda J. Jacobs and Robin Fritsch.

10. "ONR" means the United States Office of Naval Research, its employees, agents, representatives, and attorneys, and includes Carol Petrosky and John Karasek.

11. "Osram" means Osram AG, Osram Opto Semiconductors GmbH, Osram Opto Semiconductors, Inc., and Osram Sylvania, Inc., and any of their attorneys.

12. "Person" includes the plural and the singular and includes, without limitation, any natural person, alive or deceased, any corporation, organization, partnership, joint venture, sole

736927807

proprietorship, other business entity or association, foundation, trust, and any government or governmental body, commission, department, committee, board, or agency, and any and all officers, directors, members, principals, shareholders, employees, agents, and other representatives thereof.

13.     "Petition to Accept Unintentionally Delayed Payment" means any USPTO form entitled "Petition to Accept Unintentionally Delayed Payment of Maintenance Fee in an Expired Patent" or any other Document created for the purpose of filing with the USPTO to address the non-payment, late payment, or delayed payment of patent maintenance fees, including drafts thereof.

14.     "Schubert v. Osram Litigation" means *E. Fred Schubert v. Osram AG, Osram Opto Semiconductors GmbH, Osram Opto Semiconductors, Inc., and Osram Sylvania, Inc.,* Civil Action No. 12-923, in the United States District Court for the District of Delaware.

15.     "Stocker" means Dean A. Stocker, a listed co-inventor on the '475 Patent.

16.     "USPTO" means the United States Patent and Trademark Office.

17.     "Schubert" means the Plaintiff in this action, Dr. E. Fred Schubert, and any Persons acting or purporting to act for or on his behalf, or who are subject to his direction and control, including his agents, employees, attorneys, consultants, and representatives.

18.     "You", "Your" or "BU" means Boston University, and Includes the Trustees of Boston University, Boston University's Office of Technology Development, Boston University's Technology Development Office, Boston University's Office of Technology Transfer, Boston University's Charles River Campus Patent Committee, Matthew E. Connors, Samuels, Gauthier & Stevens LLP, Gesmer Updegrove LLP, Janine B. Anderson, Dr. Sean Lee, Dr. Ashley J. Stevens, Vinit Nijhawan, Karen Jacobs, Andrei Ruckenstein, Barry Unger, Selim Unlu, Scott

3

Whitaker, Joyce Wong, Rick Clark, April Effort, Jonathan Jensen, Michael Pratt, Crystal Talley, Martin Howard, and Boston University's agents, attorneys, representatives, subsidiaries, departments, branches, or other organizational or operating units, any successors, assignees, or predecessor organizations or other business or academic entities (whether merged, acquired, or otherwise); any parent corporations, affiliates, or any other entities of Boston University which are or have been under common control of Boston University, Including the Boston University Photonics Center.

<u>**INSTRUCTIONS**</u>

1.      You do not need to reproduce any Documents that You or Schubert have already produced in this action.  Instead, you may indicate in Your response that such Documents were already produced, and who produced them.

2.      Answer each request in compliance with the Federal Rules of Civil Procedure, the Local Rules of Civil Practice and Procedure of the U.S. District Court for the District of Delaware, and other applicable law and rules.

3.      Set forth each request before each response.

4.      If, in responding to these requests, You claim that any request, or a definition or instruction applicable thereto, is ambiguous, do not use such a claim as a basis for refusing to respond, but rather set forth as part of the response the language You claim is ambiguous and the interpretation You have used to respond to the individual request.

5.      If, in answering these requests, You object to any part of a request, each part of said request shall be treated separately. If an objection is made to one subpart, the remaining subpart(s) shall be answered. If an objection is made on the basis that the request or subpart thereof calls for information that is beyond the scope of discovery, the request or subpart thereof shall be answered to the extent that it is not objectionable.

4

6.      Each of these requests shall be construed independently and shall not be limited by any other request, except that Documents responsive to more than one request need be produced only once.

7.      Unless superseded by agreement of the parties, the Documents identified and produced in response to these requests shall be organized either to correspond to the relevant requests or as they are kept in the ordinary course of business.

8.   All Documents originating as paper or "hard copy" Documents shall:

    a.   be produced with all associated file labels, file headings, and file folders together with the responsive Documents from each file, and each file shall be identified by its owner or custodian;

    b.   if produced in hard copy, and if found stapled or fastened together, be produced stapled or fastened together and shall include all attachments currently or previously appended to each Document, regardless of whether such attachments themselves would be independently responsive to these requests;

    c.   if produced in electronic form, be produced in reasonably accessible and text-searchable electronic form, including, but not limited to, 300 D.P.I. Group IV compression single page TIFF format images;

    d.   be produced in original form if they cannot be legibly copied; and

    e.   bear, on each page of each Document produced, a unique number that includes a symbol or abbreviation that identifies the producing party ("Bates Number").

9.   Unless superseded by agreement of the parties, all Documents originating as electronically stored information ("ESI"), including, but not limited to, writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any

736927807

medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form—shall:

    a.  for emails, Word documents, PowerPoint documents, and PDF documents, be produced in a reasonably accessible and text-searchable electronic form, including, without limitation, 300 D.P.I. Group IV compression single-page TIFF format images with load files, associated with particular TIFF format images through a database in a reasonably accessible electronic form;

    b.  under no circumstances be produced as TIFF format images generated by scanning from paper copies of electronically stored information;

    c.  for Microsoft Excel documents, be produced in native format; and

    d.  for other document types, otherwise be produced in a format to be agreed among the parties.

10.    In the event that more than one copy of a Document exists, produce every copy on which there appears any notation or marking of any sort not appearing on any other copy (including routing or filing instructions) or any copy containing different attachments from any other copy.

11.    In accordance with Federal Rule of Civil Procedure 26(e), these requests are continuing in nature. If, after responding, You obtain or become aware of any additional information relating to these requests, You must supplement Your responses.

12.    In accordance with Federal Rule of Civil Procedure 26(b)(5), if You withhold any documents on the basis of privilege or work-product, You shall expressly state the nature of your claim and describe the nature of the withheld materials in the form of a privilege log that identifies the nature of your claim, the date, the name of the document (to the extent the name does not reveal the privileged material), the sender and the recipient(s).  However, You do not need to log any

736927807

information generated after the Lumileds LLC's May 19, 2020 filing of its Counterclaim against You.

## REQUESTS FOR PRODUCTION

### Jurisdictional Requests

**REQUEST FOR PRODUCTION NO. 1**   All Documents reflecting, discussing, or referencing revenue You received, expect to receive, have rights to, or may receive, directly or indirectly, relating to the '475 Patent, any lawsuit asserting the '475 Patent, or Schubert.

**REQUEST FOR PRODUCTION NO. 2**   All communications between You and Schubert relating to potentially filing a lawsuit asserting the '475 Patent.

**REQUEST FOR PRODUCTION NO. 3**   All communications between You and Schubert relating to any lawsuit asserting the '475 Patent.

**REQUEST FOR PRODUCTION NO. 4**   All Documents constituting, evidencing, or referencing communications between You and Schubert regarding the jurisdiction, district, or state in which Schubert contemplated filing or actually filed a lawsuit asserting the '475 Patent.

**REQUEST FOR PRODUCTION NO. 5**   All communications between You and Schubert regarding Osram's Motion to Transfer Venue.

**REQUEST FOR PRODUCTION NO. 6**   All Documents referencing or discussing Your actual or potential financial interest in the '475 Patent, or any proceeds from the potential or actual licensing, granting of rights to, or enforcement of the '475 Patent.

**REQUEST FOR PRODUCTION NO. 7**   For any tax(es) You paid to the State of Delaware from 2012 to present, documents sufficient to show the amount paid and a description of the taxable event.

**REQUEST FOR PRODUCTION NO. 8**   Documents sufficient to Identify Your employees, independent contractors, and other Persons who conduct business in Delaware with You or on Your behalf, and the nature and extent of any such business, from 2012 to present.

**REQUEST FOR PRODUCTION NO. 9**   Documents sufficient to show sources of any revenue You have received from or related to property and/or assets located in Delaware at any time from 2012 to present.

**REQUEST FOR PRODUCTION NO. 10**   Documents sufficient to Identify any joint venture between You and any entity organized under the laws of Delaware or having a place of business in Delaware from 2012 to present, Including the nature of Your involvement, the nature of the business, the joint venture's revenue, Your revenue, and the time periods.

**REQUEST FOR PRODUCTION NO. 11**   Documents sufficient to Identify patent licenses or other patent agreements that You are a party to and that are governed by Delaware law, were executed in Delaware, or were otherwise negotiated or drafted in Delaware, and any of Your revenue therefrom.

**REQUEST FOR PRODUCTION NO. 12**   Documents sufficient to Identify all patent lawsuits filed in the District of Delaware in the last 10 years in which You had a contractual right to a portion of the proceeds from any settlement or judgment, whether You actually received any proceeds and how much, and the underlying contract creating the right to proceeds.

**REQUEST FOR PRODUCTION NO. 13**   Documents sufficient to Identify any lawsuits You have prosecuted, instituted, or been a party to in any Delaware state or federal court from 2000 to present, Including but not limited to *Oliver v. Boston University*, No. 16570 (Del. Ch. 2000), Your revenue from any such lawsuits, and all court filings relating to any challenge to personal jurisdiction by You.

**REQUEST FOR PRODUCTION NO. 14**  All Documents related to patent licenses You are a party to in which activities related to the license, such as development, manufacture, use, or sale of products covered by the license, occur in Delaware.

**REQUEST FOR PRODUCTION NO. 15**  Documents sufficient to show Your efforts to advertise, offer to sell, and/or provide of services and/or goods, and Your actual provision of services and/or goods, in Delaware from 2012 to present.

**REQUEST FOR PRODUCTION NO. 16**  Documents sufficient to Identify all property (whether real property or chattels) located in Delaware that You have an interest in, lease, or control, and the nature of that property and of Your interest in it, 2012 to present.

**REQUEST FOR PRODUCTION NO. 17**  Documents sufficient to Identify all corporate entities You have had a controlling interest or ownership interest in, and that were organized under Delaware laws, had a physical location in Delaware, or were registered to do business in Delaware, from 2000 to present, Including but not limited to Seragen, Inc. and Boston University, Inc., and the nature of the relationships.

**Merits Requests**

**REQUEST FOR PRODUCTION NO. 18**   All Documents requested in Lumileds' 2019 Subpoena to Boston University.

**REQUEST FOR PRODUCTION NO. 19**   All Documents constituting, evidencing, or referring to accusations that You or any of Your employees committed inequitable conduct by filing a false Petition to Accept Unintentionally Delayed Payment, other than Documents filed or produced in this action.

**REQUEST FOR PRODUCTION NO. 20**   Documents sufficient to identify all U.S. patents (by patent number) for which BU filed or caused to be filed a Petition to Accept Unintentionally Delayed Payment from 2006 to present.

**REQUEST FOR PRODUCTION NO. 21**        Documents evidencing or discussing BU's reasons for "consolidating [its] active portfolio" of patents and its "effort to reduce [its] portfolio" of patents, as referenced in BU000268-269.

**REQUEST FOR PRODUCTION NO. 22**   All Documents evidencing or discussing the reasons that BU offered to "return" (as that term is used in BU000268-269) any U.S. patents to the named inventors listed on those patents from 2008-2011.

**REQUEST FOR PRODUCTION NO. 23**   All Documents constituting, evidencing, or referencing BU's actual or attempted licensing or granting of rights to any U.S. patent or patent application directed to the etching or cleaving of III-Nitride materials, Including draft and final licenses, covenants not to sue, royalty agreements, contracts, and communications relating to the foregoing, from 2006 to present.

# Attachment B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| E. FRED SCHUBERT, | ) | |
| | ) | Civ. No. 1:12-cv-924-GMS |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KONINKLIJKE PHILIPS ELECTRONICS | ) | |
| N.V. and PHILIPS LUMILEDS LIGHTING | ) | |
| COMPANY LLC, | ) | |
| | ) | |
| Defendants. | | |

## [PROPOSED] STIPULATED PROTECTIVE ORDER

1. <u>PURPOSES AND LIMITATIONS</u>

Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles.

2. <u>DEFINITIONS</u>

2.1 <u>Challenging Party</u>: a Party or Non-Party that challenges the designation of information or items under this Order.

2.2     "CONFIDENTIAL" Information or Items:  information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c).

2.3     Counsel (without qualifier):  Outside Counsel of Record and House Counsel (as well as their support staff).

2.4     Designated House Counsel:  House Counsel who seek access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information in this matter and have been identified to the Designating Party.

2.5     Designated Employee:  employees, other than House Counsel, of a Receiving Party who seek access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information in this matter and have been identified to the Designating Party.

2.6     Designating Party:  a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

2.7     Disclosure or Discovery Material:  all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.8     Expert:  a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action.

2.9     "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items:  a party's highly confidential and proprietary business, commercial, competitive,

2

financial, marketing, sales, and technical information that the disclosing party reasonably and in good faith believes is so highly sensitive that its disclosure to the receiving party or anyone not permitted by this Protective Order to view HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY information  would reveal significant business, commercial, competitive, financial, marketing, sales, or technical advantages of the disclosing party.  "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information shall include, but is not limited to: (1) business/strategic plans; (2) sales, cost, and price information including future sales/financial projections; (3) non-public marketing information including future marketing or business plans; (4) detailed sales and financial data that includes costs and profits information; (5) customer lists; (6) licenses, licensing policies, and licensing negotiations; (7) non-public semiconductor "recipes," specifications, schematics, and other documents used in connection with generating such "recipes"; (8) non-public semiconductor growth, fabrication, testing, packaging, and other nonpublic technical specifications, schematics, and documents showing the disclosing party's product design, functionality, features, and operation; and (9) other information of business, commercial, competitive, financial, marketing, sales, and technical significance comparable to the items listed in this paragraph..

2.10    House Counsel:  attorneys who are employees of a party to this action.  House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.11    Non-Party:  any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.12    Outside Counsel of Record:  attorneys who are not employees of a party to this action but are retained to represent or advise a party to this action and have appeared in this

3

action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party.

2.13    Party:  any party to this action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.14    Producing Party:  a Party or Non-Party that produces Disclosure or Discovery Material in this action.

2.15    Professional Vendors:  persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.16    Protected Material:  any Disclosure or Discovery Material that is designated as "CONFIDENTIAL" or as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

2.17    Receiving Party:  a Party that receives Disclosure or Discovery Material from a Producing Party.

4

3.      <u>SCOPE</u>

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Stipulation and Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party. Documents and information protected by this Order shall be used for the sole and limited purpose of this action and shall not be used for any other purpose.

4.      <u>DURATION</u>

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs. Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

5.      <u>DESIGNATING PROTECTED MATERIAL</u>

5.1     <u>Exercise of Restraint and Care in Designating Material for Protection</u>.  Each Party

or Non-Party that designates information or items for protection under this Order must take care

to limit any such designation to specific material that qualifies under the appropriate standards.

If it comes to a Designating Party's attention that information or items that it designated

for protection do not qualify for protection at all or do not qualify for the level of protection

initially asserted, that Designating Party must promptly notify all other parties that it is

withdrawing the mistaken designation.

5.2     <u>Manner and Timing of Designations</u>.  Except as otherwise provided in this Order

(see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered,

Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so

designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a)     <u>for information in documentary form</u> (e.g., paper or electronic documents,

but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing

Party affix the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS'

EYES ONLY" to each page that contains protected material.

A Party or Non-Party that makes original documents or materials available for inspection

need not designate them for protection until after the inspecting Party has indicated which

material it would like copied and produced.  During the inspection and before the designation, all

of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL –

ATTORNEYS' EYES ONLY." After the inspecting Party has identified the documents it wants

copied and produced, the Producing Party must determine which documents, or portions thereof,

qualify for protection under this Order.  Then, before producing the specified documents, the

6

Producing Party must affix the appropriate legend ("CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY") to each page that contains Protected Material.

(b)      for testimony given in deposition that the Designating Party identifies on the record, before the close of the deposition, all protected testimony and specify the level of protection being asserted.  When it is impractical to identify separately each portion of testimony that is entitled to protection and it appears that substantial portions of the testimony may qualify for protection, the Designating Party may invoke on the record (before the deposition is concluded) a right to have up to 30 days from receipt of the deposition transcript to identify the specific portions of the testimony as to which protection is sought and to specify the level of protection being asserted.  Only those portions of the testimony that are appropriately designated for protection within the 30 days from receipt of the deposition transcript shall be covered by the provisions of this Stipulated Protective Order.  Alternatively, a Designating Party may specify, at the deposition or up to 30 days from receipt of the deposition transcript if that period is properly invoked, that the entire transcript shall be treated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

Before the expiration of a 30-day period for designation from receipt of a transcript, the transcript shall be treated during that period as if it had been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" in its entirety unless otherwise agreed. After the expiration of that period, the transcript shall be treated only as actually designated.

(c)      for information produced in some form other than documentary and for any other  tangible items, that the Producing Party affix in a prominent place on the exterior of

the container or containers in which the information or item is stored the legend

"CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

    5.3    <u>Inadvertent Failures to Designate</u>.  If timely corrected, an inadvertent failure to

designate qualified information or items does not, standing alone, waive the Designating Party's

right to secure protection under this Order for such material.  Upon timely correction of a

designation, the Receiving Party must make reasonable efforts to assure that the material is

treated in accordance with the provisions of this Order.

6.    <u>CHALLENGING CONFIDENTIALITY DESIGNATIONS</u>

    6.1    <u>Timing of Challenges</u>.  Any Party may challenge a designation of confidentiality

at any time.  Unless a prompt challenge to a Designating Party's confidentiality designation is

necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a

significant disruption or delay of the litigation, a Party does not waive its right to challenge a

confidentiality designation by electing not to mount a challenge promptly after the original

designation is disclosed.

    6.2    <u>Meet and Confer</u>.  The Challenging Party shall initiate the dispute resolution

process by providing written notice of each designation it is challenging and describing the basis

for each challenge.  To avoid ambiguity as to whether a challenge has been made, the written

notice must recite that the challenge to confidentiality is being made in accordance with this

specific paragraph of the Protective Order.  The parties shall attempt to resolve each challenge in

good faith and must begin the process by conferring directly (in voice to voice dialogue; other

forms of communication are not sufficient) within 14 days of the date of service of notice.  In

conferring, the Challenging Party must explain the basis for its belief that the confidentiality

designation was not proper and must give the Designating Party an opportunity to review the

8

designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation.  A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

6.3     Judicial Intervention.  If the Parties cannot resolve a challenge without Court intervention, the Designating Party shall follow the Court's Discovery Dispute Resolution procedure.

7.     ACCESS TO AND USE OF PROTECTED MATERIAL

7.1     Basic Principles.  A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation.  Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of section 15 below (FINAL DISPOSITION).

Nothing in this Protective Order shall bar trial counsel from rendering advice to their clients with respect to this litigation and, in the course thereof, relying upon any information designated as Confidential and/or Highly Confidential Information, provided that the contents of the information shall not be disclosed.

Nothing herein shall prevent disclosure beyond the terms of this Protective Order if each party designating the information as Confidential and/or Highly Confidential consents to such disclosure and/or if the Court, after notice to all affected parties, orders such disclosure.

9

The parties expressly contemplate and agree not to withhold reasonable requests for consent for Receiving Party's Outside Counsel of Record to disclose to the Receiving Party limited high level information of a summary nature in order for Outside Counsel of Record to advise the Receiving Party on the litigation and efforts to settle same.

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2     <u>Disclosure of "CONFIDENTIAL" Information or Items</u>.  Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a)     the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation;

(b)     Professor E. Fred Schubert, House Counsel, and three Designated Employees of the Receiving Party to whom disclosure is reasonably necessary for this litigation, and the designation of Employees may be changed to due change in corporate structure, employment status, or job responsibilities;

(c)     Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d)     the Court and its personnel, court reporters, and persons engaged to make copies (with such Protected Materials having been filed under seal or with other suitable precautions as determined by the Court);

10

(e) any graphics, translation, or design consultants retained by counsel of record for purposes of preparing demonstrative or other exhibits for deposition, trial, or other court proceedings in this action and non-technical jury or trial consulting services, including mock jurors; provided that all such individuals have agreed to be bound by this Protective Order and have signed the undertaking attached as Exhibit A;

(f) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

(g) any other person with the prior written consent of the party who designated the material; provided that all such persons have agreed to be bound by this Protective Order and have signed the undertaking attached as Exhibit A; and

(h) independent legal translators retained by counsel of record to translate in connection with this action and independent stenographic reporters and videographers retained by counsel of record to record and transcribe testimony in connection with this action; provided that all such persons have agreed to be bound by this Protective Order and have signed the undertaking attached as Exhibit A.

7.3 <u>Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items</u>.  Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" only to:

(a) the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation;

11

(b)     Two Designated House Counsel of the Receiving Party to whom it is reasonably necessary to disclose the information for this litigation, and the designation of House Counsel may be changed to due change in corporate structure, employment status, or job responsibilities;

(c)     Experts of the Receiving Party (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth in paragraph 7.4(a), below, have been followed;

(d)     the Court and its personnel, court reporters, and persons engaged to make copies (with such Protected Materials having been filed under seal or with other suitable precautions as determined by the Court);

(e)     any graphics, translation, or design consultants retained by counsel of record for purposes of preparing demonstrative or other exhibits for deposition, trial, or other court proceedings in this action and non-technical jury or trial consulting services, including mock jurors; provided that all such individuals have agreed to be bound by this Protective Order and have signed the undertaking attached as Exhibit A;

(f)     the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

(g)     any other person with the prior written consent of the party who designated the material; provided that all such persons have agreed to be bound by this Protective Order and have signed the undertaking attached as Exhibit A; and

(h)     independent legal translators retained by counsel of record to translate in connection with this action and independent stenographic reporters and videographers retained

12

by counsel of record to record and transcribe testimony in connection with this action; provided that all such persons have agreed to be bound by this Protective Order and have signed the undertaking attached as Exhibit A.

      7.4    <u>Procedures for Approving or Objecting to Disclosure of</u> "CONFIDENTIAL" or <u>"HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items to Experts</u>.

      (a)    Unless otherwise ordered by the Court or agreed to in writing by the Designating Party, a Party that seeks to disclose to an Expert (as defined in this Order) any information or item that has been designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" first must make a written request to the Designating Party that (1) sets forth the full name of the Expert and the city and state of his or her primary residence, (2) attaches a copy of the Expert's current resume, (3) identifies the Expert's current employer(s), (4) identifies each person or entity from whom the Expert has received compensation or funding for work in his or her areas of expertise or to whom the expert has provided professional services, including in connection with a litigation, at any time during the preceding five years, and (5) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five years.

      (b)    A Party that makes a request and provides the information specified in the preceding respective paragraphs may disclose the subject Protected Material to the identified Expert unless, within 14 days of delivering the request, the Party receives a written objection from the Designating Party.  Any such objection must set forth in detail the grounds on which it

13

is based. If the parties are unable to resolve the objection, the objecting party shall follow the
Court's discovery resolution procedure within 7 days from the objection.

8. <u>PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER
LITIGATION</u>

If a Party is served with a subpoena or a court order issued in other litigation that compels
disclosure of any information or items designated in this action as "CONFIDENTIAL" or
"HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" that Party must:

(a)    promptly notify in writing the Designating Party. Such notification shall
include a copy of the subpoena or court order;

(b)    promptly notify in writing the party who caused the subpoena or order to
issue in the other litigation that some or all of the material covered by the subpoena or order is
subject to this Protective Order. Such notification shall include a copy of this Stipulated
Protective Order; and

(c)    cooperate with respect to all reasonable procedures sought to be pursued
by the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order, the Party served with the
subpoena or court order shall not produce any information designated in this action as
"CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" before a
determination by the court from which the subpoena or order issued, unless the Party has
obtained the Designating Party's permission. The Designating Party shall bear the burden and
expense of seeking protection in that court of its confidential material, and nothing in these
provisions should be construed as authorizing or encouraging a Receiving Party in this action to
disobey a lawful directive from another court.

14

9.    A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS
      LITIGATION

      (a)    The terms of this Order are applicable to information produced by a Non-

Party in this action and designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL –

ATTORNEYS' EYES ONLY."  Such information produced by Non-Parties in connection with

this litigation is protected by the remedies and relief provided by this Order.  Nothing in these

provisions should be construed as prohibiting a Non-Party from seeking additional protections.

      (b)    In the event that a Party is required, by a valid discovery request, to

produce a Non-Party's confidential information in its possession, and the Party is subject to an

agreement with the Non-Party not to produce the Non-Party's confidential information, then the

Party shall:

      1.    promptly notify in writing the Requesting Party and the Non-Party

that some or all of the information requested is subject to a confidentiality agreement with a

Non-Party;

      2.    promptly provide the Non-Party with a copy of the Stipulated

Protective Order in this litigation, the relevant discovery request(s), and a reasonably specific

description of the information requested; and

      3.    make the information requested available for inspection by the

Non-Party.

      (c)    If the Non-Party fails to object or seek a protective order from this court

within 30 days of receiving the notice and accompanying information, the Receiving Party may

produce the Non-Party's confidential information responsive to the discovery request.  If the

Non-Party timely seeks a protective order, the Receiving Party shall not produce any information

15

in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court.  Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

10.     USE OF PROTECTED MATERIALS AT HEARINGS AND TRIAL

Any court hearing which refers to or describes Protected Materials may, in the Court's discretion, be held *in camera*.  Before a party may refer to or describe Protected Materials, Materials in a court hearing, that party must give the other party notice to allow for a request that the hearing be held *in camera*.  Nothing contained herein shall be deemed to constitute a waiver of any party's right to contest the sealing of any documents or testimony pursuant to Rule 26 of the Federal Rules of Civil Procedure.  Any party may at any time request the Court to determine whether the Protected Materials are properly designated and whether or not they satisfy the requirements of Fed. R. Civ. P. 26.

11.     UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

12.    <u>INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL</u>

Nothing in this Protective Order shall require disclosure of information that a Party contends is protected from disclosure by the attorney-client privilege, the work product immunity or other privilege, doctrine, right, or immunity. If information subject to a claim of attorney-client privilege, work product immunity, or other privilege, doctrine, right, or immunity is nevertheless inadvertently or unintentionally produced or made available for inspection, pursuant to Federal Rule of Evidence 502(d) such disclosure shall in no way prejudice or otherwise constitute a waiver or estoppel as to any such privilege, doctrine, right or immunity, or other ground for withholding production to which the Producing Party would otherwise be entitled to assert. Any Party that inadvertently produces or makes available for inspection materials protected by the attorney-client privilege, work product privilege, or other privilege, doctrine, right, or immunity may obtain the return of those materials by promptly notifying the recipient(s). The Producing Party shall provide a privilege log for any relevant inadvertently produced materials as soon as reasonably possible after requesting their return. The recipient(s) shall gather and return, or destroy (and certify such destruction), all copies of the privileged material to the Producing Party no later than two (2) business days after receiving a request for their return, except for any pages containing privileged markings by the recipient, which pages shall instead be destroyed and certified as such by the recipient to the Producing Party. The recipient shall also destroy and certify such destruction within two (2) business days after receiving a request for return of inadvertently produced materials all documents or parts thereof summarizing or otherwise disclosing the content of the inadvertently produced material and shall not use such material for any purpose. Notwithstanding this provision, outside litigation counsel

of record are not required to delete information that may reside on their respective firm's electronic backup systems that are over-written in the normal course of business and the outside litigation counsel shall not access the inadvertently produced material residing on the electronic backup systems.

If the Receiving Party contests the privilege or work product designation by the Producing Party, the Receiving Party shall give the Producing Party written notice of the reason for the disagreement. The Receiving Party shall follow the Court's Discovery Dispute Resolution procedure.

13.   MISCELLANEOUS

13.1   Right to Further Relief.  Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

13.2   Right to Assert Other Objections.  By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order.  Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

13.3   Filing Protected Material.  All Protected Material must be filed under seal in accordance with the provisions of the United States District Court for the District of Delaware's Revised Administrative Procedures Governing Filing and Service by Electronic Means.

14.   FINAL DISPOSITION

Within 60 days after the final disposition of this action, as defined in paragraph 4, each Receiving Party must return all Protected Material to the Producing Party or destroy such material.  As used in this subdivision, "all Protected Material" includes all copies, abstracts,

18

compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating Party) by the 60-day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION).

Dated: April 8, 2013

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

FARNAN LLP

COOCH & TAYLOR

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
Rosemary J. Piergiovanni (Bar No. 3655)
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300

/s/ Blake A. Bennett
C. Scott Reese, Esq. (#2036)
Blake A. Bennett, Esq. (#5133)
1000 West Street, 10th Floor
P.O. Box 1680
Wilmington, DE 19899-1680
Tel: (302) 984-3800

Edward D. Johnson
Michael A. Molano
Cliff A. Maier
MAYER BROWN LLP
3000 El Camino Real
Two Palo Alto Square, Suite 300
Palo Alto, CA 94306
Tel: (650) 331-2000

Daniel A. Ladow (admitted *pro hac vice*)
Timothy P. Heaton (admitted *pro hac vice*)
TROUTMAN SANDERS LLP
405 Lexington Avenue
New York, NY 10174
(212) 704-6000

*Attorneys for Koninklijke*
*Philips Electronics N.V.*

Robert A. Angle (admitted *pro hac vice*)
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA 23219
(804) 697-1200

*Attorneys for Plaintiff*

PURSUANT TO STIPULATION, IT IS SO ORDERED.

DATED: _____        _____
                          The Honorable Gregory M. Sleet

<u>EXHIBIT A</u>

<u>ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND</u>

I, _____, of _____,

declare under penalty of perjury that I have read in its entirety and understand the Protective

Order that was issued by the United States District Court for the District of Delaware on

_____ in the case of *Schubert v. Koninklijke Philips Electronics N.V.,* et al., C.A. No. 12-

cv-924-GMS.  I agree to comply with and to be bound by all the terms of this Protective Order

and I understand and acknowledge that failure to so comply could expose me to sanctions and

punishment in the nature of contempt.  I solemnly promise that I will not disclose in any manner

any information or item that is subject to this Protective Order to any person or entity except in

strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the

District of Delaware for the purpose of enforcing the terms of this Stipulated Protective Order,

even if such enforcement proceedings occur after termination of this action.

Date: _____

City and State where sworn and signed: _____

Printed name: _____

Signature: _____

| Attorney or Party without Attorney:<br>MAYER, BROWN, LLP<br>TWO PALO ALTO SQUARE, STE 300<br>PALO ALTO, CA 94306<br>Telephone No: 650-331-2000     FAX No: 650-331-2060 | | For Court Use Only |
|---|---|---|
| Attorney for: Defendant | Ref. No. or File No.:<br>12409259 | |
| Insert name of Court, and Judicial District and Branch Court:<br>United States District Court For The District Of Delaware | | |
| Plaintiff: E. FRED SCHUBERT | | |
| Defendant: LUMILEDS, LLC | | |

| PROOF OF SERVICE<br>SUBPOENA TO PRODUCE | Hearing Date:<br>Thu, Jun. 18, 2020 | Time:<br>10:00AM | Dept/Div: | Case Number:<br>1:CV-00924-MN |
|---|---|---|---|---|

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT; INSPECTION OF PREMISES IN A CIVIL ACTION.

3. a. *Party served:*
   b. *Person served:*

   TRUSTEES OF BOSTON UNIVERSITY/CUSTODIAN OF RECORDS
   NOREEN TRAHON, FINANCE AND ADMINSTRATION
   MANAGER/GENERAL COUNSEL'S OFFICE

4. *Address where the party was served:*

   125 BAY STATE ROAD
   BOSTON, MA  02215

5. *I served the party:*
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Mon., Jun. 08, 2020 (2) at: 1:50PM
   b. *I received this subpoena for service on:*      Monday, June 08, 2020

6. *Witness fees were not demanded or paid.*

7. *Person Who Served Papers:*                                                      Recoverable Cost Per CCP 1033.5(a)(4)(B)
   a. JOHN  ROBERTO
   b. **A & A LEGAL SERVICE, Inc.**          d. *The Fee for Service was:*
      880 MITTEN ROAD, SUITE 102          e. I am:
      BURLINGAME, CA  94010                      *(i)*  Independent Contractor
   c. (650) 697-9431, FAX (650) 697-4640

8. *I declare under penalty of perjury under the laws*                *that the foregoing is true and correct.*

   Date: *Mon, Jun. 08, 2020*

   Judicial Council Form                              PROOF OF SERVICE
   Rule 2.150.(a)&(b) Rev January 1, 2007          SUBPOENA TO PRODUCE                 (JOHN ROBERTO)          33I2000.123713

| | For Court Use Only |
|---|---|
| *Attorney or Party without Attorney:*<br>MAYER, BROWN, LLP<br>TWO PALO ALTO SQUARE, STE 300<br>PALO ALTO, CA 94306<br><br>*Telephone No:* 650-331-2000   *FAX: No:* 650-331-2060<br>*Attorney for:* Defendant | |

| | | |
|---|---|---|
| *Attorney for:* Defendant | *Ref. No or File No.:*<br>12409259 | |

*Insert name of Court, and Judicial District and Branch Court:*
United States District Court For The District Of Delaware

*Plaintiff:* E. FRED SCHUBERT
*Defendant:* LUMILEDS, LLC

| DECLARATION OF REASONABLE DILIGENCE | *Hearing Date:*<br>Thu, Jun. 18, 2020 | *Time:*<br>10:00am | *Dept/Div:* | *Case Number:*<br>1:CV-00924-MN |
|---|---|---|---|---|

1. I, JOHN ROBERTO, and any employee or independent contractors retained by A & A LEGAL SERVICE, Inc. are and were on the dates mentioned herein over the age of eighteen years and not a party to this action. Personal service was attempted on Witness TRUSTEES OF BOSTON UNIVERSITY/CUSTODIAN OF RECORDS as follows:

2. *Documents:*   SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT; INSPECTION OF PREMISES IN A CIVIL ACTION.

| Day | Date | Time | Location | Results |
|---|---|---|---|---|
| Mon | 06/08/20 | 1:42pm | Business | BUSINESS IS CLOSED. SPOKE TO A FACILITY EMPLOYEE WALKING IN THE AREA AND WAS TOLD THAT NO ONE IS IN THE BUILDING. Attempt made by: JOHN ROBERTO. Attempt at: ONE SILBER WAY  BOSTON, MA 02215. |

3. *Person Executing*
   a. JOHN ROBERTO
   b. A & A LEGAL SERVICE, Inc.
      880 MITTEN ROAD, SUITE 102
      BURLINGAME, CA 94010
   c. (650) 697-9431, FAX (650) 697-4640

Recoverable Costs Per CCP 1033.5(a)(4)(B)
d. *The Fee for service was:*
e. *I am:*
    (i)   Independent Contractor

4. *I declare under penalty of perjury under the laws*    *that the foregoing is true and correct.*
   Date: Mon, Jun. 08, 2020

                    (JOHN ROBERTO)

DECLARATION OF REASONABLE DILIGENCE

3312000.123713

# EXHIBIT O

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| E. FRED SCHUBERT, | ) |
| | ) |
| Plaintiff and Counterclaim-Defendant, | ) |
| | ) |
| v. | ) |
| | ) |
| LUMILEDS LLC, | ) C.A. No. 1:12-cv-924-MN |
| | ) |
| Defendant and Counterclaimant. | ) **JURY TRIAL DEMANDED** |
| | ) |
| v. | ) |
| | ) |
| TRUSTEES OF BOSTON UNIVERSITY, | ) |
| | ) |
| Counterclaim-Defendant. | ) |

**DEFENDANT LUMILEDS LLC'S NOTICE OF 30(b)(6) DEPOSITION OF**
**COUNTERCLAIM-DEFENDANT BOSTON UNIVERSITY (TOPIC NOS. 1-28)**

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 30(b)(6), Defendant Lumileds LLC ("Defendant" or "Lumileds"), by its undersigned attorneys, will take the oral deposition via video teleconferencing services of Counterclaim-Defendant Trustees of Boston University ("Counterclaim-Defendant" or "BU") to begin at 10:30am ET on Monday, July 13, 2020, or a mutually agreed date and time, and continuing from day to day thereafter. The deposition will be taken before a notary public or other officer authorized by law to administer oaths and take testimony, who will appear remotely. BU is required to designate one or more persons to testify as to the matter known by, or reasonably available to, BU as described more particularly in **Exhibit A** hereto (the "Topics").

Lumileds requests that BU designate person(s) to testify on BU's behalf about each numbered Topic and, within five (5) business days in advance of the deposition, identify in

737023392

writing the name(s) and title(s) of the person(s) who will testify on its behalf and the subject matter on which each person will testify.

YOU ARE FURTHER NOTICED that Lumileds intends to cause the proceeding to be recorded both stenographically and by videoconference, and a real-time transcription service such as LiveNote may be used.

DATED: June 12, 2020

OF COUNSEL

Mayer Brown LLP

Edward D. Johnson
Michael A. Molano
Cliff A. Maier
Graham (Gray) M. Buccigross
Two Palo Alto Square, Ste. 300
3000 El Camino Real
Palo Alto, CA 94306
Tel: 650-331-2000

Priya A. Desai
71 S. Wacker Drive
Chicago, IL 60611
Tel: 312-782-0600

COOCH AND TAYLOR

By:  */s/ Blake A. Bennett*_____
    C. Scott Reese (#2036)
    Blake A. Bennett (#5133)
    The Nemours Building,
    1007 N. Orange Street, Ste. 1120
    Wilmington, DE 19899-1680
    Tel: (302) 984-3800

*Attorneys for Defendant Lumileds LLC*

2

## EXHIBIT A

### DEFINITIONS

The following words shall have the following definitions in this Exhibit A:

1.      "'475 Patent" means U.S. Patent No. 6,294,475, including its underlying applications, U.S. Patent Application No. 09/338,079 and U.S. Provisional Application No. 60/090,409.

2.      "BU," "You," and "Your" means Boston University, and Includes the Trustees of Boston University, Boston University's Office of Technology Development, Boston University's Technology Development Office, Boston University's Office of Technology Transfer, Boston University's Charles River Campus Patent Committee, Matthew E. Connors, Samuels, Gauthier & Stevens LLP, Gauthier & Connors Gesmer Updegrove LLP, Janine B. Anderson, Dr. Sean Lee, Dr. Ashley J. Stevens, Vinit Nijhawan, Karen Jacobs, Andrei Ruckenstein, Barry Unger, Selim Unlu, Scott Whitaker, Joyce Wong, Rick Clark, April Effort, Jonathan Jensen, Michael Pratt, Crystal Talley, Martin Howard, and Boston University's agents, attorneys, representatives, subsidiaries, departments, branches, or other organizational or operating units, any successors, assignees, or predecessor organizations or other business or academic entities (whether merged, acquired, or otherwise); any parent corporations, affiliates, or any other entities of Boston University which are or have been under common control of Boston University, Including the Boston University Photonics Center.

3.      "BU Accused Employees" means Janine B. Anderson, Dr. Sean Lee, Dr. Ashley Stevens, and Vinit Nijhawan.

4.      "Connors" means Matthew E. Connors, Esq.

5.      "Including," "Include," and their variants mean including, but not limited to.

3

6.      "Lumileds" means Lumileds LLC, and Includes the formerly named defendants in this action, Koninklijke Philips Electronics N.V. and Philips Lumileds Lighting Company LLC, and their attorneys.

7.      "Osram" means Osram AG, Osram Opto Semiconductors GmbH, Osram Opto Semiconductors, Inc., and Osram Sylvania, Inc., and any of their attorneys.

8.      "Osram's Motion to Transfer Venue" refers to the Motion to Transfer Venue to the District of Massachusetts filed by Osram in the Schubert v. Osram Litigation on November 7, 2012, D.I. 10.

9.      "Petition to Accept Unintentionally Delayed Payment" means any USPTO form entitled "Petition to Accept Unintentionally Delayed Payment of Maintenance Fee in an Expired Patent" or any other document prepared for the purpose of filing with the USPTO to address the non-payment, late payment, or delayed payment of patent maintenance fees, including drafts thereof.

10.      "Schubert" means Plaintiff E. Fred Schubert and his attorneys, agents, and representatives.

11.      "Schubert v. Osram Litigation" means *E. Fred Schubert v. Osram AG, Osram Opto Semiconductors GmbH, Osram Opto Semiconductors, Inc., and Osram Sylvania, Inc.,* Civil Action No. 12-923, in the United States District Court for the District of Delaware.

12.      "Stocker" means Dr. Dean A. Stocker.

13.      "This Action" means Case No. 1:12-cv-00924 in the United States District Court for the District of Delaware.

14.      "USPTO" means the United States Patent and Trademark Office.

737023392

## TOPICS

**Jurisdictional Topics**

1.      The amount of revenue You received, expect to receive, have rights to, or may receive, directly or indirectly, relating to the '475 Patent, any lawsuit asserting the '475 Patent, or Schubert, how the revenue was calculated, what the revenue was for, and when You received or expect to receive such revenue.

2.      The content and dates of communications between BU and Schubert, and BU's internal communications, relating to (1) transferring or otherwise assigning the '475 Patent to Schubert, and the performance of any related agreements, (2) any lawsuit asserting the '475 Patent or the potential filing of any lawsuit asserting the '475 Patent, Including the jurisdiction, district, or state in which Schubert contemplated filing or actually filed a lawsuit; and whether the communications were in writing.

3.      The content and dates of communications between You and Schubert regarding Osram's Motion to Transfer Venue, and whether the communications were in writing.

4.      The identification of all patent lawsuits (by case number and parties) that have been filed in or transferred into the District of Delaware in the last 10 years in which BU had a right to a portion of the proceeds from any settlement or judgment, whether BU actually received any proceeds and how much, the identification of the underlying contract creating the right to proceeds (by parties); and whether BU knew in advance that the patentee was going to file the case in Delaware.

**Merits Topics**

5.      BU's decision to not timely pay the second maintenance fees for the '475 Patent,

Including the individuals who made, approved, and executed the decision, all reasons BU did not

timely pay the fees, which individuals knew those reasons and when they first learned of them,

and the existence of Documents evidencing or referring to the foregoing.

6.      Whether BU (specifically Including the BU Accused Employees) and Schubert knew,

prior to the filing of the Petition to Accept Unintentionally Delayed Payment for the '475 Patent,

that the Petition would include or otherwise required a certification of unintentional delay in

paying the maintenance fees for the '475 Patent, and the identification of Documents evidencing

that.

7.      Whether BU (specifically Including the BU Accused Employees) and Schubert knew,

prior to the filing of the Petition to Accept Unintentionally Delayed Payment for the '475 Patent,

that reviving a U.S. patent that had expired due to failure to timely pay maintenance fees

required certifying unintentional delay in paying the maintenance fees and otherwise required the

delay to have actually been unintentional, and the identification of Documents evidencing that.

8.       When and how BU (specifically Including the BU Accused Employees) and

Schubert first learned that the Petition to Accept Unintentionally Delayed Payment for the '475

Patent actually included a certification of unintentional delay in paying the maintenance fees for

the '475 Patent, and the identification of Documents evidencing.

9.      Any investigation, due diligence, or inquiries by BU, Connors, Gesmer Updegrove or

Schubert regarding whether the failure to timely pay maintenance fees for the '475 Patent was

intentional or unintentional, including the actions taken, documents and information considered,

individuals involved or with knowledge thereof, dates, and the identity of documents evidencing the foregoing.

10.     The content of the February 22, 2010 Memorandum to the Charles River Campus Patent Committee (BU000447-448, the "Memorandum"), whether and when Connors and Gesmer Updegrove received the Memorandum, and the identity of all individuals who received the Memorandum and when.

11.     BU's, Connors', and Gesmer Updegrove's factual bases or lack thereof for certifying in the Petition to Accept Unintentionally Delayed Payment for the revival of the '475 Patent that the delay in paying maintenance fees was unintentional, Including the identification of Documents evidencing or discussing the bases, and all persons who had knowledge of such bases by December 31, 2010.

12.     The identities and involvement of BU employees in:  (1) the decision not to timely pay the second maintenance fees for the '475 Patent; (2) the revival of the '475 Patent, Including the Petition to Accept Unintentionally Delayed Payment and instructing counsel to prepare and submit the Petition to the USPTO; and (3) any transfer of rights (potential or actual) to the '475 Patent.

13.     BU (specifically Including the BU Accused Employees) and Schubert's involvement with drafting and/or reviewing drafts of the Petition to Accept Unintentionally Delayed Payment for the '475 Patent, Including the identity of documents and the individual BU employees who were involved.

14.     When and how BU first received the Petition to Accept Unintentionally Delayed Payment for the '475 Patent, which individuals at BU received the Petition in 2010, when, and how.

737023392

15.     Whether Connors or Gesmer Updegrove inquired with BU and Schubert, prior to submitting the Petition to Accept Unintentionally Delayed Payment for the '475 Patent to the USPTO, regarding why BU did not timely pay the second maintenance fees, and if so, what information was provided to Connors and/or Gesmer Updegrove, and by whom.

16.     BU's (specifically Including the BU Accused Employees) understanding as to why Dr. Schubert wrote "I would not be interested" in response to Sean Lee's September 2, 2009 email to Dr. Schubert regarding the '475 Patent (see BU00268-269), and what that meant.

17.     BU's (specifically Including the BU Accused Employees) understanding as to why Dr. Schubert decided to acquire the '475 Patent from BU, how and when BU learned that, what Schubert communicated to BU, and identifying the underlying documents by Bates number.

18.     The content and dates of BU's communications with Sean Lee and Ashley Stevens relating to this litigation or any charges of inequitable conduct, whether such communications were in writing, and the current residence location and contact information for Sean Lee.

19.     The identification of other accusations of inequitable conduct against BU (specifically Including any BU employees) relating to any Petition to Accept Unintentionally Delayed Payment, excluding Osram's accusations.

20.     The identification of all U.S. patents (by patent number, for which BU filed any Petition to Accept Unintentionally Delayed Payment from 2008 to 2012, and the specific reasons BU did not timely pay maintenance fees for each patent.

21.     BU's communications with Schubert, Stocker, Connors, and Gesmer Updegrove, regarding the failure timely to pay the second maintenance fees for the '475 Patent, expiration of the '475 Patent, Petition to Accept Unintentionally Delayed Payment for the revival of the '475

Patent and the expiration and  revival of the '475 Patent, this litigation, and Osram's and Lumileds' assertions of inequitable conduct.

22.      When and how BU first notified Connors and Gesmer Updegrove of the reason(s) that (i) BU had not timely paid, and (ii) BU did not intend to timely pay, the second maintenance fees for the '475 Patent, the content of the communications, and an identification of documents evidencing the foregoing (by Bates number or privilege log entry).

23.      Any attempts by You (specifically Including the BU Accused Employees), Schubert, Connors, or Gesmer Updegrove to correct, qualify, or otherwise provide explanation to the USPTO regarding the 2010 representation in the Petition to Accept Unintentionally Delayed Payment for the '475 Patent that the delayed payment of second maintenance fees was unintentional, and if no attempts were made, why not.

24.      BU's practices and policies (written or oral), including any written or verbal procedures and trainings given, regarding the maintenance, expiry, revival, or maintenance fees of patents from 2008 to present.

25.      BU's efforts and/or decision to "consolidate" and/or "reduce" its patent portfolio, and offers to "return" patents to the named inventors listed on the patents (see BU000268-269), Including the reasons therefor, which individual(s) made the decision, what efforts were taken, whether Ashley Stevens or Vinit Nijhawan knew of such efforts or decision, prior to the filing of the Petition to Accept Unintentionally Delayed Payment for the '475 Patent, whether BU Connors and Gesmer Updegrove knew of such efforts or decision prior to the filing of the Petition to Accept Unintentionally Delayed Payment for the '475 Patent.

26.      Any use, demonstration, offer for sale, sale, publication, public disclosure, or importation of any product or prototype that embodied or otherwise practiced or would have

practiced any claim of U.S. Patent Application No. 09/338,709 or the '475 Patent, prior to June 23, 1998.

27.     All offers to sell, transfer, license or otherwise grant rights to the '475 Patent or any U.S. patent or patent application relating to the etching or cleaving of III-Nitride materials, Including the underlying circumstances, the individuals involved in related communications, the result of such offers to sell or license, and the reasons for which any offers to sell or license the '475 Patent did not result or have not yet resulted in an actual sale or license.

28.     Valuations, investigations and analyses of the value of the '475 Patent or the subject matter thereof, Including etching or cleaving III-Nitride materials.

I, Graham (Gray) M. Buccigross, declare that I am over the age of eighteen years and not

a party to this action.  I am employed in Palo Alto, California and my business address is Mayer

Brown LLP, Two Palo Alto Square, Ste. 300, 3000 El Camino Real, Palo Alto, California

94306.  On June 12, 2020, I served the foregoing document(s) described as:

**LUMILEDS LLC'S NOTICE OF 30(b)(6) DEPOSITION OF COUNTERCLAIM-
DEFENDANT BOSTON UNIVERSITY (TOPIC NOS. 1-28)**

☐      By transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐      By placing the document(s) listed above in a sealed envelope with postage prepaid, via First Class Mail, in the United States mail at Palo Alto, California addressed as set forth below.

☐      By placing the document(s) listed above in a sealed overnight service envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to an overnight service agent for delivery.

☐      By placing the document(s) listed above in a sealed envelope and causing them to be served via hand delivery addressed as set forth below

☒      By causing the document(s) listed above to be transmitted by e-mail to the following e-mail addresses as set forth below.

☐      By electronically filing the document(s) listed above with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the person(s) listed below.

| | |
|---|---|
| Attorneys for Counterclaim Defendant Trustees of Boston University<br><br>Karen Elizabeth Keller<br>Shaw Keller LLP<br>1105 North Market St., 12th Floor<br>Wilmington, DE 19801<br>kkeller@shawkeller.com | Michael Rader<br>Susmita Gadre<br>WOLF GREENFIELD<br>605 Third Avenue<br>New York, NY 10158<br>(212) 336-3850<br>mrader@wolfgreenfield.com<br>susmita.gadre@wolfgreenfield.com<br>WGS-SchubertvPhilips@wolfgreenfield.com |
| Attorneys for Plaintiff and Counterclaim Defendant E. Fred Schubert<br><br>Brian E. Farnan (#4089)<br>Michael J. Farnan (#5165)<br>FARNAN LLP<br>919 North Market Street, 12th Floor<br>Wilmington, DE 19801 | James M. Bollinger<br>Magnus Essunger<br>Gerald E. Porter<br>Katherine Harihar<br>TROUTMAN SANDERS LLP<br>875 Third Avenue<br>New York, NY 10022 |

11

| | |
|---|---|
| (302) 777-0300<br>bfarnan@farnanlaw.com<br>mfarnan@farnanlaw.com | (212) 704-6000<br>james.bollinger@troutman.com<br>magnus.essunger@troutman.com<br>gerald.porter@troutman.com<br>katherine.harihar@troutman.com<br><br>Robert A. Angle (admitted *pro hac vice*)<br>TROUTMAN SANDERS LLP<br>1001 Haxall Point, 15th Floor<br>Richmond, VA 23219<br>(804) 697-1200<br>robert.angle@troutman.com |

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that I am admitted to practice *pro hac vice* in this litigation.

Dated June 12, 2020 at Menlo Park, California.

*/s/ Graham (Gray) Buccigross*
Graham (Gray) Buccigross

737023392

# EXHIBIT P

AO 88A  (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

### District of Delaware

| | | |
|---|---|---|
| E. Fred Schubert | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   1:12-CV-00924-MN |
| LUMILEDS LLC | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: 
TRUSTEES OF BOSTON UNIVERSITY
125 Bay State Road, Boston, MA 02215
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
SEE ATTACHMENT A.

| | |
|---|---|
| Place: TSG Reporting<br>Regus, 225 Franklin Street, 26th Floor<br>Boston, MA 02110 | Date and Time:<br>06/25/2020 10:30 am |

The deposition will be recorded by this method:   Stenographically and by video

❑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   06/12/2020

*CLERK OF COURT*

OR

_____          /s/ Blake A. Bennett
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   LUMILEDS LLC
, who issues or requests this subpoena, are:

Blake A. Bennett, Cooch and Taylor, P.A., The Nemours Building, 1007 N. Orange Street, Suite 1120, P.O. Box 1680, Wilmington, DE 19899-1680

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 1:12-CV-00924-MN

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
  **(i)** is a party or a party's officer; or
  **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
 **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
 **(A) *Appearance Not Required.*** A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 **(B) *Objections.*** A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
 **(A) *When Required.*** On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
 **(B) *When Permitted.*** To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 **(C) *Specifying Conditions as an Alternative.*** In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
 **(A) *Documents.*** A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 **(B) *Form for Producing Electronically Stored Information Not Specified.*** If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 **(C) *Electronically Stored Information Produced in Only One Form.*** The person responding need not produce the same electronically stored information in more than one form.
 **(D) *Inaccessible Electronically Stored Information.*** The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
 **(A) *Information Withheld.*** A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 **(B) *Information Produced.*** If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# Attachment A

# ATTACHMENT A

## DEFINITIONS

The following words shall have the following definitions in this Attachment A:

1.      "'475 Patent" means U.S. Patent No. 6,294,475, including its underlying applications, U.S. Patent Application No. 09/338,079 and U.S. Provisional Application No. 60/090,409.

2.      "BU," "You," and "Your" means Boston University, and Includes the Trustees of Boston University, Boston University's Office of Technology Development, Boston University's Technology Development Office, Boston University's Office of Technology Transfer, Boston University's Charles River Campus Patent Committee, Matthew E. Connors, Samuels, Gauthier & Stevens LLP, Gauthier & Connors Gesmer Updegrove LLP, Janine B. Anderson, Dr. Sean Lee, Dr. Ashley J. Stevens, Vinit Nijhawan, Karen Jacobs, Andrei Ruckenstein, Barry Unger, Selim Unlu, Scott Whitaker, Joyce Wong, Rick Clark, April Effort, Jonathan Jensen, Michael Pratt, Crystal Talley, Martin Howard, and Boston University's agents, attorneys, representatives, subsidiaries, departments, branches, or other organizational or operating units, any successors, assignees, or predecessor organizations or other business or academic entities (whether merged, acquired, or otherwise); any parent corporations, affiliates, or any other entities of Boston University which are or have been under common control of Boston University, Including the Boston University Photonics Center.

3.      "BU Accused Employees" means Janine B. Anderson, Dr. Sean Lee, Dr. Ashley Stevens, and Vinit Nijhawan.

4.      "Connors" means Matthew E. Connors, Esq.

5.      "Including," "Include," and their variants mean including, but not limited to.

3

6.      "Lumileds" means Lumileds LLC, and Includes the formerly named defendants in this action, Koninklijke Philips Electronics N.V. and Philips Lumileds Lighting Company LLC, and their attorneys.

7.      "Osram" means Osram AG, Osram Opto Semiconductors GmbH, Osram Opto Semiconductors, Inc., and Osram Sylvania, Inc., and any of their attorneys.

8.      "Osram's Motion to Transfer Venue" refers to the Motion to Transfer Venue to the District of Massachusetts filed by Osram in the Schubert v. Osram Litigation on November 7, 2012, D.I. 10.

9.      "Petition to Accept Unintentionally Delayed Payment" means any USPTO form entitled "Petition to Accept Unintentionally Delayed Payment of Maintenance Fee in an Expired Patent" or any other document prepared for the purpose of filing with the USPTO to address the non-payment, late payment, or delayed payment of patent maintenance fees, including drafts thereof.

10.      "Schubert" means Plaintiff E. Fred Schubert and his attorneys, agents, and representatives.

11.      "Schubert v. Osram Litigation" means *E. Fred Schubert v. Osram AG, Osram Opto Semiconductors GmbH, Osram Opto Semiconductors, Inc., and Osram Sylvania, Inc.,* Civil Action No. 12-923, in the United States District Court for the District of Delaware.

12.      "Stocker" means Dr. Dean A. Stocker.

13.      "This Action" means Case No. 1:12-cv-00924 in the United States District Court for the District of Delaware.

14.      "USPTO" means the United States Patent and Trademark Office.

737023392

## TOPICS

**Jurisdictional Topics**

1.      The amount of revenue You received, expect to receive, have rights to, or may receive, directly or indirectly, relating to the '475 Patent, any lawsuit asserting the '475 Patent, or Schubert, how the revenue was calculated, what the revenue was for, and when You received or expect to receive such revenue.

2.      The content and dates of communications between BU and Schubert, and BU's internal communications, relating to (1) transferring or otherwise assigning the '475 Patent to Schubert, and the performance of any related agreements, (2) any lawsuit asserting the '475 Patent or the potential filing of any lawsuit asserting the '475 Patent, Including the jurisdiction, district, or state in which Schubert contemplated filing or actually filed a lawsuit; and whether the communications were in writing.

3.      The content and dates of communications between You and Schubert regarding Osram's Motion to Transfer Venue, and whether the communications were in writing.

4.      The identification of all patent lawsuits (by case number and parties) that have been filed in or transferred into the District of Delaware in the last 10 years in which BU had a right to a portion of the proceeds from any settlement or judgment, whether BU actually received any proceeds and how much, the identification of the underlying contract creating the right to proceeds (by parties); and whether BU knew in advance that the patentee was going to file the case in Delaware.

**Merits Topics**

5.      BU's decision to not timely pay the second maintenance fees for the '475 Patent,

Including the individuals who made, approved, and executed the decision, all reasons BU did not

timely pay the fees, which individuals knew those reasons and when they first learned of them,

and the existence of Documents evidencing or referring to the foregoing.

6.      Whether BU (specifically Including the BU Accused Employees) and Schubert knew,

prior to the filing of the Petition to Accept Unintentionally Delayed Payment for the '475 Patent,

that the Petition would include or otherwise required a certification of unintentional delay in

paying the maintenance fees for the '475 Patent, and the identification of Documents evidencing

that.

7.      Whether BU (specifically Including the BU Accused Employees) and Schubert knew,

prior to the filing of the Petition to Accept Unintentionally Delayed Payment for the '475 Patent,

that reviving a U.S. patent that had expired due to failure to timely pay maintenance fees

required certifying unintentional delay in paying the maintenance fees and otherwise required the

delay to have actually been unintentional, and the identification of Documents evidencing that.

8.       When and how BU (specifically Including the BU Accused Employees) and

Schubert first learned that the Petition to Accept Unintentionally Delayed Payment for the '475

Patent actually included a certification of unintentional delay in paying the maintenance fees for

the '475 Patent, and the identification of Documents evidencing.

9.      Any investigation, due diligence, or inquiries by BU, Connors, Gesmer Updegrove or

Schubert regarding whether the failure to timely pay maintenance fees for the '475 Patent was

intentional or unintentional, including the actions taken, documents and information considered,

737023392

individuals involved or with knowledge thereof, dates, and the identity of documents evidencing the foregoing.

10. The content of the February 22, 2010 Memorandum to the Charles River Campus Patent Committee (BU000447-448, the "Memorandum"), whether and when Connors and Gesmer Updegrove received the Memorandum, and the identity of all individuals who received the Memorandum and when.

11. BU's, Connors', and Gesmer Updegrove's factual bases or lack thereof for certifying in the Petition to Accept Unintentionally Delayed Payment for the revival of the '475 Patent that the delay in paying maintenance fees was unintentional, Including the identification of Documents evidencing or discussing the bases, and all persons who had knowledge of such bases by December 31, 2010.

12. The identities and involvement of BU employees in: (1) the decision not to timely pay the second maintenance fees for the '475 Patent; (2) the revival of the '475 Patent, Including the Petition to Accept Unintentionally Delayed Payment and instructing counsel to prepare and submit the Petition to the USPTO; and (3) any transfer of rights (potential or actual) to the '475 Patent.

13. BU (specifically Including the BU Accused Employees) and Schubert's involvement with drafting and/or reviewing drafts of the Petition to Accept Unintentionally Delayed Payment for the '475 Patent, Including the identity of documents and the individual BU employees who were involved.

14. When and how BU first received the Petition to Accept Unintentionally Delayed Payment for the '475 Patent, which individuals at BU received the Petition in 2010, when, and how.

7

737023392

15.     Whether Connors or Gesmer Updegrove inquired with BU and Schubert, prior to submitting the Petition to Accept Unintentionally Delayed Payment for the '475 Patent to the USPTO, regarding why BU did not timely pay the second maintenance fees, and if so, what information was provided to Connors and/or Gesmer Updegrove, and by whom.

16.     BU's (specifically Including the BU Accused Employees) understanding as to why Dr. Schubert wrote "I would not be interested" in response to Sean Lee's September 2, 2009 email to Dr. Schubert regarding the '475 Patent (see BU00268-269), and what that meant.

17.     BU's (specifically Including the BU Accused Employees) understanding as to why Dr. Schubert decided to acquire the '475 Patent from BU, how and when BU learned that, what Schubert communicated to BU, and identifying the underlying documents by Bates number.

18.     The content and dates of BU's communications with Sean Lee and Ashley Stevens relating to this litigation or any charges of inequitable conduct, whether such communications were in writing, and the current residence location and contact information for Sean Lee.

19.     The identification of other accusations of inequitable conduct against BU (specifically Including any BU employees) relating to any Petition to Accept Unintentionally Delayed Payment, excluding Osram's accusations.

20.     The identification of all U.S. patents (by patent number, for which BU filed any Petition to Accept Unintentionally Delayed Payment from 2008 to 2012, and the specific reasons BU did not timely pay maintenance fees for each patent.

21.     BU's communications with Schubert, Stocker, Connors, and Gesmer Updegrove, regarding the failure timely to pay the second maintenance fees for the '475 Patent, expiration of the '475 Patent, Petition to Accept Unintentionally Delayed Payment for the revival of the '475

737023392

Patent and the expiration and  revival of the '475 Patent, this litigation, and Osram's and Lumileds' assertions of inequitable conduct.

22.     When and how BU first notified Connors and Gesmer Updegrove of the reason(s) that (i) BU had not timely paid, and (ii) BU did not intend to timely pay, the second maintenance fees for the '475 Patent, the content of the communications, and an identification of documents evidencing the foregoing (by Bates number or privilege log entry).

23.     Any attempts by You (specifically Including the BU Accused Employees), Schubert, Connors, or Gesmer Updegrove to correct, qualify, or otherwise provide explanation to the USPTO regarding the 2010 representation in the Petition to Accept Unintentionally Delayed Payment for the '475 Patent that the delayed payment of second maintenance fees was unintentional, and if no attempts were made, why not.

24.     BU's practices and policies (written or oral), including any written or verbal procedures and trainings given, regarding the maintenance, expiry, revival, or maintenance fees of patents from 2008 to present.

25.     BU's efforts and/or decision to "consolidate" and/or "reduce" its patent portfolio, and offers to "return" patents to the named inventors listed on the patents (see BU000268-269), Including the reasons therefor, which individual(s) made the decision, what efforts were taken, whether Ashley Stevens or Vinit Nijhawan knew of such efforts or decision, prior to the filing of the Petition to Accept Unintentionally Delayed Payment for the '475 Patent, whether BU Connors and Gesmer Updegrove knew of such efforts or decision prior to the filing of the Petition to Accept Unintentionally Delayed Payment for the '475 Patent.

26.     Any use, demonstration, offer for sale, sale, publication, public disclosure, or importation of any product or prototype that embodied or otherwise practiced or would have

practiced any claim of U.S. Patent Application No. 09/338,709 or the '475 Patent, prior to June 23, 1998.

27.     All offers to sell, transfer, license or otherwise grant rights to the '475 Patent or any U.S. patent or patent application relating to the etching or cleaving of III-Nitride materials, Including the underlying circumstances, the individuals involved in related communications, the result of such offers to sell or license, and the reasons for which any offers to sell or license the '475 Patent did not result or have not yet resulted in an actual sale or license.

28.     Valuations, investigations and analyses of the value of the '475 Patent or the subject matter thereof, Including etching or cleaving III-Nitride materials.

737023392

# Attachment B

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

E. FRED SCHUBERT,                )

              )    Civ. No. 1:12-cv-924-GMS

        Plaintiff,     )

               )

    v.              )

               )

KONINKLIJKE PHILIPS ELECTRONICS   )

N.V. and PHILIPS LUMILEDS LIGHTING   )

COMPANY LLC,          )

               )

        Defendants.

## [PROPOSED] STIPULATED PROTECTIVE ORDER

1.    <u>PURPOSES AND LIMITATIONS</u>

    Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the Court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles.

2.    <u>DEFINITIONS</u>

    2.1    <u>Challenging Party</u>: a Party or Non-Party that challenges the designation of information or items under this Order.

2.2     "CONFIDENTIAL" Information or Items:  information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c).

2.3     Counsel (without qualifier):  Outside Counsel of Record and House Counsel (as well as their support staff).

2.4     Designated House Counsel:  House Counsel who seek access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information in this matter and have been identified to the Designating Party.

2.5     Designated Employee:  employees, other than House Counsel, of a Receiving Party who seek access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information in this matter and have been identified to the Designating Party.

2.6     Designating Party:  a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

2.7     Disclosure or Discovery Material:  all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.8     Expert:  a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action.

2.9     "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items:  a party's highly confidential and proprietary business, commercial, competitive,

2

financial, marketing, sales, and technical information that the disclosing party reasonably and in good faith believes is so highly sensitive that its disclosure to the receiving party or anyone not permitted by this Protective Order to view HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY information would reveal significant business, commercial, competitive, financial, marketing, sales, or technical advantages of the disclosing party. "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information shall include, but is not limited to: (1) business/strategic plans; (2) sales, cost, and price information including future sales/financial projections; (3) non-public marketing information including future marketing or business plans; (4) detailed sales and financial data that includes costs and profits information; (5) customer lists; (6) licenses, licensing policies, and licensing negotiations; (7) non-public semiconductor "recipes," specifications, schematics, and other documents used in connection with generating such "recipes"; (8) non-public semiconductor growth, fabrication, testing, packaging, and other nonpublic technical specifications, schematics, and documents showing the disclosing party's product design, functionality, features, and operation; and (9) other information of business, commercial, competitive, financial, marketing, sales, and technical significance comparable to the items listed in this paragraph..

2.10    House Counsel:  attorneys who are employees of a party to this action.  House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.11    Non-Party:  any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.12    Outside Counsel of Record:  attorneys who are not employees of a party to this action but are retained to represent or advise a party to this action and have appeared in this

3

action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party.

2.13    Party:  any party to this action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.14    Producing Party:  a Party or Non-Party that produces Disclosure or Discovery Material in this action.

2.15    Professional Vendors:  persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.16    Protected Material:  any Disclosure or Discovery Material that is designated as "CONFIDENTIAL" or as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

2.17    Receiving Party:  a Party that receives Disclosure or Discovery Material from a Producing Party.

3.      SCOPE

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Stipulation and Order do not cover the following information:  (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party.  Documents and information protected by this Order shall be used for the sole and limited purpose of this action and shall not be used for any other purpose.

4.      DURATION

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs.  Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

5.      DESIGNATING PROTECTED MATERIAL

5

5.1     <u>Exercise of Restraint and Care in Designating Material for Protection</u>.  Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection at all or do not qualify for the level of protection initially asserted, that Designating Party must promptly notify all other parties that it is withdrawing the mistaken designation.

5.2     <u>Manner and Timing of Designations</u>.  Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a)     <u>for information in documentary form</u> (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" to each page that contains protected material.

A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced.  During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order.  Then, before producing the specified documents, the

6

Producing Party must affix the appropriate legend ("CONFIDENTIAL" or "HIGHLY

CONFIDENTIAL – ATTORNEYS' EYES ONLY") to each page that contains Protected

Material.

       (b)     <u>for testimony given in deposition</u> that the Designating Party identifies on

the record, before the close of the deposition, all protected testimony and specify the level of

protection being asserted.  When it is impractical to identify separately each portion of testimony

that is entitled to protection and it appears that substantial portions of the testimony may qualify

for protection, the Designating Party may invoke on the record (before the deposition is

concluded) a right to have up to 30 days from receipt of the deposition transcript to identify the

specific portions of the testimony as to which protection is sought and to specify the level of

protection being asserted.  Only those portions of the testimony that are appropriately designated

for protection within the 30 days from receipt of the deposition transcript shall be covered by the

provisions of this Stipulated Protective Order.  Alternatively, a Designating Party may specify, at

the deposition or up to 30 days from receipt of the deposition transcript if that period is properly

invoked, that the entire transcript shall be treated as "CONFIDENTIAL" or "HIGHLY

CONFIDENTIAL – ATTORNEYS' EYES ONLY."

     Before the expiration of a 30-day period for designation from receipt of a transcript, the

transcript shall be treated during that period as if it had been designated "HIGHLY

CONFIDENTIAL – ATTORNEYS' EYES ONLY" in its entirety unless otherwise agreed.

After the expiration of that period, the transcript shall be treated only as actually designated.

       (c)     <u>for information produced in some form other than documentary and for</u>

<u>any other  tangible items</u>, that the Producing Party affix in a prominent place on the exterior of

the container or containers in which the information or item is stored the legend

"CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

5.3     Inadvertent Failures to Designate.  If timely corrected, an inadvertent failure to

designate qualified information or items does not, standing alone, waive the Designating Party's

right to secure protection under this Order for such material.  Upon timely correction of a

designation, the Receiving Party must make reasonable efforts to assure that the material is

treated in accordance with the provisions of this Order.

6.      CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1     Timing of Challenges.  Any Party may challenge a designation of confidentiality

at any time.  Unless a prompt challenge to a Designating Party's confidentiality designation is

necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a

significant disruption or delay of the litigation, a Party does not waive its right to challenge a

confidentiality designation by electing not to mount a challenge promptly after the original

designation is disclosed.

6.2     Meet and Confer.  The Challenging Party shall initiate the dispute resolution

process by providing written notice of each designation it is challenging and describing the basis

for each challenge.  To avoid ambiguity as to whether a challenge has been made, the written

notice must recite that the challenge to confidentiality is being made in accordance with this

specific paragraph of the Protective Order.  The parties shall attempt to resolve each challenge in

good faith and must begin the process by conferring directly (in voice to voice dialogue; other

forms of communication are not sufficient) within 14 days of the date of service of notice.  In

conferring, the Challenging Party must explain the basis for its belief that the confidentiality

designation was not proper and must give the Designating Party an opportunity to review the

designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

6.3     Judicial Intervention. If the Parties cannot resolve a challenge without Court intervention, the Designating Party shall follow the Court's Discovery Dispute Resolution procedure.

7.     ACCESS TO AND USE OF PROTECTED MATERIAL

7.1     Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of section 15 below (FINAL DISPOSITION).

Nothing in this Protective Order shall bar trial counsel from rendering advice to their clients with respect to this litigation and, in the course thereof, relying upon any information designated as Confidential and/or Highly Confidential Information, provided that the contents of the information shall not be disclosed.

Nothing herein shall prevent disclosure beyond the terms of this Protective Order if each party designating the information as Confidential and/or Highly Confidential consents to such disclosure and/or if the Court, after notice to all affected parties, orders such disclosure.

9

The parties expressly contemplate and agree not to withhold reasonable requests for consent for Receiving Party's Outside Counsel of Record to disclose to the Receiving Party limited high level information of a summary nature in order for Outside Counsel of Record to advise the Receiving Party on the litigation and efforts to settle same.

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2    Disclosure of "CONFIDENTIAL" Information or Items.  Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a)    the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation;

(b)    Professor E. Fred Schubert, House Counsel, and three Designated Employees of the Receiving Party to whom disclosure is reasonably necessary for this litigation, and the designation of Employees may be changed to due change in corporate structure, employment status, or job responsibilities;

(c)    Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d)    the Court and its personnel, court reporters, and persons engaged to make copies (with such Protected Materials having been filed under seal or with other suitable precautions as determined by the Court);

10

(e)        any graphics, translation, or design consultants retained by counsel of

record for purposes of preparing demonstrative or other exhibits for deposition, trial, or other

court proceedings in this action and non-technical jury or trial consulting services, including

mock jurors; provided that all such individuals have agreed to be bound by this Protective Order

and have signed the undertaking attached as Exhibit A;

(f)        the author or recipient of a document containing the information or a

custodian or other person who otherwise possessed or knew the information;

(g)        any other person with the prior written consent of the party who

designated the material; provided that all such persons have agreed to be bound by this

Protective Order and have signed the undertaking attached as Exhibit A; and

(h)        independent legal translators retained by counsel of record to translate in

connection with this action and independent stenographic reporters and videographers retained

by counsel of record to record and transcribe testimony in connection with this action; provided

that all such persons have agreed to be bound by this Protective Order and have signed the

undertaking attached as Exhibit A.

7.3      <u>Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY"</u>

<u>Information or Items</u>.  Unless otherwise ordered by the Court or permitted in writing by the

Designating Party, a Receiving Party may disclose any information or item designated

"HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" only to:

(a)        the Receiving Party's Outside Counsel of Record in this action, as well as

employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the

information for this litigation;

11

(b)     Two Designated House Counsel of the Receiving Party to whom it is

reasonably necessary to disclose the information for this litigation, and the designation of House

Counsel may be changed to due change in corporate structure, employment status, or job

responsibilities;

(c)     Experts of the Receiving Party (1) to whom disclosure is reasonably

necessary for this litigation, (2) who have signed the "Acknowledgment and Agreement to Be

Bound" (Exhibit A), and (3) as to whom the procedures set forth in paragraph 7.4(a), below,

have been followed;

(d)     the Court and its personnel, court reporters, and persons engaged to make

copies (with such Protected Materials having been filed under seal or with other suitable

precautions as determined by the Court);

(e)     any graphics, translation, or design consultants retained by counsel of

record for purposes of preparing demonstrative or other exhibits for deposition, trial, or other

court proceedings in this action and non-technical jury or trial consulting services, including

mock jurors; provided that all such individuals have agreed to be bound by this Protective Order

and have signed the undertaking attached as Exhibit A;

(f)     the author or recipient of a document containing the information or a

custodian or other person who otherwise possessed or knew the information;

(g)     any other person with the prior written consent of the party who

designated the material; provided that all such persons have agreed to be bound by this

Protective Order and have signed the undertaking attached as Exhibit A; and

(h)     independent legal translators retained by counsel of record to translate in

connection with this action and independent stenographic reporters and videographers retained

12

by counsel of record to record and transcribe testimony in connection with this action; provided that all such persons have agreed to be bound by this Protective Order and have signed the undertaking attached as Exhibit A.

7.4     Procedures for Approving or Objecting to Disclosure of "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items to Experts.

(a)     Unless otherwise ordered by the Court or agreed to in writing by the Designating Party, a Party that seeks to disclose to an Expert (as defined in this Order) any information or item that has been designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" first must make a written request to the Designating Party that (1) sets forth the full name of the Expert and the city and state of his or her primary residence, (2) attaches a copy of the Expert's current resume, (3) identifies the Expert's current employer(s), (4) identifies each person or entity from whom the Expert has received compensation or funding for work in his or her areas of expertise or to whom the expert has provided professional services, including in connection with a litigation, at any time during the preceding five years, and (5) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five years.

(b)     A Party that makes a request and provides the information specified in the preceding respective paragraphs may disclose the subject Protected Material to the identified Expert unless, within 14 days of delivering the request, the Party receives a written objection from the Designating Party.  Any such objection must set forth in detail the grounds on which it

13

is based.  If the parties are unable to resolve the objection, the objecting party shall follow the

Court's discovery resolution procedure within 7 days from the objection.

8.  <u>PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER
LITIGATION</u>

If a Party is served with a subpoena or a court order issued in other litigation that compels

disclosure of any information or items designated in this action as "CONFIDENTIAL" or

"HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" that Party must:

(a)  promptly notify in writing the Designating Party.  Such notification shall

include a copy of the subpoena or court order;

(b)  promptly notify in writing the party who caused the subpoena or order to

issue in the other litigation that some or all of the material covered by the subpoena or order is

subject to this Protective Order.  Such notification shall include a copy of this Stipulated

Protective Order; and

(c)  cooperate with respect to all reasonable procedures sought to be pursued

by the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order, the Party served with the

subpoena or court order shall not produce any information designated in this action as

"CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" before a

determination by the court from which the subpoena or order issued, unless the Party has

obtained the Designating Party's permission.  The Designating Party shall bear the burden and

expense of seeking protection in that court of its confidential material, and nothing in these

provisions should be construed as authorizing or encouraging a Receiving Party in this action to

disobey a lawful directive from another court.

14

9.      A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS
        LITIGATION

        (a)      The terms of this Order are applicable to information produced by a Non-

Party in this action and designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL –

ATTORNEYS' EYES ONLY."  Such information produced by Non-Parties in connection with

this litigation is protected by the remedies and relief provided by this Order.  Nothing in these

provisions should be construed as prohibiting a Non-Party from seeking additional protections.

        (b)      In the event that a Party is required, by a valid discovery request, to

produce a Non-Party's confidential information in its possession, and the Party is subject to an

agreement with the Non-Party not to produce the Non-Party's confidential information, then the

Party shall:

                1.      promptly notify in writing the Requesting Party and the Non-Party

that some or all of the information requested is subject to a confidentiality agreement with a

Non-Party;

                2.      promptly provide the Non-Party with a copy of the Stipulated

Protective Order in this litigation, the relevant discovery request(s), and a reasonably specific

description of the information requested; and

                3.      make the information requested available for inspection by the

Non-Party.

        (c)      If the Non-Party fails to object or seek a protective order from this court

within 30 days of receiving the notice and accompanying information, the Receiving Party may

produce the Non-Party's confidential information responsive to the discovery request.  If the

Non-Party timely seeks a protective order, the Receiving Party shall not produce any information

15

in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court. Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

10.      USE OF PROTECTED MATERIALS AT HEARINGS AND TRIAL

Any court hearing which refers to or describes Protected Materials may, in the Court's discretion, be held *in camera*. Before a party may refer to or describe Protected Materials, Materials in a court hearing, that party must give the other party notice to allow for a request that the hearing be held *in camera*. Nothing contained herein shall be deemed to constitute a waiver of any party's right to contest the sealing of any documents or testimony pursuant to Rule 26 of the Federal Rules of Civil Procedure. Any party may at any time request the Court to determine whether the Protected Materials are properly designated and whether or not they satisfy the requirements of Fed. R. Civ. P. 26.

11.      UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

16

12.     INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED
        MATERIAL

        Nothing in this Protective Order shall require disclosure of information that a Party

contends is protected from disclosure by the attorney-client privilege, the work product

immunity or other privilege, doctrine, right, or immunity.  If information subject to a claim of

attorney-client privilege, work product immunity, or other privilege, doctrine, right, or immunity

is nevertheless inadvertently or unintentionally produced or made available for inspection,

pursuant to Federal Rule of Evidence 502(d) such disclosure shall in no way prejudice or

otherwise constitute a waiver or estoppel as to any such privilege, doctrine, right or immunity, or

other ground for withholding production to which the Producing Party would otherwise be

entitled to assert.  Any Party that inadvertently produces or makes available for inspection

materials protected by the attorney-client privilege, work product privilege, or other privilege,

doctrine, right, or immunity may obtain the return of those materials by promptly notifying the

recipient(s).  The Producing Party shall provide a privilege log for any relevant inadvertently

produced materials as soon as reasonably possible after requesting their return.  The recipient(s)

shall gather and return, or destroy (and certify such destruction), all copies of the privileged

material to the Producing Party no later than two (2) business days after receiving a request for

their return, except for any pages containing privileged markings by the recipient, which pages

shall instead be destroyed and certified as such by the recipient to the Producing Party.  The

recipient shall also destroy and certify such destruction within two (2) business days after

receiving a request for return of inadvertently produced materials all documents or parts thereof

summarizing or otherwise disclosing the content of the inadvertently produced material and shall

not use such material for any purpose.  Notwithstanding this provision, outside litigation counsel

17

of record are not required to delete information that may reside on their respective firm's electronic backup systems that are over-written in the normal course of business and the outside litigation counsel shall not access the inadvertently produced material residing on the electronic backup systems.

If the Receiving Party contests the privilege or work product designation by the Producing Party, the Receiving Party shall give the Producing Party written notice of the reason for the disagreement. The Receiving Party shall follow the Court's Discovery Dispute Resolution procedure.

13.    <u>MISCELLANEOUS</u>

13.1    <u>Right to Further Relief</u>.  Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

13.2    <u>Right to Assert Other Objections</u>.  By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order.  Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

13.3    <u>Filing Protected Material</u>.  All Protected Material must be filed under seal in accordance with the provisions of the United States District Court for the District of Delaware's Revised Administrative Procedures Governing Filing and Service by Electronic Means.

14.    <u>FINAL DISPOSITION</u>

Within 60 days after the final disposition of this action, as defined in paragraph 4, each Receiving Party must return all Protected Material to the Producing Party or destroy such material.  As used in this subdivision, "all Protected Material" includes all copies, abstracts,

18

compilations, summaries, and any other format reproducing or capturing any of the Protected

Material. Whether the Protected Material is returned or destroyed, the Receiving Party must

submit a written certification to the Producing Party (and, if not the same person or entity, to the

Designating Party) by the 60-day deadline that (1) identifies (by category, where appropriate) all

the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has

not retained any copies, abstracts, compilations, summaries or any other format reproducing or

capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to

retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts,

legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work

product, and consultant and expert work product, even if such materials contain Protected

Material. Any such archival copies that contain or constitute Protected Material remain subject

to this Protective Order as set forth in Section 4 (DURATION).

Dated:  April 8, 2013

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

FARNAN LLP

COOCH & TAYLOR

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
Rosemary J. Piergiovanni (Bar No. 3655)
919 North Market Street, 12th Floor
Wilmington, DE  19801
(302) 777-0300


Daniel A. Ladow (admitted *pro hac vice*)
Timothy P. Heaton (admitted *pro hac vice*)
TROUTMAN SANDERS LLP
405 Lexington Avenue
New York, NY 10174
(212) 704-6000


Robert A. Angle (admitted *pro hac vice*)
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA 23219
(804) 697-1200


*Attorneys for Plaintiff*

/s/ Blake A. Bennett
C. Scott Reese, Esq. (#2036)
Blake A. Bennett, Esq. (#5133)
1000 West Street, 10th Floor
P.O. Box 1680
Wilmington, DE  19899-1680
Tel:  (302) 984-3800

Edward D. Johnson
Michael A. Molano
Cliff A. Maier
MAYER BROWN LLP
3000 El Camino Real
Two Palo Alto Square, Suite 300
Palo Alto, CA  94306
Tel:  (650) 331-2000

*Attorneys for Koninklijke*
*Philips Electronics N.V.*


PURSUANT TO STIPULATION, IT IS SO ORDERED.

DATED:  _____        _____
                                             The Honorable Gregory M. Sleet

20

<u>EXHIBIT A</u>

<u>ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND</u>

       I, _____, of _____,

declare under penalty of perjury that I have read in its entirety and understand the Protective

Order that was issued by the United States District Court for the District of Delaware on

_____ in the case of *Schubert v. Koninklijke Philips Electronics N.V.,* et al., C.A. No. 12-

cv-924-GMS. I agree to comply with and to be bound by all the terms of this Protective Order

and I understand and acknowledge that failure to so comply could expose me to sanctions and

punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner

any information or item that is subject to this Protective Order to any person or entity except in

strict compliance with the provisions of this Order.

       I further agree to submit to the jurisdiction of the United States District Court for the

District of Delaware for the purpose of enforcing the terms of this Stipulated Protective Order,

even if such enforcement proceedings occur after termination of this action.

Date: _____

City and State where sworn and signed: _____

Printed name: _____

Signature: _____

20389556v1

# EXHIBIT Q



Mayer Brown LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
United States of America

T: +1 650 331 2000
F: +1 650 331 2060

mayerbrown.com

June 4, 2020

**<u>BY EMAIL</u>**

**Gray M. Buccigross**
T: +1 650 331 2067
GBuccigross@mayerbrown.com

Michael N. Rader
Wolf Greenfield
605 Third Avenue
New York, NY 10158
mrader@wolfgreenfield.com

Re:   *E. Fred Schubert v. Lumileds LLC*
      C.A. No. 1:12-cv-924-MN (D. Del.)

Dear Mike:

Lumileds encloses for service Lumileds' First Set of Requests for Production (Nos. 1-23), Lumileds' First Set of Interrogatories (Nos. 1-10), and a document subpoena to Boston University. As you will see, we have issued discovery directed at both personal jurisdiction issues[1] and on the merits so the parties can expedite any personal jurisdiction issues to complete fact discovery by the August 11, 2020 cutoff.[2]

As previously mentioned, Lumileds is willing to work with you to minimize the burden to BU in this case and expedite any personal jurisdiction discovery needed for expedited briefing. To that end, we will take the deposition of BU employee Vinit Nijhawan off calendar for now, pending depositions of BU, Janine Anderson, and Ashley Stevens.

Very truly yours,

*/s/Gray M. Buccigross*
Graham (Gray) M. Buccigross

Cc:   Blake Bennett, Edward D. Johnson, Michael A. Molano, Cliff A. Maier

---

[1] Schubert raised the possibility of BU challenging personal jurisdiction (*see* D.I. 122), so we have included jurisdictional discovery. If BU intends to challenge jurisdiction, please provide times on June 8, 2020 when you can meet and confer regarding an expedited schedule for jurisdictional discovery. If BU is not challenging jurisdiction, we will withdraw the jurisdictional discovery.

[2] March 5, 2020 Scheduling Order (D.I. 70), ¶ 8(a).

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including
Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership)
and Tauil & Chequer Advogados (a Brazilian partnership).

737236576

# EXHIBIT R

| | |
|---|---|
| **From:** | Michael Rader <Michael.Rader@WolfGreenfield.com> |
| **Sent:** | Friday, June 05, 2020 2:16 PM |
| **To:** | Buccigross, Gray M.; Susmita.Gadre@WolfGreenfield.com |
| **Cc:** | US-CLIENT-Lumileds-Schubert; bbennett@coochtaylor.com; Karen Keller; WGS-SchubertvPhilips@WolfGreenfield.com |
| **Subject:** | RE: Schubert v. Lumileds:  Discovery to Boston University [MB-AME.FID919326] |

**\*\*EXTERNAL SENDER\*\***

Gray:

We never agreed to accept service of a subpoena on BU.  We agreed to accept service of deposition subpoenas on three individuals and a document subpoena on one of them (Dr. Stevens), which we did – and Dr. Stevens already timely responded and produced documents.

I would be happy to speak with BU about whether we will accept service of your new subpoena to BU.  I can get back to you about that early next week.

Your email does not explain what you mean by "expedited briefing."  BU's motion to dismiss is due on Tuesday.  I presume Lumileds will oppose it.  BU has the right to file a reply brief.  BU will not accept a shortened time period for filing its reply brief.  Lumileds is welcome to file its opposition brief as quickly as you can prepare it.

Having made no showing on personal jurisdiction, and having not even pled that BU is subject to personal jurisdiction (let alone facts supporting such a conclusion), Lumileds is not entitled to jurisdictional discovery.

I copy our team at Wolf Greenfield (please use the reflector I've added in the future) and our Delaware counsel Karen Keller.

Have a good weekend.

Mike

---

**From:** Buccigross, Gray M. [mailto:GBuccigross@mayerbrown.com]
**Sent:** Thursday, June 4, 2020 8:48 PM
**To:** Rader, Michael <Michael.Rader@WolfGreenfield.com>; Gadre, Susmita A. <Susmita.Gadre@WolfGreenfield.com>
**Cc:** US-CLIENT-Lumileds-Schubert <US-CLIENT-Lumileds-Schubert@mayerbrown.com>; bbennett@coochtaylor.com
**Subject:** Schubert v. Lumileds: Discovery to Boston University [MB-AME.FID919326]

Mike,

Please see attached the letter and discovery to Boston University.

Best,
Gray

**Gray Buccigross**
Attorney
Mayer Brown LLP

Direct Tel: +1 650 331-2067
Direct Fax:  +1 650 331-4567
Two Palo Alto Square
Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
gbuccigross@mayerbrown.com
www.mayerbrown.com

This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities, including Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership) and Tauil & Chequer Advogados (a Brazilian partnership).

Information about how we handle personal information is available in our Privacy Notice.

# EXHIBIT S

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| E. FRED SCHUBERT, | |
|     Plaintiff and Counterclaim Defendant, | |
| v. | |
| LUMILEDS LLC, | C.A. No:  1:12-cv-00924-MN |
|     Defendant and Counterclaim Plaintiff, | **LUMILEDS LLC'S FIRST SET OF INTERROGATORIES TO TRUSTEES OF BOSTON UNIVERSITY** |
| v. | |
| TRUSTEES OF BOSTON UNIVERSITY, | |
|     Counterclaim Defendant. | |

PROPOUNDING PARTY:   LUMILEDS LLC

RESPONDING PARTY:   TRUSTEES OF BOSTON UNIVERSITY

SET NUMBER:   ONE (NOS. 1-10)

Pursuant to Federal Rule of Civil Procedure 33, Lumileds LLC ("Lumileds" or "Defendant") requests that Counterclaim Defendant Trustees of Boston University provide a written response to the following interrogatories at the offices of Mayer Brown LLP, Two Palo Alto Square, Suite 300, 3000 El Camino Real, Palo Alto CA 94306, within thirty (30) days of service.

In answering these requests, the following definitions and instructions apply:

### DEFINITIONS

The following definitions and rules of interpretation apply to each request as if incorporated into the request. Notwithstanding any definition stated below, each word, term, or phrase used in the requests below is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and/or the Federal Rules of Evidence.

1.      "'475 Patent" means U.S. Patent No. 6,294,475, including its underlying applications, U.S. Patent Application No. 09/338,079 and U.S. Provisional Application No. 60/090,409.

2.      "Connors" means patent attorney Matthew E. Connors.

3.      "Document" means any document, thing, or electronically stored information, stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form, subject to production under the Federal Rules of Civil Procedure, the Local Rules of the U.S. District Court for the District of Delaware, and other applicable law and rules. "Document" excludes the items listed in Schedule A of the District of Delaware Default Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI").

4.      "Identify," when referring to a Person, means to give the Person's full name, present or last known home and business addresses and telephone numbers, and when referring to

a natural person, the present or last known place of employment, employer; and present or last known position.

5.      "Identify," when referring to a Document, means to provide the Document type (*e.g.*, email, Word document, Excel document), provide the date the Document was generated, summarize its contents, and provide the Bates number of the Document if it has been produced.

6.      "Including," "Include," and their variants mean including, but not limited to.

7.      "Lumileds" means Lumileds LLC, its employees, officers, and directors, representatives, successors, and predecessors, and Includes the formerly named defendants in this action, Koninklijke Philips Electronics N.V. and Philips Lumileds Lighting Company LLC.

8.       "Motion to Transfer Venue" refers to the Motion to Transfer Venue to the District of Massachusetts filed by Osram in the Schubert v. Osram Litigation on November 7, 2012, D.I. 10.

9.      "NSF" means the United States National Science Foundation, its employees, agents, representatives, and attorneys, and includes Walda J. Jacobs and Robin Fritsch.

10.      "ONR" means the United States Office of Naval Research, its employees, agents, representatives, and attorneys, and includes Carol Petrosky and John Karasek.

11.      "Osram" means Osram AG, Osram Opto Semiconductors GmbH, Osram Opto Semiconductors, Inc., and Osram Sylvania, Inc., and any of their attorneys.

12.      "Person" includes the plural and the singular and includes, without limitation, any natural person, alive or deceased, any corporation, organization, partnership, joint venture, sole proprietorship, other business entity or association, foundation, trust, and any government or governmental body, commission, department, committee, board, or agency, and any and all officers, directors, members, principals, shareholders, employees, agents, and other representatives thereof.

13.    "Petition to Accept Unintentionally Delayed Payment" means any USPTO form entitled "Petition to Accept Unintentionally Delayed Payment of Maintenance Fee in an Expired Patent" or any other Document created for the purpose of filing with the USPTO to address the non-payment, late payment, or delayed payment of patent maintenance fees, including drafts thereof.

14.    "Schubert v. Osram Litigation" means *E. Fred Schubert v. Osram AG, Osram Opto Semiconductors GmbH, Osram Opto Semiconductors, Inc., and Osram Sylvania, Inc.,* Civil Action No. 12-923, in the United States District Court for the District of Delaware.

15.    "USPTO" means the United States Patent and Trademark Office.

16.    "Schubert" means the Plaintiff in this action, Dr. E. Fred Schubert, and any Persons acting or purporting to act for or on his behalf, or who are subject to his direction and control, including his agents, employees, attorneys, consultants, and representatives.

17.    "You", "Your" or "BU" means Boston University, and Includes the Trustees of Boston University, Boston University's Office of Technology Development, Boston University's Technology Development Office, Boston University's Office of Technology Transfer, Boston University's Charles River Campus Patent Committee, Matthew E. Connors, Samuels, Gauthier & Stevens LLP, Gesmer Updegrove LLP, Janine B. Anderson, Dr. Sean Lee, Dr. Ashley J. Stevens, Vinit Nijhawan, Karen Jacobs, Andrei Ruckenstein, Barry Unger, Selim Unlu, Scott Whitaker, Joyce Wong, Rick Clark, April Effort, Jonathan Jensen, Michael Pratt, Crystal Talley, Martin Howard, and Boston University's agents, attorneys, representatives, subsidiaries, departments, branches, or other organizational or operating units, any successors, assignees, or predecessor organizations or other business or academic entities (whether merged, acquired, or otherwise); any parent corporations, affiliates, or any other entities of Boston University which

-4-

are or have been under common control of Boston University, Including the Boston University Photonics Center.

## **INSTRUCTIONS**

1.      Answer each interrogatory in compliance with the Federal Rules of Civil Procedure, the Local Rules of Civil Practice and Procedure of the U.S. District Court for the District of Delaware, and other applicable law and rules.

2.      Set forth each interrogatory before each response.

3.      If, in answering these interrogatories, You claim that any interrogatory, or a definition or instruction applicable thereto, is ambiguous, do not use such a claim as a basis for refusing to respond, but rather set forth as part of the response the language You claim is ambiguous and the interpretation You have used to respond to the individual interrogatory.

4.      If You refuse to answer any interrogatory, or any portion thereof, on the ground of privilege, provide sufficient information such that the Court and the parties may determine the validity of the claim of privilege

5.      If You elect to produce business records pursuant to Fed. R. Civ. P. 33(d), all Documents originating as electronically stored information, including, without limitation, writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by You into a reasonably usable form—must:

a.  for emails, Word documents, PowerPoint documents, and PDF documents, be produced in a reasonably accessible electronic form, including, without limitation, 300 D.P.I. Group IV compression single-page TIFF format images with load files, associated with particular TIFF format images through a database in a reasonably accessible electronic form;

    b.   under no circumstances be produced as TIFF format images generated by scanning from paper copies of electronically stored information;

    c.   for Microsoft Excel documents, be produced in native format; and

    d.   for other document types, otherwise be produced in a format to be agreed among the parties.

6. If You elect to produce business records pursuant to Fed. R. Civ. P. 33(d), all Documents Identified and produced in response to these interrogatories that originated as paper Documents must:

    a.   be produced with all associated file labels, file headings, and file folders, together with the responsive Documents from each file, with each file being Identified by its owner or custodian;

    b.   if produced in hard copy, be produced with all pages originally fastened together as the Documents were kept in the ordinary course of business—for example, stapled together—and including all attachments currently or previously appended to each Document, whether those attachments themselves would be independently responsive to these interrogatories;

    c.   be produced in original form if they cannot be legibly copied; and

    d.   bear a unique number ("Bates Number") on each page of each Document produced that includes a symbol or abbreviation that Identifies the producing party.

7.    If You withhold any attachment to any Document on the ground of privilege, in addition to Identifying the Document above, Identify that attachment in the privilege log as a separate Document and explicitly Identify the Document to which it was attached.

8.    In the event that more than one copy of a Document exists, produce every copy on which there appears any notation or marking of any sort not appearing on any other copy

(including routing or filing instructions) or any copy containing different attachments from any other copy.

9.      In accordance with Federal Rule of Civil Procedure 26(e), these requests are continuing in nature. If, after responding, You obtain or become aware of any additional information relating to these requests, You must supplement Your responses.

## INTERROGATORIES

### Jurisdictional Interrogatories

**INTERROGATORY NO. 1**  Describe in detail Your actual or potential financial interest in the '475 Patent, Including identifying all revenue You received, expect to receive, have rights to, or may receive, directly or indirectly, relating to any lawsuit asserting the '475 Patent, or the potential or actual licensing, granting of rights to, or enforcement of the '475 Patent.

**INTERROGATORY NO. 2**  Describe in detail Your communications with Schubert relating to the filing or potential filing of any lawsuit asserting the '475 Patent, Including communications regarding the jurisdiction, district, or state in which Schubert contemplated filing or actually filed any lawsuit asserting the '475 Patent, state whether Schubert sought Your permission or opinion prior to filing any lawsuit in the District of Delaware, and Identify the dates of such communications, the Persons involved in such communications, any Documents discussed or provided, and detail the substance of each communication.

**INTERROGATORY NO. 3**  Describe in detail Your communications with Schubert regarding Osram's Motion to Transfer Venue, and Identify the dates of such communications, the Persons involved in such communications, any Documents discussed or provided, and detail the substance of each communication.

**INTERROGATORY NO. 4**  Describe in detail Your efforts to advertise, offer to sell, and/or provide services and/or goods, and Your actual provision of services and/or goods, in

Delaware from 2012 to present, Including Identifying all such services and/or goods, all revenues received from the advertising, sale, and/or provision of all such services and/or goods, and the sources of such revenues.

**INTERROGATORY NO. 5**  Identify all corporate entities You have had a controlling interest or ownership interest in, and that were organized under Delaware laws, had a physical location in Delaware, or were registered to do business in Delaware, from 2000 to present, Including Seragen, Inc. and Boston University, Inc., and describe in detail the nature of Your relationship with all such entities.

### Merits Interrogatories

**INTERROGATORY NO. 6**  State whether You contend that Your entire delay in paying the second maintenance fee for the '475 Patent was intentional or unintentional, and describe in detail all bases for Your contention. Your response should separately address the periods September 25, 2009 (when the second maintenance fee was due) through February 2, 2010 (when Schubert informed BU that he was interested in acquiring the '475 Patent), and February 2, 2010 through April 22, 2010.

**INTERROGATORY NO. 7**  State in detail Your contentions regarding why You did not commit inequitable conduct by representing to the USPTO that the entire delay in paying the second maintenance fee for the '475 Patent was "unintentional," Including describing in detail when and how You first became aware that You were required to represent to the USPTO that the delay was unintentional and all facts on which you relied in determining whether the delay was unintentional, whether You attempted to correct that representation or otherwise inform the USPTO of the underlying facts, and if not, why not.

**INTERROGATORY NO. 8**  Describe in detail Your communications with Connors regarding the second maintenance fee for the '475 Patent, Including identifying when Connors

was first notified of the reason You did not timely pay the second maintenance fee for the '475 Patent, and Identify any information You provided to Connors regarding whether the delayed payment of the second maintenance fee for the '475 Patent was unintentional.

**INTERROGATORY NO. 9**  Describe in detail BU's reasons for "consolidating [its] active portfolio" of patents and "effort to reduce [its] portfolio" of patents, as referenced in BU000268-269, and for offering to "return" (as that term is used in BU000268-269) any U.S. patents to the named inventors listed on those patents from 2008-2011.

**INTERROGATORY NO. 10**      Provide Your contentions regarding whether any of Your employees knew, prior to the filing of the Petition to Accept Unintentionally Delayed Payment for the '475 Patent (the "Petition"), that the Petition would require a certification that the entire delay in paying the maintenance fees was "unintentional," or that revival would otherwise require such certification, and if so, Identify the employees.

DATED: June 4, 2020

**OF COUNSEL**

Mayer Brown LLP

Edward D. Johnson
Michael A. Molano
Cliff A. Maier
Graham (Gray) M. Buccigross
Two Palo Alto Square, Ste. 300
3000 El Camino Real
Palo Alto, CA 94306
Tel: 650-331-2000

Priya A. Desai
71 S. Wacker Drive
Chicago, IL 60611
Tel: 312-782-0600

**COOCH AND TAYLOR**

By:  */s/ Blake A. Bennett* _____
  C. Scott Reese (#2036)
  Blake A. Bennett (#5133)
  The Nemours Building,
  1007 N. Orange Street, Ste. 1120
  Wilmington, DE 19899-1680
  Tel: (302) 984-3800

  *Attorneys for Defendant Lumileds LLC*

-9-

I, Graham (Gray) M. Buccigross, declare that I am over the age of eighteen years and not a party to this action.  I am employed in Palo Alto, California and my business address is Mayer Brown LLP, Two Palo Alto Square, Ste. 300, 3000 El Camino Real, Palo Alto, California  94306.  On June 4, 2020, I served the foregoing document(s) described as:

## LUMILEDS LLC'S FIRST SET OF INTERROGATORIES TO TRUSTEES OF BOSTON UNIVERSITY

☐ By transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ By placing the document(s) listed above in a sealed envelope with postage prepaid, via First Class Mail, in the United States mail at Palo Alto, California addressed as set forth below.

☐ By placing the document(s) listed above in a sealed overnight service envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to an overnight service agent for delivery.

☐ By placing the document(s) listed above in a sealed envelope and causing them to be served via hand delivery addressed as set forth below

☒ By causing the document(s) listed above to be transmitted by e-mail to the following e-mail addresses as set forth below.

☐ By electronically filing the document(s) listed above with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the person(s) listed below.

| | |
|---|---|
| Attorneys for Counterclaim Defendant Trustees of Boston University<br><br>Michael Rader<br>Susmita Gadre<br>WOLF GREENFIELD<br>605 Third Avenue<br>New York, NY 10158<br>(212) 336-3850<br>mrader@wolfgreenfield.com | |
| Attorneys  for  Plaintiff  and  Counterclaim | |

| | |
|---|---|
| Defendant E. Fred Schubert<br><br>Brian E. Farnan (#4089)<br>Michael J. Farnan (#5165)<br>FARNAN LLP<br>919 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>(302) 777-0300<br>bfarnan@farnanlaw.com<br>mfarnan@farnanlaw.com | James M. Bollinger<br>Magnus Essunger<br>Gerald E. Porter<br>Katherine Harihar<br>TROUTMAN SANDERS LLP<br>875 Third Avenue<br>New York, NY 10022<br>(212) 704-6000<br>james.bollinger@troutman.com<br>magnus.essunger@troutman.com<br>gerald.porter@troutman.com<br>katherine.harihar@troutman.com<br><br>Robert A. Angle (admitted *pro hac vice*)<br>TROUTMAN SANDERS LLP<br>1001 Haxall Point, 15th Floor<br>Richmond, VA 23219<br>(804) 697-1200<br>robert.angle@troutman.com |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that I am admitted to practice *pro hac vice* in this litigation.

Dated June 4, 2020 at Menlo Park, California.

*/s/ Graham (Gray) Buccigross*
Graham (Gray) Buccigross