IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| E. FRED SCHUBERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LUMILEDS LLC, | ) | C.A. No. 12-924 (MN) |
| | ) | |
| Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TRUSTEES OF BOSTON UNIVERSITY, | ) | |
| | ) | |
| Counterclaim Defendant. | ) | |

## **MEMORANDUM OPINION**

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE; Gerald E. Porter, Katherine Harihar, James M. Bollinger, Magnus J. Essunger, Robert A. Angle, TROUTMAN SANDERS LLP, New York, NY – Attorneys for Plaintiff

Blake A. Bennett, C. Scott Reese, COOCH AND TAYLOR, Wilmington, DE; Cliff A. Maier, Edward Johnson, Graham M. Buccigross, Michael A. Molano, MAYER BROWN LLP, Palo Alto, CA; Priya A. Desai, MAYER BROWN LLP, Chicago, IL – Attorneys for Defendant

Karen E. Keller, David M. Fry, Nathan R. Hoeschen, SHAW KELLER LLP, Wilmington, DE; Michael Rader, WOLF, GREENFIELD & SACKS, P.C., New York, NY; Susmita A. Gadre, WOLF, GREENFIELD & SACKS, P.C., Boston, MA – Attorneys for Counterclaim Defendant

November 24, 2020
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Presently before the Court is the motion (D.I. 141) of the Trustees of Boston University ("BU") to dismiss the counterclaims Defendant Lumileds LLC has asserted against BU ("Counterclaims," D.I. 128) for lack of personal jurisdiction, improper venue, and lack of declaratory judgment jurisdiction pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(3) of the Federal Rules of Civil Procedure.   The motion has been fully briefed.   (D.I. 142; D.I. 154; D.I. 161; D.I. 202; D.I. 207).   For the reasons set forth below, the motion to dismiss will be GRANTED.

## I.   BACKGROUND

### A.   Factual Background

Plaintiff E. Fred Schubert ("Dr. Schubert") is the sole owner of U.S. Patent No. 6,294,475 ("the '475 patent"), titled "Crystallographic Wet Chemical Etching of III-Nitride Material." (D.I. 1 ¶ 12).   Dr. Schubert was a professor at Boston University ("BU") when he and his co-inventor, Dean A. Stocker ("Dr. Stocker"), did the work underlying the '475 patent.   (D.I. 128 ¶ 62).   Drs. Schubert and Stocker assigned their interests in the patent to BU on February 7, 2000. (*Id.*).   The '475 patent issued on September 25, 2001.   (*Id.* ¶ 70).

On September 2, 2009, BU's Office of Technology Development ("OTD") sent an email to Dr. Schubert, informing him that BU did not intend to pay the second maintenance fee for the '475 patent.   (*Id.* ¶ 83).   The OTD asked whether Dr. Schubert would like to have the '475 patent returned to him, and Dr. Schubert declined.   (*Id.* ¶¶ 83–84).   On September 25, 2009, the '475 patent was abandoned due to BU's non-payment of the second maintenance fee.   (*Id.* ¶ 88).

Later, Dr. Schubert changed his mind.   On February 2, 2010, Dr. Schubert sent a memorandum to BU's OTD, expressing interest in acquiring the '475 patent.   (*Id.* ¶ 99).   On April 22, 2010, through its patent prosecution counsel, BU filed with the United States Patent and

Trademark Office ("PTO") a petition to accept the unintentionally delayed payment of the second maintenance fee and revive the '475 patent pursuant to 37 C.F.R. § 1.378. (*Id.* ¶ 115). Lumileds alleges that BU knew that neither it nor Schubert ever intended to pay the fee, and the representation that "the delay in payment of the maintenance fee to this patent was unintentional" was false. (*Id.* ¶¶ 219, 244–50, 281–83, 292–94). The PTO granted the petition and reinstated the '475 patent as of April 22, 2010. (*Id.* ¶ 118). On October 20, 2010, BU assigned the '475 patent to Dr. Schubert. (*Id.* ¶ 156).[1] In consideration, Dr. Schubert agreed to reimburse BU for the costs of prosecuting the '475 patent and to pay BU a share of the future revenue stream of the patent. (*Id.* ¶ 145; D.I. 142-3 at 3).

### B.    Procedural History

On July 18, 2012, Dr. Schubert sued Koninklijke Philips Electronics N.V. and Philips Lumileds Lighting Company LLC (collectively, "Philips"), asserting infringement of the '475 patent. (D.I. 1 ¶ 16).[2] Philips answered and counterclaimed on November 7, 2012. (D.I. 9). On August 9, 2013, Philips moved for leave to amend its answer and counterclaims to join BU as counterclaim defendant. (D.I. 35). On October 31, 2013, after the Patent Trial and Appeal Board ("PTAB") instituted *inter partes* review of the '475 patent, the Court stayed the litigation,

---

[1]    The assignment states, "the Trustees of Boston University do hereby sell, assign, transfer and set over, unto the said E. Fred Schubert, his successors, legal representatives and assigns, the entire right, title and interest" to the '475 patent. (D.I. 142-4 at 7). A supplemental assignment confirms that Dr. Schubert has the right to "sue for, obtain and collect any recoveries based on any claim for damages by reason of any past infringements of the ['475 patent]." (D.I. 142-5 at 2).

[2]    On the same day, Dr. Schubert asserted the '475 patent in separate suits against Cree, Inc. ("Cree") and OSRAM AG, OSRAM Opto Semiconductors GmbH, OSRAM Opto Semiconductors, Inc., and OSRAM Sylvania Inc. (collectively, "OSRAM"). Dr. Schubert settled with Cree, and the claims were dismissed. (D.I. 33, *Schubert v. Cree, Inc.*, C.A. No. 12-922-GMS). He later settled with OSRAM and those claims were also dismissed. (D.I. 91, *Schubert v. OSRAM AG*, C.A. No. 12-923-GMS).

(D.I. 53), and denied Philips' motion with leave to renew upon completion of the *inter partes* review.

The PTAB issued a final decision in the *inter partes* review, upholding the challenged claims of the '475 patent, which the Federal Circuit affirmed. (D.I. 57). The litigation against Philips resumed. (D.I. 68). On March 6, 2020, the parties stipulated to substitute Lumileds LLC ("Lumileds") as defendant in place of Philips. (D.I. 101). On May 19, 2020, Lumileds filed its Counterclaims, joining BU as a counterclaim defendant. (D.I. 128). Lumileds seeks declaratory judgment against BU for non-infringement (Counterclaim I), invalidity (Counterclaim II), and unenforceability (Counterclaim III) of the '475 patent. (*Id.*).

## II.   LEGAL STANDARDS

### A.   Personal Jurisdiction

Pursuant to Rule 12(b)(2), a party may move to dismiss a case based on the court's lack of personal jurisdiction over that party. When a party moves to dismiss for lack of personal jurisdiction, the non-moving party bears the burden of showing the basis for jurisdiction. *See, e.g.*, *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 369 (D. Del. 2008). If no evidentiary hearing has been held, a plaintiff "need only establish a prima facie case of personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). A plaintiff "presents a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (E) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (internal quotation marks and citation omitted). "When reviewing a motion to dismiss pursuant to Rule 12(b)(2), a court must accept as true all allegations of jurisdictional fact made by the [nonmoving party] and

resolve all factual disputes in the [nonmoving party's] favor." *Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 636, 642 (D. Del. 2006).[3]

Determining the existence of personal jurisdiction generally requires a two-part analysis – one statutory and one constitutional. *See Round Rock Research LLC v. ASUSTeK Comput. Inc.*, 967 F. Supp. 2d 969, 973 (D. Del. 2013). With respect to the statutory analysis, typically the court analyzes the long-arm statute of the state in which the court is located. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). Next, the court must determine whether exercising jurisdiction over the moving defendant comports with the Due Process Clause of the U.S. Constitution. *See id.* Due process is satisfied if the court finds the existence of "minimum contacts" between the non-resident defendant and the forum state, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted).

The Delaware long-arm statute, 10 Del. C. § 3104(c), allows the court to exercise personal jurisdiction over a nonresident in a number of instances. Subsection (c)(4) of the Delaware long-arm statute provides for the exercise of general jurisdiction, *Thompson v. Roman Catholic Archbishop of Wash.*, 735 F. Supp. 2d 121, 127 (D. Del. 2010), which requires that a defendant's contacts with a state are so "continuous and systematic as to render [it] essentially at home in the forum," *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (internal quotation marks and citation omitted). The remaining subsections of the long-arm statute provide for the exercise of specific jurisdiction, *Thompson*, 735 F. Supp. 2d at 127, which is consistent with constitutional due process when a defendant "purposefully directs" activities at residents of the forum, and the plaintiff's

---

[3]     On August 7, 2020, the Court granted Lumileds motion for limited jurisdictional discovery.

cause of action arises from those activities in the forum state, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

**B.**   **Venue**

For a civil action brought in the district courts of the United States, venue is proper in:

(1)   a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2)   a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3)   if there is no district in which any action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

**III.**   **DISCUSSION**

**A.**   **Personal Jurisdiction**

As a threshold matter, Lumileds' Counterclaims do not allege that BU is subject to this Court's personal jurisdiction.  Lumileds alleges only that personal jurisdiction and venue are proper as to "Plaintiff" Dr. Schubert, because he filed suit in the District of Delaware.  (D.I. 128 ¶ 198).  Lumileds alleges that venue in this district is proper as to BU because "a substantial part of the events giving rise to Counter-Plaintiff Lumileds' claims against BU occurred in this district, given Lumileds asserts BU is jointly and severally liable for any [attorney fees awarded]" and "BU retains a financial interest in . . . the outcome of this lawsuit."  (*Id.* ¶ 200).  Indeed, the sum total of Lumileds' allegations of jurisdiction and venue are:

198.   Plaintiff [Dr. Schubert] has submitted to the personal jurisdiction of this Court by filing Case No. 1:12-cv-00924-GMS.

199.   Venue is proper as to Plaintiff in this District, pursuant to 28 U.S.C. § 1391, because Plaintiff filed suit in this District.

200.   Venue is proper as to Counter-Defendant BU in this District, pursuant to 28 U.S.C. § 1391.  Plaintiff filed suit in this District and the suit is proceeding in this District.  Additionally, a substantial part of the events giving rise to Counter-Plaintiff Lumileds' claim against BU occurred in this District, given Lumileds asserts BU is jointly and severally liable for any 35 U.S.C. § 285 award based attorney fees Lumileds incurred in connection with this lawsuit.  Further, Counter-Defendant BU retains a financial interest in the '475 patent, in Dr. Schubert's efforts to enforce the '475 patent, and thus in the outcome of this lawsuit.[4]

(*Id.* ¶¶ 198–200).

Notwithstanding the dearth of allegations in its Counterclaims, Lumileds argues in its briefing that the Court has specific jurisdiction over BU,[5] arguing that BU is subject to personal jurisdiction under (1) Delaware's "long-recognized conspiracy theory" of jurisdiction (D.I. 154 at 8–15) and (2) the "effects test" (D.I. 154 at 15–16).  The Court addresses each theory in turn.

### 1.   Conspiracy Theory

The "conspiracy theory" of jurisdiction is based on "the legal principle that one conspirator's acts are attributable to the other conspirators," and thus the acts of one conspirator may establish personal jurisdiction as to all conspirators.[6]  *Matthew v. Fläkt Woods Grp. SA*, 56 A.3d 1023, 1027 (Del. 2012).  BU argues, and Lumileds does not dispute, that the Federal Circuit, which applies Federal Circuit law to questions of personal jurisdiction,[7] has never

---

[4]      Other than a reference to Lumileds' status as a Delaware limited liability (D.I. 128 ¶ 201), the paragraphs quoted are the only paragraphs in the Counterclaims that reference Delaware or this District.

[5]      Lumileds does not assert that BU is subject to general jurisdiction.

[6]      Lumileds does not specifically allege that a "conspiracy" existed in its Counterclaims – let alone that a conspiracy directed to Delaware existed.  Indeed, the word "conspiracy" is absent from its pleading.

[7]      *Genetic Veterinary Scis., Inc. v. LABOKLIN GmbH & Co. KG*, 933 F.3d 1302, 1309 (Fed. Cir. 2019) ("We apply Federal Circuit law to questions of personal jurisdiction because the

recognized a conspiracy theory of jurisdiction.  The Court is, thus, tempted to follow the tack taken by a California district court and reject Lumileds' conspiracy theory of jurisdiction based on a patent infringement conspiracy, because "plaintiffs have . . . failed to offer even a single Federal Circuit case where conspiracy has been used as a basis for personal jurisdiction" and "the Court has not found any such authority."  *Grober v. Mako Prods., Inc.,* No. CV 04-08604 SGL (OPx), 2008 WL 9027249, at *6 (C.D. Cal. Aug. 29, 2008), *aff'd in part*, 686 F.3d 1335, 1344–47 (Fed. Cir. 2012).  The Court, however, recognizes that Federal Circuit has not explicitly rejected a conspiracy theory either, and thus will address the issue further.

In addressing personal jurisdiction in patent cases, the Federal Circuit conducts a two-part analysis – looking to "whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process."  *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009).  Here, Delaware recognizes a conspiracy theory of personal jurisdiction to comport with due process if it meets five elements:

    (1)    a conspiracy to defraud existed;

    (2)    the defendant was a member of that conspiracy;

    (3)    a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state;

    (4)    the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and

    (5)    the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy.

---

issue is intimately involved with the substance of the patent laws.") (citations and internal quotations omitted).

*Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449 A.2d 210, 225 (Del. 1982).  A claim of conspiracy requires "the combination of two or more persons or entities either for an unlawful purpose, or for the accomplishment of a lawful purpose by unlawful means, resulting in damage." *Smiley v. Daimler Chrysler*, 538 F. Supp. 2d 711, 718 (D. Del. 2008).  Lumileds argues that subjecting BU to personal jurisdiction in this Court under a theory of conspiracy satisfies the five-element test for due process.  The Court disagrees.

First, as noted previously, Lumileds' Counterclaims do not use the word "conspiracy." And there are no allegations in the Counterclaims supporting the tortious litigation scheme that Lumileds asserts in its papers.  Indeed, the only mention of the filing of this litigation in the Counterclaims is not one of conspiracy, but one of Plaintiff acting on his own.  (D.I. 128 ¶ 206 ("Plaintiff has sued Lumileds in the present action, alleging infringement of the '475 patent."); *see also id.* ¶ 330 (referring to Dr. Schubert's settlements in cases involving an "invention that BU returned to him and then he sued other parties")).  To the extent that the Counterclaims can be read to allege a conspiracy, it is a conspiracy to defraud the PTO.  BU's alleged fraud on the PTO occurred in Massachusetts, with its effects directed to the PTO in Virginia.  No substantial act or substantial effect in furtherance of the conspiracy is alleged to have occurred in Delaware.

Additionally, Lumileds' Counterclaims do not plausibly show that BU knew or had reason to know that its acts would have a foreseeable effect in Delaware.  Lumileds alleges that, after Dr. Schubert expressed his interest in acquiring the then-expired '475 patent, BU knowingly misrepresented to the PTO that the delay in paying the second maintenance fee for the '475 patent was unintentional.  (D.I. 128 ¶ 138–39).  After the '475 patent was revived, BU transferred the patent to Dr. Schubert in exchange for a share of future revenue and annual utilization reports. (*Id.* ¶ 145; D.I. 142-3 at 3).  Then, Dr. Schubert brought three lawsuits in Delaware, asserting

8

infringement of the '475 patent.  It cannot be inferred, based on BU's financial stake in and knowledge of Dr. Schubert's intention to bring infringement suits, that BU and Dr. Schubert devised a tortious litigation scheme to assert the newly revived '475 patent in Delaware.  Thus, Lumileds has not alleged or shown that BU knew or had reason to know that its conspiratorial acts would have direct and foreseeable effects in Delaware.[8]

In its supplemental briefing, Lumileds asserts that "it is enough" to assert jurisdiction "that BU learned of Schubert's Delaware act while the conspiracy continued, yet remained a willing and active participant in the joint effort to exploit the fraudulently revived patent."  (D.I. 202 at 10). Lumileds cites *Microsoft Corp. v. Amphus, Inc.* for the proposition that "the conspiracy remains ongoing throughout the pendency of this lawsuit."  C.A. No. 8092-VCP, 2013 WL 5899003, at *12 (Del. Ch. Oct. 31, 2013) (unpublished).  *Amphus*, however, is distinguishable because the plaintiff in that case had plausibly alleged a conspiracy to profit off the patent-in-suit specifically by asserting it in infringement suits.  *Id.* at *12 ("In each of its conspiracy claims, Microsoft alleges that St. Clair commenced its patent infringement suit in Delaware in furtherance of its conspiracy.").  Here, Lumileds has only plausibly alleged, at most, a conspiracy to defraud the

---

[8]      Lumileds argues that, from Dr. Schubert's periodic litigation updates, BU should have known that its alleged conspiracy would have an impact in Delaware. Lumileds also argues that these effects were foreseeable because two defendants in Dr. Schubert's litigations were Delaware entities and, at the time, Delaware was a popular patent forum.  The due process inquiry, however, is not concerned with mere foreseeability of harm in the forum state, but rather the foreseeability that a defendant's acts would cause harm in the forum state.  *See World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980) ("[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State.  Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.").  Merely entering into an alleged patent litigation scheme does not have a sufficient nexus to Delaware, even if some likely targets were Delaware entities.

PTO. That alleged conspiracy does not continue "throughout the pendency of this lawsuit" because the conspiracy as alleged does not plausibly include the lawsuit.

Lumileds also fails to show that BU "remained a willing and active participant in the joint effort to exploit the fraudulently revived patent" such that BU's acts had a reasonably foreseeable effect in Delaware. After jurisdictional discovery, Lumileds asserts that "BU helped put [Dr. Schubert] in a position to litigate," because its transfer of the '475 patent "encourage[d] [Schubert's] entrepreneurial aspirations," (D.I. 202 at 11, quoting D.I. 203-1, Ex. 5 at 163:4–164:14), and made "absolutely clear" that Dr. Schubert had the right to assert the patent in infringement claims, (D.I. 202 at 12, quoting D.I. 203-1, Ex. 2 at 287:2–288:14). These allegations still plausibly establish only that BU assigned its entire interest in the '475 patent to Dr. Schubert, not that BU agreed to and participated in a litigation scheme. Lumileds also does not plausibly allege that BU "actively participated in the conspiracy." Lumileds proffers communications in which BU anticipates being involved in Dr. Schubert's litigations because BU was the former owner of the '475 patent and may be implicated in defendants' inequitable conduct claims. (D.I. 202 at 12). Although this evidence demonstrates that BU was aware of its risk exposure from the litigation, it does not show that BU "actively participated" in a conspiracy to benefit from the litigation, such that BU should be haled into this forum under a conspiracy theory of jurisdiction.

### 2. Effects Test

Lumileds also argues that BU would be subject to personal jurisdiction under the "effects test" because BU "expressly aimed [its] tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." (D.I. 154 at 15–16, citing *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007)). Lumileds argues that BU aimed the effects of the alleged inequitable conduct at Delaware based on the same arguments made to support its assertions of

knowledge and foreseeability of effects under its conspiracy theory of jurisdiction. *See supra* Section III.A.1. Even if Lumileds had established that BU was simply aware of Dr. Schubert's three lawsuits in Delaware, it cannot be inferred that BU intentionally directed its tortious conduct at Delaware. *See Marten*, 499 F.3d at 297 ("[T]he effects test prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim his conduct at that state.").

Lumileds has thus failed to show that this Court may exercise personal jurisdiction over BU.

**B.    Venue**

Because this Court cannot exercise personal jurisdiction over BU, this district is also an improper venue for Lumileds' claims against BU. *See* 28 U.S.C. § 1391(b)(3). Lumileds argues that Delaware is a proper venue, not only based on personal jurisdiction, but also because "a substantial part of the events or omissions giving rise to the claim occurred" in this state. (D.I. 154 at 17, citing 28 U.S.C. § 1391(b)(2)). Namely, "[t]he filing of Schubert's complaint in Delaware . . . substantially gives rise to Lumileds' counterclaim." (D.I. 154 at 17). Lumileds, however, seeks declaratory relief that the '475 patent is not infringed, invalid, and unenforceable. Its counterclaim of unenforceability is based on BU's alleged inequitable conduct, which did not occur in Delaware. Lumileds identifies no other events or omissions in Delaware that gave rise to its claims of non-infringement, invalidity, and unenforceability. Thus, Delaware is an improper venue for Lumileds' counterclaims against BU.

**C.    Declaratory Judgment Jurisdiction**

Lack of personal jurisdiction and improper venue present straightforward grounds for dismissal. Thus, the Court need not decide whether the counterclaims against BU must also be

dismissed for lack of subject matter jurisdiction. *Cf. Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999) ("Where . . . a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction.").

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, BU's Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue and Lack of Declaratory Judgment Jurisdiction (D.I. 141) is GRANTED.

An appropriate order follows.